1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEBRASKA
2

3    UNITED STATES OF AMERICA,          )    8:13CR105
                                        )
4              Plaintiff,               )
                                        ) Omaha, Nebraska
5        vs.                            ) May 8, 2013
                                        ) 2:57 p.m.
6    TIMOTHY DeFOGGI,                   )
                                        )
7              Defendant.               )

8               TRANSCRIPT OF DETENTION HEARING

9          BEFORE THE HONORABLE THOMAS D. THALKEN

10             UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12   For the Plaintiff:      Mr. Keith A. Becker
                             U.S. DEPARTMENT OF JUSTICE-CHILD
13                           EXPLOITATION SECTION
                             1400 New York Avenue, N.W.
14                           Sixth Floor
                             Washington, DC 20530
15
                             Mr. Michael P. Norris
16                           U.S. ATTORNEY'S OFFICE-OMAHA
                             1620 Dodge Street
17                           Suite 1400
                             Omaha, Nebraska 68102
18
     (telephonically)       Ms. Sarah Chang
19                           U.S. DEPARTMENT OF JUSTICE
                             1400 New York Avenue
20                           Suite 600
                             Washington, DC 20005
21

22   For the Defendant:      Mr. James M. Davis
                             DAVIS LAW OFFICES
23                           1623 Farnam Street
                             Suite 500
24                           Omaha, Nebraska 68102

25   Proceedings transcribed from audiotape, transcript produced
     with computer.

```
1                          I-N-D-E-X

2    EXHIBITS:                              OFFERED    RULED

3    1.   Private messages sent/received............ 10      16

4    2.   Order of Protection...................... 14      16

5    3.   Petition for Order of Protection.......... 14      16

6    4.   Application for a search warrant.......... 15      16

7

8                                                    PAGE

9    FINDINGS OF THE COURT................................. 17

10   CERTIFICATE OF TRANSCRIBER........................... 17

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (On May 8, 2013, at 2:57 p.m., the following proceedings were

2    held:)

3             THE COURT:  In United States versus Timothy DeFoggi,

4    carrying the number of 8:13CR105, counsel enter their

5    appearance for the record, please.

6             MR. BECKER:  Keith Becker for the United States, good

7    afternoon, Your Honor.

8             MR. NORRIS:  Also Michael Norris for the United

9    States, Your Honor.

10            MR. DAVIS:  Good afternoon, Your Honor, for the record

11    James Martin Davis appearing on behalf of the defendant who's

12    present in court.

13            THE COURT:  And I understand that we have Sarah Chang

14    online to audit; is that correct?

15            MS. CHANG:  Yes, Your Honor, Sarah Chang for the

16    government.

17            THE COURT:  Thank you.  All right.  We're here for

18    purposes of a detention hearing.  Again, the Court will take

19    judicial notice of the pretrial services report which is filing

20    number 11, that was prepared by the Southern Division of the

21    District of Maryland.

22        Further, the Court will take judicial notice of the

23    superseding -- is it superseding indictment?

24            MR. BECKER:  Just the indictment, Your Honor.

25            THE COURT:  Pardon?  Just the indictment?

 1          MR. BECKER:  Correct.

 2          THE COURT:  All right.  The indictment in this case.

 3    With that in mind, Mr. Becker.

 4          MR. BECKER:  Thank you, Your Honor.  We are again

 5    seeking detention on both prongs.  May I be seated during

 6    argument?

 7          THE COURT:  You may.

 8          MR. BECKER:  We're -- we're again prepared to proceed

 9    by proffer.  I know that there was an objection by the defense

10    to the government proceeding in that manner the last time we

11    were here.  I'm not sure whether that's still the case.  We've

12    provided some additional materials to the defense in between

13    the last time we were here and today.

14        So I'll -- I'll just state that we're -- we're prepared to

15    proffer some additional facts pertinent to detention, and then

16    to make our argument.  And I'll -- I'm not sure whether there's

17    an objection to that at this point.

18          THE COURT:  Mr. --

19          MR. DAVIS:  Yeah, at this point I've had a chance to

20    visit with counsel, Judge.  They did provide me with a couple

21    of packets of material the last time we met, and I had a chance

22    in those intervening time to look it over.  They've given me a

23    copy of the search warrant today.  I haven't had a chance to

24    see.  But, yeah, I -- I think in the interest of time, I'd be

25    prepared to allow them to proceed by proffer.  It might be --

1      THE COURT:  All right.  You may proceed then, Mr.

2  Becker.

3      MR. BECKER:  Thank you, Your Honor.  And in the event

4  there's any cross-examination that the Court will require, we

5  do have an agent that is prepared to testify as -- as

6  necessary.

7      THE COURT:  Very well.

8      MR. BECKER:  So we're -- the defendant is charged in

9  this case with being a member of an internet website referred

10  to in the indictment as Website A.  His user name on that

11  website was -- and you'll have to excuse my language throughout

12  today's proceeding -- his user name was -- as charged as being

13  "fuckchrist" and a screen name of "PTasseater."

14      He'd been a member of the website in question since April

15  of 2012.  That website began operating in March, and so the

16  defendant as -- as charged was someone who was an early adopter

17  in terms of becoming a member of this website and setting up an

18  account on the site and actively using it.

19      The government's evidence shows that he was an active and

20  frequent user of the site from the inception of his membership

21  in April all the way until the site was finally taken down in

22  early to mid-December of 2012.

23      During the course of his membership the defendant engaged

24  in private messaging with numerous other users of the site.

25  The site allowed one member who had an account to send a

1    private message, which is essentially an e-mail-type system,

2    directly from one member to another member.  The particular

3    content of the private messages that the defendant sent to

4    other members and received from other members is extremely

5    disturbing.  The constant and consistent theme of those private

6    messages is the violent rape of very young children and the

7    murder of very young children.

8         The defendant, throughout those private messages -- and I

9    am going to excerpt some of them for the Court -- also -- not

10   only sought to engage in fantasies about the violent rape of

11   young children, but -- but also was seeking and actively

12   seeking to meet with other individuals who shared an interest

13   in the sexual abuse of children.

14        There are numerous messages that he sent back and forth to

15   other users trying to ascertain where they were, whether they

16   were close to where he was in the Maryland/DC/Virginia area as

17   he confessed in numerous messages in -- in efforts to actually

18   meet up in person and in order to further the abuse of -- of

19   kids.

20        So we can -- we can mark this if -- if necessary as an

21   exhibit, Your Honor.  And then I did just want to --

22             THE COURT:  Exhibit A?

23             MR. BECKER:  -- publish some of those.  If I may

24   approach?

25             THE COURT:  Or Exhibit 1, I'm sorry.  This has been

1    furnished to Mr. Davis?

2              MR. BECKER:  It has, Your Honor.

3              MR. NORRIS:  Your Honor, may I approach and obtain

4    some other exhibit stickers to make things go faster?

5              THE COURT:  You may.

6              MR. BECKER:  So, Your Honor, what we're displaying on

7    the ELMO here is from the -- the data pulled from the

8    website --

9              THE COURTROOM DEPUTY:  Excuse me, you need to

10   (indiscernible) a microphone.  You can pull one up --

11             MR. BECKER:  Oh, sure.

12             THE COURTROOM DEPUTY:  (Indiscernible) side.

13             MR. BECKER:  So in what's been marked as Government's

14   Exhibit 1 for purposes of the hearing --

15             MR. DAVIS:  How would you identify that?  How are you

16   identifying that, Mr. Becker?

17             THE COURT:  This is Exhibit 1.

18             MR. BECKER:  Private message.

19             THE COURT:  Page 10, a note on the bottom.  Is that

20   what you're doing?

21             MR. BECKER:  Yeah.  So let me -- so this is -- this is

22   a document, Government's Exhibit 1, the pages are numbered

23   beginning with page 10 proceeding to page 51.  And we'd

24   identify this as private messages sent and received by the

25   defendant.

1    The website tracked and -- and logged these messages in

2    essentially a mailbox, and tracked them by the date and time

3    that they were sent as well as the content.

4    Beginning with two messages -- or the first message was

5    sent on, as it's indicated here, April 19th of 2012, shortly

6    after the defendant became a member of the organization, stated

7    to another member in a private message, quote, "Love to chat

8    about beating and raping a very young boy or girl."

9    A second message, also on page 10, sent on April 21st,

10    2012, quote, "Love your interests, would love to find an

11    extremely violent video where an infant or toddler is beaten,

12    raped and killed.  But those seem to be impossible to find.

13    I'd LOVE" -- LOVE in all caps -- "hearing the little fucks

14    scream in pain when a big cock is being forced inside them.  I

15    would give anything to be able to beat, rape and kill a baby

16    for real.  Boy or girl."

17    There are dozens of examples of similar messages sent by

18    the defendant during his membership on the website in question.

19    Another example on April 23rd, 2012 --

20    THE COURT:  What page?  What page?  What page is that

21    on again?

22    MR. BECKER:  This is page 11 of the exhibit.

23    THE COURT:  Thank you.

24    MR. BECKER:  "I would care how much the infant or

25    toddler screamed.  I would force my cock in a baby's ass or

1  cunt, balls deep.  No mercy.  Hard to find very young ones to

2  rape, as my 8-inch cock would rip it apart and undoubtedly kill

3  it."  The message goes on from there in a similar manner as can

4  be observed by the Court.

5       There were numerous messages where the defendant -- as

6  highlighted on page 12 -- indicated his location on May 11th of

7  2012, indicating in the beginning of, again, another similar

8  message discussing the beating, raping and killing of young

9  kids; discussing him being in the Maryland/DC/Virginia area.

10  That's on page 12.  Another reference also on page 12 being --

11  to him being south of DC, consistent with the defendant's prior

12  residence in Virginia.

13       Another message on page 12, the defendant indicating in a

14  message dated April 23rd, 2012, "I am tired of jacking-off to

15  this fantasy.  I need to kill an infant or toddler for real."

16  The message then goes on from there in further description of

17  the defendant's desires to violently rape and murder a young

18  child.

19       Moving to page 13, we move a bit further in time.  On page

20  13 in the middle of the page that's a message from November

21  19th of 2012, so again continuously and throughout his

22  membership on the board.  One of the few others on here into

23  newborns, "I am also hoping to find a parent willing to share

24  their infant or newborn B or G" -- meaning boy or girl --

25  "although I prefer little whores."

1       And then as I mentioned to the Court there are numerous

2   examples in private messages of the defendant attempting to

3   meet in person with other members of this website.  The website

4   itself, of course, being dedicated to the sexual exploitation

5   of children.

6       This is on page 13, May 17th, 2012, "You ever hook up with

7   another pedo, we are in the same area."  One example of a

8   private message dedicated to actually meeting with other

9   individuals.

10      So I won't belabor the point, Your Honor.  I can say that

11  there are dozens and dozens more examples within Government's

12  Exhibit 1 of the defendant's desire to rape and kill toddlers.

13  There are certainly -- and I'll leave that available to -- to

14  the Court.

15              THE COURT:  You may present it to the clerk.

16              MR. BECKER:  Pardon?

17              THE COURT:  Present it to the clerk.

18              MR. BECKER:  In terms of the -- the rest of the

19  defendant's activity on Website A, he did not only engage in --

20  in those sorts of text messages with other members, there are

21  literally dozens of examples -- based on our monitoring data --

22  where the defendant accessed and downloaded child pornography

23  that was available on Website A.  That included child

24  pornography depicting very young children, all the way down to

25  the age of infants, engaging in being sexually abused and

1    subjected to sexually-explicit conduct.

2        Website A also allowed its users to join what are called --

3    what are called groups.  Some of those groups were public, i.e.

4    available to all members.  Some were private, meaning you had

5    to be invited into the group by the group administrator to

6    join.  The defendant joined numerous public and private groups

7    on Website A.

8        Some of them -- those groups included groups that were

9    dedicated to things like hardcore images of boys or girls and

10   to babies and toddlers.  And within those groups you would

11   find -- users such as the defendant would find images that were

12   categorized correctly.  Meaning groups that were dedicated to

13   babies and toddlers, the members of those groups posted images

14   within that group and available to members of that group that

15   actually did depict babies and toddlers being sexually abused.

16   So during the course of his -- his membership he engaged in

17   numerous of -- of those groups.

18       In terms of the identification of the defendant as the user

19   "fuckchrist" a/k/a "PTasseater" that identification came

20   through his use of the same screen name on yet another internet

21   website that is well-known to law enforcement for being an

22   avenue for individuals to collect and trade child pornography

23   and to meet others who share that interest.  That is -- that --

24   that particular website is an image-sharing website that's

25   hosted outside the United States.

1       The defendant maintained a user account in that site all

2    the way back to 2007.  That user account was active until 2011

3    when the site deleted the user account because of indecent

4    comments made by that user.  His user account on that website

5    was "PTasseater" the same as on Website A.

6       That particular website does have IP address logs that law

7    enforcement obtained.  And between May of 20- -- excuse me, May

8    of 2011 and September of 2011 -- let me -- pardon -- Court's

9    indulgence, one moment, Your Honor.  I just want to get that --

10   the time frame right.

11       IP address logs from that website showed that the user

12   "PTasseater" accessed this site 469 times between May of 2011

13   and December of 2011 from a Verizon IP address that tracked to

14   the defendant's home.

15       During all of that time the defendant's -- the defendant

16   was the -- the user according to Verizon of that IP address,

17   which was assigned to his home in Germantown, Maryland, where

18   he was arrested on the warrant issuing from this particular

19   case.  And so we have, you know, his activity both here on

20   Website A, for which he's charged.  We also have a long period

21   of activity on that site.

22       In terms of the content of his activity on that

23   image-hosting site that was hosted outside of the country, we

24   also see a substantive parallel between there and his activity

25   on Website A.  That site allows users to post images and users

1   can then comment on those postings in text.  The data available

2   to law enforcement shows that the user "PTasseater" commented

3   dozens and dozens and dozens of times about images posted

4   there.  And the comments are of the same tone, nature and topic

5   as the private messages that he sent to other users of Website

6   A, that is comments about the rape and brutal violent sexual

7   abuse of children.  Same -- same tone, same demeanor, same

8   tenor.

9       In terms of some additional evidence that was arrived at

10   upon the search of the defendant's home in Maryland, when

11   agents entered the home they found the defendant in a -- in the

12   basement level of the home.  He immediately ran up to -- ran up

13   one floor and grabbed at a laptop computer.  Agents confronted

14   him, told him to -- that he should let go of the laptop.  He

15   didn't.  He actually had to be physically separated from that

16   laptop computer.

17       When the agents were able to get a look at the computer

18   what they found was that the computer was running.  It was

19   running Tor network software, the network that Website A

20   operates under.  It was then logged into a Tor child

21   pornography website that is well-known to law enforcement.  And

22   it was actually in the process of downloading a video of child

23   pornography when the agents went into the home.  Agents allowed

24   that download to complete and viewed the video, and it did in

25   fact depict child pornography.

1       In terms of other -- other items that were found in the

2   home that were -- were certainly of interest, and I think

3   pertinent to the Court's decision today, among paperwork that

4   was located in the defendant's home was an Order of Protection

5   that was issued in the state of New Mexico in October of 2010.

6       That Order of Protection required the defendant to stay

7   away from an 11-year-old male child.  The protection order had

8   been submitted by the guardian of the child, and -- because the

9   guardian had perceived actions that the guardian believed to be

10  grooming for sexual purposes.

11      So far as -- as we understand, that Order of Protection

12  which extends to 2015 is still in effect.  And I do have a copy

13  of that for the Court that we'd ask to mark as Government

14  Exhibit 2.  For purposes of the hearing, I'm providing a copy

15  of that order.  And then separately as Government's 3 --

16          MR. DAVIS:  What -- what is 2?  What's Exhibit 2?

17          THE COURT:  2 is the protection order.

18          MR. BECKER:  Government Exhibit 2 is the Order of

19  Protection.

20          MR. DAVIS:  Okay.  All right.

21          MR. BECKER:  Government Exhibit 3 is the application

22  for Order of Protection that -- that contains the allegations

23  by the child's guardian that led to the issuance.  I'm

24  providing a copy of each to defense counsel --

25          MR. DAVIS:  Thank you.

1        MR. BECKER:  -- and to the Court.  And then just to

2   complete the record, Your Honor, I do have a copy of the search

3   warrant -- the residential search warrant and affidavit for the

4   defendant's residence.  This will be --

5        MR. NORRIS:  I believe it's 4.

6        THE COURT:  Next is 4.

7        MR. BECKER:  We'd just ask to mark that as Government

8   Exhibit 4.  Much of the information that I've proffered is

9   contained within the affidavit in support of that search

10  warrant.

11       MR. DAVIS:  Okay.  And, Mr. Becker, again what was --

12       THE COURT:  Do you have a copy of that, Mr. Davis?

13       MR. DAVIS:  I -- I have.

14       MR. BECKER:  Yes.  And that's -- that is the --

15       MR. DAVIS:  I have a copy of the search warrant, and

16  then --

17       THE COURT:  This is the application for the search

18  warrant for the --

19       MR. DAVIS:  Yeah, I -- I have --

20       THE COURT:  -- Crown Ridge Court address in

21  Germantown.

22       MR. DAVIS:  Yes.  That's --

23       THE COURT:  All right.

24       MR. DAVIS:  -- the application for search warrant.

25       THE COURT:  Yes.

1      MR. BECKER:  And we did provide a copy of that to

2  defense today.

3      THE COURT:  All right.  Court receives 1, 2, 3 and 4.

4      MR. BECKER:  In terms -- Your Honor, in terms of a

5  factual proffer to support our detention request, that's --

6  that's all the government has at this point.

7      THE COURT:  Very well.  Mr. Davis, do you have

8  evidence you wish to present?

9      MR. DAVIS:  I may, Judge.  I'm going to -- I didn't

10  have a chance to visit with my client beforehand, and I didn't

11  know exactly what the evidence was going to be.  Can I have

12  about two minutes to --

13      THE COURT:  Very well.

14      MR. DAVIS:  -- visit with my client?

15      THE COURT:  We'll turn off the record.  And be careful

16  on your mikes there.

17      (3:18 p.m. until 3:27, off the record.)

18      THE COURT:  Mr. Davis, do you --

19      MR. DAVIS:  Yeah, Judge, my client denies the fact

20  that he was the person sending all these messages.  However,

21  we're not prepared to go over and confront that evidence,

22  because he hasn't had a chance to really see it now.  So

23  we're -- we're not going to present any evidence.  But at some

24  point after we've gone over this, I may ask the Court revisit

25  the issue of detention.

1      THE COURT:  Very well.  Anything further then on the

2  issue of detention at this time?

3      MR. DAVIS:  No, Your Honor.

4      THE COURT:  All right.  I find the defendant is both a

5  flight risk and a danger to the community.  He will be detained

6  in the custody of the marshal pending disposition of this

7  matter.  That's based upon the nature of the charges in this

8  case; the defendant's pretrial services report, which indicate

9  the defendant's expertise in the area of cyber security; and

10 also the contents of Exhibits 1, 2, 3 and 4.

11      If nothing further, counsel are excused.  We'll be in

12 recess.

13      (3:28 p.m., recessed.)

14      I, Vicki L. Jarchow, Transcriber, certify that the

15 foregoing is a correct transcript from the official electronic

16 sound recording of the proceedings in the above-entitled

17 matter.

18

19 Vicki L. Jarchow                    July 1, 2013
                                       Date

20

21

22

23

24

25