```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEBRASKA
 2

 3    UNITED STATES OF AMERICA,        )   8:13CR105-001
                                       )
 4              Plaintiff,             )
                                       )  Omaha, Nebraska
 5        vs.                          )  March 25, 2014
                                       )  1:31 p.m.
 6    TIMOTHY DeFOGGI,                 )
                                       )
 7              Defendant.             )

 8                  TRANSCRIPT OF HEARING ON MOTIONS

 9              BEFORE THE HONORABLE THOMAS D. THALKEN

10                 UNITED STATES MAGISTRATE JUDGE

11    APPEARANCES:

12    For the Plaintiff:      Mr. Keith A. Becker
                              U.S. DEPARTMENT OF JUSTICE
13                            CHILD EXPLOITATION SECTION
                              1400 New York Avenue, N.W.
14                            Sixth Floor
                              Washington, DC 20530
15
                              Mr. Michael P. Norris
16                            U.S. ATTORNEY'S OFFICE-OMAHA
                              1620 Dodge Street
17                            Suite 1400
                              Omaha, Nebraska 68102
18
                              Ms. Sarah Chang
19                            U.S. DEPARTMENT OF JUSTICE
                              1400 New York Avenue
20                            Suite 600
                              Washington, DC 20005
21

22    For the Defendant:      Mr. John S. Berry, Jr.
                              BERRY, KELLEY LAW FIRM
23                            2650 North 48th Street
                              Lincoln, Nebraska 68508
24
      Proceedings transcribed from audiotape, transcript produced
25    with computer.
```

```
 1                        I-N-D-E-X

 2     EXHIBITS:                              OFFERED   RULED

 3     1.   Letter to Deborah Gilg (SEALED)...........   19      19

 4     A.   Certified wiretap application (SEALED)....   31      31

 5     2.   PedoBook private messages.................   30      32

 6     3.   Pagefile messages.........................   36      37

 7     4.   iMGSRC comments...........................   34      35

 8     6.   PedoBook rules............................   38      59

 9

10                                                       PAGE

11     CERTIFICATE OF TRANSCRIBER...........................   59

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    (On March 25, 2014, at 1:31 p.m., the following proceedings

 2    were held:)

 3             THE COURT:  United States versus Timothy DeFoggi,

 4    carrying the number 8:13CR105.  Counsel enter their appearance

 5    for the record, please.

 6             MR. BECKER:  Good afternoon, Your Honor, Keith Becker

 7    for the United States.

 8             MS. CHANG:  Good afternoon, Sarah Chang for the United

 9    States.

10             MR. NORRIS:  Your Honor, Michael Morris for the United

11    States.

12             MR. BERRY:  John Berry for the defendant, Timothy

13    DeFoggi.

14             THE COURT:  All right.  We're here on various motions

15    of the defendant.  First let's deal with the motion to sever,

16    which is filing number 102.  Mr. Berry?

17             MR. BERRY:  Your Honor, during our initial conference

18    with Mr. -- or Judge Bataillon after I was assigned to this

19    case, the judge indicated that the time was (indiscernible) for

20    filing motions.  He also indicated that the motion to sever was

21    never addressed by him because previous counsel did not object

22    to the -- to your finding.  So I have filed the motion as well

23    as a brief.  It is substantially similar to what previous

24    counsel has filed.  I don't have any additional or new

25    arguments.
```

1           My issue is that previous counsel did not object to the

2    finding, did not preserve the issue, so that's -- that -- that

3    is my intent for doing it today.  Like I said, I think the

4    issues are the same in terms of whether there is any connection

5    to the codefendant to Mr. DeFoggi, I -- I don't see it.  And of

6    course, I think that it would be unfairly prejudicial to link

7    them.  I think I've addressed that in my brief.

8           THE COURT:  Let's deal, well, with the issue of unfair

9    prejudice or -- and so forth with regards to your client.

10   Would you address that, please?

11          MR. BERRY:  Your Honor, essentially you have a

12   codefendant who there's no -- I don't believe there's any

13   evidence that Mr. DeFoggi talked with him, interacted with him

14   at all.  Only that this is a person who visited a similar --

15   allegedly visited a similar site, this PedoBook site out on

16   the -- the Tor network.  Grouping Mr. DeFoggi with another

17   person who allegedly has an interest in child pornography, who

18   has allegedly received child pornography, and is -- but yet in

19   no way is associated to Mr. DeFoggi is unfairly prejudicial to

20   him because it lumps him in with someone else who was an

21   alleged pedophile.

22          THE COURT:  All right.  Government?

23          MR. BECKER:  Your Honor, we've responded with regard

24   to our brief.  I don't have the filing number in front of me,

25   but our brief basically indicates that this has been raised

1    before you previously.

2            THE COURT:  Filing number 126.

3            MR. BECKER:  Filing 126 --

4            THE COURT:  Okay.

5            MR. BECKER:  -- Your Honor.  In filing number 126

6    we've indicated to you that this was raised previously.  There

7    are no new issues; that you concluded that severance was not in

8    order.  Whether it be law of the case, whether it be some sort

9    of estoppel argument, whether it just be a collateral issue, he

10   can't raise it again.

11       But let's say that he can raise it again and let's deal

12   with the issues themselves.  When he says that he has

13   substantial prejudice because he's on the same board as another

14   individual who's on that board, the prejudice that he creates

15   is mostly at his own hands.  It's prejudice that he has made by

16   postings to the board.  It's prejudice that he has done.

17       And the jury is going to be able to segregate, as you

18   indicated in your previous order, whose actions were whose on

19   that particular board.  As you'll see in other hearings that

20   will -- or other evidence that we'll have during these hearings

21   that we're having this afternoon, he's got postings that he

22   writes to the board.  Postings that are clearly and easily

23   identifiable as his own as opposed to that of his codefendant.

24       The codefendant who visited sites on the board is visiting

25   sites on the board that many of which are distinct and

1   different than that in which Mr. DeFoggi is visiting.  And such

2   for a jury to compartmentalize that should be a very easy task.

3   And so for that reason, Your Honor, we're asking that the case

4   not be severed.

5       There's additional reasons.  This is unlike the 106, 107,

6   and 108, where people are only charged with access with intent

7   to view and receipt of child pornography.  Obviously in this

8   particular case, there's a conspiracy to distribute.  There is

9   advertisement and there's the CEE charge, Count I.

10      So for those reasons, it should not be severed.

11              THE COURT:  All right.  Mr. Berry, anything further?

12              MR. BERRY:   No, Your Honor.

13              THE COURT:  All right.  The -- the evidence which the

14   Court should consider on the motion to sever should be what,

15   Mr. Berry, as far as you're concerned?

16              MR. BERRY:  Well, I think --

17              THE COURT:  Just the indictment and --

18              MR. BERRY:  Correct.  The -- right, the indictment.

19              THE COURT:  All right.  Anything from the government's

20   side?

21              MR. BECKER:  Your Honor, I think at some point we are

22   going to offer you -- and it may be more in the motion in

23   limine, certain chats and certain postings that the defendant

24   made --

25              THE COURT:  Uh-huh.

1          MR. BECKER:  -- so I think you can consider those as

2     well.  We can offer them at this point or we can wait until

3     that and then ask you to take notice of those as well.

4          THE COURT:  I'll let you reserve at this point.  Okay.

5          MR. BECKER:  Thank you.

6          THE COURT:  All right.  The other -- let's go to

7     then -- the motion to sever will then be taken under

8     advisement.  The -- which is the -- make sure we get the

9     right -- which is 102.  All right.

10        Then we have a motion for additional discovery, motion for

11    independent review of internet and computer-related matters as

12    amended.  So it's 104, 108, and 110.  I think we should

13    consider all those together at this point.  And so I'll hear

14    you on that, Mr. Berry.

15         MR. BERRY:  Your Honor, in terms of the -- the -- the

16    motion for additional discovery, Mr. DeFoggi has pointed out

17    items that he wishes to have.  The government responded to

18    that, that -- that was also -- to me, and that was also put in

19    their response.

20        I think at this point until I have a forensic expert I'd

21    like to reserve the right to renew this motion later.  My

22    concern is that due to the complex nature of the case, we're

23    talk -- this isn't a run-of-the-mill child pornography case.

24    Obviously we're talking about the onion router and several

25    complex issues.

1          I am not competent, I think, as an attorney to determine

2     the exact nature or reasons for some of these.  Mr. DeFoggi has

3     some reasons, but I would like to vet those with an expert

4     witness.  And so I would ask that the Court allow me to reserve

5     this motion to address it at another time once I have been able

6     to confer with an expert witness regarding the relevance and

7     validity of some of the things that Mr. DeFoggi is requesting.

8               THE COURT:  Have you engaged an expert witness at this

9     point?

10              MR. BERRY:  I -- Your Honor, I have contacted an

11    expert witness, a Dan Meineke.  I have filed a motion for funds

12    to -- to appoint an expert.  I filed it with the other motions

13    in here.  I believe it's filing number 108 and 110, which is a

14    motion for independent review, I think is how I had to put it

15    into the CM/ECF system.

16              THE COURT:  The -- have you prepared a form -- CJA

17    Form 21 for the purposes of hiring the -- the expert?

18              MR. BERRY:  I have, Your Honor.

19              THE COURT:  And -- and you submitted that?

20              MR. BERRY:  I -- I have not yet, Your Honor.

21              THE COURT:  All right.  What is the -- well, let me --

22    we have 10 -- we have the 104 which is a motion for additional

23    discovery.  And it appears from the government's response that

24    all of that -- all of those matters have been provided to you

25    at this point or the government has asserted that such items

1    are not in their possession.  Is that my -- is that my reading

2    of the government's response?

3           MR. BECKER:  That's correct from our perspective, Your

4    Honor.

5           THE COURT:  All right.  And is -- and from your review

6    now of your request, and the government's response, is there

7    anything that's -- that you don't have that we're dealing with

8    in 104?

9           MR. BERRY:  There are, Your Honor, some electronic

10   storage devices that Mr. DeFoggi has indicated that he and

11   others in his residence believe were at the house at the time

12   that the warrant was executed, and believes -- believes were

13   taken.  However, I don't have any evidence.  I can --

14          THE COURT:  All right.

15          MR. BERRY:  -- get affidavits from my client, from the

16   other witnesses, but I have no evidence to show that those are

17   in the government's possession.

18      Additionally, Mr. Becker also pointed out in his response

19   that some of that information that I need may be in the FTK or

20   forensic tool kit report, so once again having an expert review

21   some of that I think -- I think will be -- will be helpful.  I

22   think some of those electronic storage devices that Mr.

23   DeFoggi's concerned about, if they were plugged into any of the

24   computers seized, that would show up on the registry, but I

25   would like to have, like I said, the expert review that.

1      So I think that most of the stuff could be cleared up

2   with -- with the use of an expert.  And I think that after I've

3   had that opportunity then if there's anything remaining I'd

4   like to address it.  But I think that a lot of this stuff can

5   be cleared up.

6          THE COURT:  The -- rather than leaving 104 hanging in

7   the air on the matter I'm going to deny the motion as moot

8   without prejudice, so that you can -- in the event that there

9   are items that you need, that you can file an -- file an

10  additional motion.  But from the government's response and your

11  motion, I'm going to deny the motion essentially as moot, but

12  deny it without prejudice so that you can re-assert it in the

13  event that you need to request additional discovery that you

14  can demonstrate that the government has or should have.  Okay?

15         MR. BERRY:  Yes, Your Honor.

16         THE COURT:  All right.  So to that extent, 104 will be

17  denied as moot for the reasons I have stated here on the

18  record.

19      We have then the other motion of 108 and 110.  And how long

20  is Mr. -- how long is Mr. Meineke going to take to do his

21  analysis?

22         MR. BERRY:  Your Honor, at this point I -- I'm not for

23  certain.  I know that he has previously met with Mr. Tarpinian.

24  He also is -- is working with one of the codefendants in this

25  case, so he is familiar with the case.  However, at this point

1    I -- I -- I think you're probably looking at roughly 8 to 10

2    hours.  And that's probably going to be more than the CJ

3    amount, but once again, I -- I can't -- I can't speak for --

4              THE COURT:  Well, I'm not -- I'm not so much concerned

5    at this point with the dollar amount under CJ 21, I'm concerned

6    with the time that's going to take before you're in a situation

7    to proceed.

8              MR. BERRY:  Yes, Your Honor.

9              THE COURT:  Okay.  Now, that's what the -- when I ask

10   how much time do you think that your expert's going to need to

11   provide you with a report or whatever to -- so that you can be

12   prepared to proceed.

13             MR. BERRY:  Yes, Your Honor.

14             THE COURT:  And do you know, can you estimate that?

15   Or are you aware of that at this point?

16             MR. BERRY:  Well, Your Honor, in speaking with Mr.

17   Meineke, like I said, I think he can -- he lives in South

18   Dakota.  He comes down fairly frequently.  So I think that this

19   is something he can get done in -- in a day or two --

20             THE COURT:  Uh-huh.

21             MR. BERRY:  -- is my understanding.  So if --

22             THE COURT:  So if we have 30 days?

23             MR. BERRY:  He can get it -- my understanding is he

24   can get it done.

25             THE COURT:  All right.

 1                    MR. BECKER:  Your Honor, if I may?

 2                    THE COURT:  Yes, you may.

 3                    MR. BECKER:  It's my understanding from talking to

 4      Agent Tarpinian right before this hearing that the board is

 5      already up in Sioux Falls, which is where Mr. Meineke is.

 6                    THE COURT:  At the FBI office or some place there?

 7                    MR. BECKER:  U.S. Attorney's Office --

 8                    THE COURT:  Okay.

 9                    MR. BECKER:  -- is where he sets up and will do his --

10                    THE COURT:  So he can just -- in the same town, right?

11                    MR. BECKER:  Yeah.  Now, I don't know what his

12      schedule is, but it's there and it's ready to go.  So

13      transportation will not be an issue --

14                    THE COURT:  All right.

15                    MR. BECKER:  -- or problem, so if that helps Mr. Berry

16      with regard to --

17                    THE COURT:  All right.  Well, let's do -- let's do --

18      put a thing here on -- on -- let's say on -- on 30 days.  And

19      get your CJA 21 to me as quickly as possible so that I can

20      approve the excess or also send it off to Judge Riley for

21      approval of excess in amount of the statutory amount.  And I

22      essentially then will, as to 108 -- get 108, 110 now -- well,

23      110 is an amended one of 108, so is that correct?

24                    MR. BERRY:  That's correct, Your Honor.

25                    THE COURT:  Okay.  So 108 can be termed and as result

1    of the amendment.  And then 110 which is the independent

2    review, that motion will be granted to the extent that you and

3    your expert will have 30 days in which to prepare his report if

4    you're going to use him at trial.  If not, if you don't want to

5    use him at trial then you have an obligation to provide a

6    report to the government of his report.

7              MR. BERRY:  Yes, Your Honor.

8              THE COURT:  And obviously if you're not going to use

9    him, then that's between you and -- you and the defendant then.

10   Okay.  All right.  So 108 is termed as -- because of the

11   amended 110.  110 is granted to the extent that you have 30

12   days in which to utilize the services of -- of Mr. Meineke and

13   that I will review your proposed -- and have him give you

14   quickly a cap on what -- or what are -- what he -- what he

15   expects that the amount to be so that I can approve it or get

16   it in a position to send it quickly off to Judge Riley for his

17   approval.

18             MR. BERRY:  Yes, Your Honor.

19             THE COURT:  All right.  Now, that takes care of the

20   discovery ones and the -- this.  The other one we have in view

21   is the -- is the motion in limine in this matter.  And, Mr.

22   Berry, I'll hear you on that.  And I realize that this will --

23   it may eventually come to a determination at trial by the trial

24   judge in this case, but at this time I'm going to tackle it as

25   a pretrial matter at this point.  So I'll hear you.

1          MR. BERRY:  Your Honor, and it may -- from an

2     evidentiary perspective may be logistically easier to do after

3     the motions to suppress, but essentially --

4          THE COURT:  Well, if you want we can do that.  If you

5     think that's --

6          MR. BERRY:  I think that the --

7          THE COURT:  -- if both parties feel that.

8          MR. BECKER:  Either way.  That's fine with the

9     government, Your Honor.

10         THE COURT:  All right.  Because then we'll have the --

11    you'll have the exhibits in which is what you're seeking to

12    keep out; is that correct?

13         MR. BERRY:  Yes, Your Honor.

14         THE COURT:  All right.  Let's do that then.  Let's

15    then proceed then to the motions -- at this point we have two

16    motions to suppress, 97 and 105.  And so -- and we'll also

17    consider at the same time the motion in limine, which is 95.

18    So we're going to consider at this time in block 95, 97 and

19    105.  And with that in mind, do you wish to make an opening

20    statement or present any evidence at this time, Mr. Berry?

21         MR. BERRY:  Your Honor, with respect to 97, 98 and 99,

22    I would -- and I don't know how the Court wants it, I did file

23    an index with the Court, like, for me to have these

24    individual --

25         THE COURT:  I think we can -- I think we can just

1    refer to the filing numbers, and then we won't have to mark

2    them as an exhibit unless they're going to differ from the

3    filing numbers.  So we have your -- we have your index at 99.

4             MR. BERRY:  Okay.

5             THE COURT:  And if the government wants to supplement,

6    I think they've also filed an index too, and we can supplement

7    that.  But -- all right.  I'll take note of -- I'll take

8    judicial notice of filing number 99, which is the defendant's

9    motion -- index in support of his motion to suppress.

10            MR. BERRY:  Your Honor, the -- the -- the gist of --

11   of this motion goes to the validity of the warrant.  There is a

12   document that is supposed to be a sealed document that is

13   supposed to grant approval of the application.  In the grouping

14   of papers I received from the -- Mr. Davis and the government I

15   did not receive that specific signed document indicating

16   that -- well, which -- which is required.  And I -- my brief

17   explains the -- the case law and the background behind it.

18       Obviously as defense counsel I don't have access to that

19   document.  Mr. Becker did provide me with the document.  He

20   also provided -- later provided the copy of the document

21   showing it was sealed.  There is no date on the document.  I

22   have not seen the document.  I think that I have a professional

23   responsibility, and that's the responsibility to my client, to

24   ensure that that document which is required for the wiretap

25   warrant to be legitimate, that it was actually in the file;

1    that they -- Judge Smith Camp, the judge who reviewed it,

2    actually had -- that it was actually in the file when she

3    approved the warrant.

4        Logistically I'm not sure how we get there.  My assumption

5    is that the Court, that you, Your Honor, have access to that --

6    to that file -- certainly Judge Smith Camp does -- to -- just

7    to verify that the required document is in fact in the file

8    with the affidavit for the wiretap.

9            THE COURT:  All right.  Let's deal with that first,

10   Mr. Becker.

11           MR. BECKER:  Thank you, Your Honor.  And generally

12   that's correct.  The document that we're referring to is a

13   memorandum commemorating the approval of a deputy assistant

14   attorney general that allows for the U.S. Attorney's Office to

15   apply for an electronic intercept.

16       We have confirmed that document is in fact in the court

17   file.  It's noted in the T3 documents as attached -- as Exhibit

18   A to the application.  We've provided the defense with a court

19   stamped sealed copy of the document.  Mr. Berry's correct,

20   it -- that -- that document itself and the stamp on it doesn't

21   have a -- a date.

22           THE COURT:  Doesn't have a what?

23           MR. BECKER:  It doesn't have a date.  So it is stamped

24   with the word "sealed" but not with a file stamp that includes

25   the date.  The document's in the court file for that

```
 1    intercept warrant --

 2            THE COURT:  And -- and that's referring now to your

 3    index of -- of in response to the motion; is that correct?

 4            MR. BECKER:  Correct.  We attached that document.

 5            THE COURT:  And the -- the number of that index?

 6            MR. BECKER:  I do -- Court's indulgence, Your Honor, I

 7    do not have the index number handy.

 8            THE COURT:  I think it's 119, but I'm not --

 9            MR. NORRIS:  We do too, but we're not -- we're not

10    confident --

11            THE COURT:  I am --

12            MR. BECKER:  I apologize, Your Honor, I don't have the

13    docket in front of me or the filing.

14            MR. NORRIS:  If our response was 119, it may be 120.

15    That's what we're --

16            MS. CHANG:  120 was --

17            THE COURT:  Well, the -- the response was 117.  There

18    was a motion -- 118 is the motion to seal.  And 119 is the

19    sealed document index of evidence in support of the

20    government's response in opposition to defendant's motion to

21    suppress evidence regarding motion to file under seal

22    government's index of evidence in support of the government's

23    opposition to defendant's motion to suppress.  And --

24            MR. BECKER:  That's a lot of words.  Your Honor, is

25    the Court able to print off a -- a docket sheet or is court
```

1    staff able to?

2            THE COURT:  Well, that's -- I was reading from the

3    docket sheet.  Here, let me -- let me get -- it is document

4    number 119-1, and the -- it has a filing stamp of this court of

5    November 19th, 2012, at 3:36 p.m., and it's page two of 54 in

6    document number 119-1, as I pull up the index that's been

7    filed.

8            MR. BECKER:  Yes, that sounds --

9            THE COURT:  Is that the document we're all --

10            MR. BECKER:  That's the document we're all --

11            THE COURT:  -- that we're all talking about?  That's

12    the important thing, that we all agree that this is the

13    document we're talking about.

14            MR. BECKER:  Yes, it's got the signature of Kenneth

15    Blanco (phonetic) at the bottom.

16            THE COURT:  And let me see, make sure -- well, it's --

17    it's -- it doesn't have -- what it has is the -- is the order

18    authorizing it, but the filing itself it is the -- well, I

19    should say the letter is undated, because that's what Mr. Berry

20    is complaining about is, I think.  Is that correct, Mr. Berry?

21            MR. BERRY:  Yes, it is.  The letter itself and the

22    file stamp are undated.  So there's -- there's a -- there's a

23    stamp that says "sealed."

24            THE COURT:  That's correct.

25            MR. BERRY:  The letter itself is undated.

1               THE COURT:  Uh-huh.  Well, do we have --

2               MR. BECKER:  We can mark -- we can mark it as an

3       exhibit, Your Honor.

4               THE COURT:  Let's mark it and -- well, but this is

5       Exhibit 1 to this hearing.

6               MR. BECKER:  If I may approach, Your Honor?

7               THE COURT:  You may.  Any objection by either side?

8               MR. BERRY:  No, Your Honor.

9               THE COURT:  All right.  Exhibit 1 will be received for

10      this hearing.  And it shall be sealed.

11              MR. BECKER:  So, Your Honor, I understand certainly

12      Mr. Berry's argument.  I -- I don't know what the easiest

13      resolution of the ultimate issue is.

14              THE COURT:  Well, first of all, his position is that

15      it must be filed with the wiretap order?

16              MR. BERRY:  Correct.

17              THE COURT:  Or is -- or is it his -- and that simply

18      having the letter authorizing it is insufficient unless it's

19      filed with the order?

20              MR. BERRY:  That's the defense position.  Filed along

21      with the -- presented along with the application --

22              THE COURT:  All right.

23              MR. BERRY:  -- at the time application is made.

24              THE COURT:  All right.  And do you have evidence that

25      it was in fact presented along with the application?

1          MR. BECKER:  We do.  The existence of the document

2     itself, and then the document itself is within the Court's

3     file.  I don't know how to -- I guess we can -- I guess we can

4     just offer testimony.  We can -- we can offer testimony to

5     that --

6          THE COURT:  Okay.

7          MR. BECKER:  -- to that regard, Your Honor.

8          THE COURT:  In other words, what you would -- apart

9     from that, I'm -- since I'm not supposed to be up there

10    authenticating evidence for you --

11         MR. BECKER:  Indeed, Your Honor.

12         THE COURT:  -- for you folks, either one of you.  But

13    you would get from the clerk of the court a certified copy of

14    what's on file.

15         MR. BECKER:  Indeed, Your Honor.  That -- that's what

16    we -- that's what, I guess -- well, okay.  We've presented an

17    uncertified -- an uncertified copy.  We can -- we can certainly

18    obtain a certified copy of that.  I can proffer -- I was

19    present at the time of application, I can proffer that the

20    letter was presented.  I was the -- one of the -- one of the

21    attorneys who presented the application.

22         THE COURT:  All right.  Mr. Berry, are we --

23         MR. BERRY:  I -- I think I have a duty, Your Honor, to

24    determine that the -- that the -- the document was filed and

25    when it was filed, and that the judge who had the opportunity

1    to -- Judge Smith Camp had the opportunity to look at it.  So I

2    don't know if the -- if the solution is to get a certified copy

3    from the file.  Of course, I don't know what -- I don't know

4    what that proves.  My concern is even if we get a certified

5    copy, it's not date stamped.  It's not -- it's a non-dated

6    letter.  I assume though that if it's in that order that --

7    that the judge did review it.  I'm not sure how the electronic

8    files work, but I would think that the Court would have access

9    to that.

10          THE COURT:  Was it -- well, I do have access to it and

11   it's part of the -- well, it's part of the index.  I don't

12   have -- I don't have the wiretap record in front of me at this

13   point, because ordinarily only the chief judge has that access

14   unless authorized, or something else, because it deals with

15   wiretaps.

16          MR. BECKER:  Your Honor, can we ask the Court to take

17   judicial notice of what's only the chief judge has access to?

18   It's a little bit of a stretch in that it is a filing.  It is a

19   filing that is in the clerk's office.  It is a filing that she

20   supervised.  And so therefore if we could ask the Court to take

21   judicial notice of it, the Court could have access to see --

22          THE COURT:  We can have access to it, but the

23   important thing is Mr. Berry has to have access to it.  And so

24   what we really probably need is simply a certified copy of that

25   filing that has attached to it the authorization from the

```
 1    Assistant Attorney General.  And we can -- we can do that.  And
 2    we can have it accomplished very briefly I think here, just by
 3    making that direction to the clerk.  And if it's there, it's
 4    there.  And if it's not, it's not.
 5              MR. BECKER:  Your Honor, our problem with that is
 6    going to be -- I -- I agree with you 100 percent that it should
 7    be simple.  But there are only a limited number of people
 8    downstairs who have access to that file.
 9              THE COURT:  I understand.
10              MR. BECKER:  And I think they would -- if you asked
11    for it --
12              THE COURT:  Uh-huh.
13              MR. BECKER:  -- and made that request, they would get
14    it for you.  If I go down and ask for it I'm --
15              THE COURT:  Oh, I'm not asking you to go down at the
16    moment, you know.
17              MR. BECKER:  Well, no, I understand that.  But we
18    would have to find either Teresa or somebody else to -- to
19    grant access.
20              THE COURT:  What's -- what's Teresa's number?
21              THE COURTROOM DEPUTY:  7382.
22              THE COURT:  Great.  She's on the phone.  What's
23    Denise's number?
24              THE COURTROOM DEPUTY:  7360.
25              AUTOMATED VOICE:  Your call has been forwarded to an
```

```
 1    (indiscernible).

 2              THE COURT:  Did you say 7362?  What is it?

 3              THE COURTROOM DEPUTY:  7360.

 4              THE COURT:  7660?

 5              THE COURTROOM DEPUTY:  7360.

 6              THE COURT:  Jennifer also has it?

 7         Hello, Theresa?  Oh, Denise?  Are you in the office or

 8    away?

 9              DENISE:  No, I'm out of the office.

10              THE COURT:  Who's downstairs can get me a certified

11    copy of a wiretap filing?

12              DENISE:  (Indiscernible).

13              THE COURT:  Well, I'm in the courtroom and we need it

14    as an exhibit in a hearing and we need it as soon as they can

15    get it.  It's -- what's the filing number on your wiretap?

16              MR. BECKER:  It's 12WT11.

17              THE COURT:  12WT11.  And what it is is the application

18    for the wiretap, and the -- the application has with it a

19    letter from an Assistant Attorney General authorizing the

20    attorneys to apply for the wiretap.  I need a certified copy

21    with a filing stamp on whatever it is that that is part of the

22    application that was filed with the clerk and presented to

23    Judge Smith Camp.  Please.  Thank you.

24         It will be brought to the courtroom.  Pending that --

25    that's the only issue in the motion; is that correct?
```

1          MR. BERRY:  In that motion, yes, Your Honor.

2          THE COURT:  All right.  Let's wait and see what we get

3    here.  All right.  Let's then proceed to the next motion.

4          MR. BERRY:  Your Honor, I believe the next motion is

5    to -- is going to be filings 105, 106 and 107.

6          THE COURT:  That's the search of the defendant's

7    house?

8          MR. BERRY:  Correct, Your Honor.

9          THE COURT:  All right.

10         MR. BERRY:  And I'd ask the Court to take judicial

11   notice of those filings.

12         THE COURT:  All right.  And then 105 had with it a

13   brief which is 106, and an index which is 107.  So 107 --

14         MS. CHANG:  Your Honor, I would just ask that you take

15   judicial notice of the fact that in government's filing 121 --

16         THE COURT:  121.

17         MS. CHANG:  -- the --

18         THE COURTROOM DEPUTY:  Please speak into the

19   microphone.

20         MS. CHANG:  -- the affidavit in support of the search

21   warrant was again filed, and that one is the signed

22   file-stamped copy.  Your Honor, I believe the one that the

23   defense filed is not signed.

24         THE COURT:  All right.  It's 122 is the sealed

25   document.

1          MS. CHANG:  Well, I believe 121 is the --

2          THE COURT:  Motion.

3          MS. CHANG:  -- index.

4          THE COURT:  And 122 is the sealed index which

5     contains -- which should contain the -- the document which --

6          MS. CHANG:  That -- that's correct, Your Honor.

7          THE COURT:  Make sure we got it here.  Yes, it is

8     Exhibit 1 to 122.  So it's 122-1, pages 1 through 42.    And

9     you should have -- both have -- since you filed it, you should

10    have access.  Do you have that copy?  You have that copy?

11         MR. BERRY:  Yeah, I was -- I was actually sent it by

12    Mr. Becker, yes, Your Honor.

13         THE COURT:  All right.  So the Court will take

14    judicial notice of that for the purposes of this motion to

15    suppress with regard to the search of the defendant's

16    residence, filing -- filing number 122, Exhibit 1, pages 1

17    through 42.  Do you have any other evidence on the matter then?

18         MR. BERRY:  No, Your Honor.

19         THE COURT:  All right.  Do you have any other evidence

20    on the matter then?

21         MS. CHANG:  No, Your Honor, just argument.

22         THE COURT:  All right.  Then I take it your proposal

23    that 1 through 42 does not constitute probable cause to search?

24         MR. BERRY:  That's correct, Your Honor.

25         THE COURT:  I'll hear you.

1          MR. BERRY:  Your Honor, to sum up what I put in my --

2     in my brief, I think that they're going through this intricate

3     web of IP addresses and user names.  There is no direct

4     connection to establish probable cause between the defendant,

5     Mr. DeFoggi, and his current address and the user names in

6     the -- in the warrant.  Specifically the usernames PTasseater

7     and fuckchrist.

8          You have groupings of convoluted web connections going back

9     to 2006/2007 where there are user names similar or the same

10    user names I used that are loosely attached to Mr. DeFoggi, but

11    we have not established that any of those user names are

12    unique.

13         In one of the -- in the index I cited to a Myspace page

14    that was apparently at one point assigned to Mr. -- allegedly

15    assigned to Mr. DeFoggi, specifically I believe it was -- I

16    think it was the PTasseater name was someone different, some

17    Hispanic male.

18         Like I said, because the user names were not established

19    as -- as unique, we don't know how many people out there using

20    the names PTasseater, fuckchrist, how prevalent they are on the

21    internet, or any of the other names that Mr. DeFoggi has

22    allegedly used.  And therefore there is not probable cause to

23    establish that based on those IP addresses and the large web

24    of -- of user names, that there was probable cause to search

25    Mr. DeFoggi's residence at -- at that time.

1          THE COURT:  I'll hear the government.

2          MS. CHANG:  Your Honor, in general I think we need to

3     focus on the meaning of probable cause.  The affidavit

4     articulated sufficient probable cause by setting forth a fair

5     probability that evidence of a crime would be found at Mr.

6     DeFoggi's residence.

7          Indeed, even in U.S. v. Hire (phonetic), a case cited by

8     the defense in support of his motion states that, quote,

9     probable cause is a practical factual and non-technical concept

10    dealing with probabilities.  This is language directly lifted

11    from the Supreme Court case Illinois v. Gates, in which the

12    Court explicitly stated that in dealing with probable cause, as

13    the very name implies, we deal with probabilities.

14         The defendant cannot redefine what probable means to serve

15    his purposes.  What he proposes the issuing Court do is

16    exercise a standard of proof that is entirely inappropriate to

17    simply further the steps of the criminal process.  Probable

18    cause does not establish guilt.  It does not establish a

19    preponderance.  And as the Supreme Court stated in Gates, the

20    process does not deal with hard certainties, but with

21    probabilities.

22         The affidavit that Your Honor had a chance to review

23    establishes such probability that child pornography activity on

24    website A was linked to the defendant and his residence.  I

25    won't sum up now what the affidavit says itself, but there were

1    several pieces of evidence that linked Mr. DeFoggi's residence

2    and his identity to that of PTasseater and fuckchrist on

3    website A.  Plainly corroborated by independent police activity

4    and investigation.

5         Second, to the point that because there's no direct

6    connection between website A and the defendant that there is no

7    probable cause, a direct connection is not required for a

8    finding of probable cause.  Rather, an officer executing a

9    search warrant may rely on the issuing judge's inference that

10   such a nexus exists when that inference has quote, from U.S. v.

11   Perry, common sense appeal.

12        And as outlined previously in our response the affidavit

13   presented a totality of circumstances that would lead an

14   issuing judge to conclude that there was a fair probability

15   that evidence of the crime would be found at the targeted

16   residence.

17        Moreover, the fact that the terms PTasseater and fuckchrist

18   are not unique does not defeat the issuing judge's finding of

19   probable cause.  Such a standard is one that entirely departs

20   from the meaning of probable cause itself.

21        And to move on to the Myspace page, the Myspace finding

22   outlined in the affidavit as Your Honor saw is just one small

23   and relatively inconsequential piece of an extensive probable

24   cause showing.  The defendant presents no further evidence

25   other than one visit to a current Myspace page to lead this

1    Court to conclude that that claim is either correct or

2    dispositive.

3         In any event, Your Honor, even assuming arguendo that

4    probable cause was lacking, the Leon good faith exception would

5    allow the admissibility of the evidence obtained from the

6    residential search.

7              THE COURT:  Do you wish to respond?

8              MR. BERRY:  No, Your Honor.

9              THE COURT:  All right.  That motion will be taken

10   under advisement and the motion will be deemed submitted.

11        The other motion that we deal with now is a motion in

12   limine, I believe is the only remaining motion; is that

13   correct?

14             MR. BECKER:  I think so, Your Honor.

15             THE COURT:  And the -- and do we have -- you have

16   specific --

17             MR. BECKER:  Page 10 of my brief, Your Honor, if

18   that's what you're looking for.

19             THE COURT:  Pardon?

20             MR. BECKER:  Page 10 of my brief, specific statements.

21             THE COURT:  Well, I'm looking for Mr. Berry to -- the

22   private messages sent to and from the two web things.  Is there

23   an exhibit that we have that will provide that?  And then we

24   can refer to that.  Mr. Berry, do you have an exhibit of that?

25   It could be to the extent that it might be even from, you know,

1    one of the exhibits from a detention hearing too, that I

2    believe the --

3              MR. BECKER:  Your Honor, there is a -- an exhibit --

4    could I confer with counsel really quick?

5              THE COURT:  You may confer, uh-huh.

6         (Discussion off the record.)

7              MR. BECKER:  So, yeah, Judge, we do have and we're

8    prepared to submit just for purposes of the hearing an exhibit

9    that has all of the private messages sent and received.

10             THE COURT:  Good.  And we agree upon that then?

11             MR. BERRY:  Yes, Your Honor.

12             THE COURT:  All right.  Let's have that marked as

13   Exhibit 2.

14             MR. BECKER:  And if I may approach?

15             THE COURT:  You may.

16             MR. BECKER:  And we have provided a -- a copy of this

17   to the defense today.

18             THE COURT:  Very well.

19             MR. BECKER:  Just so we all have the same thing in

20   front of us.  Government Exhibit 2, Your Honor, is a

21   compilation of the private messages sent and received by the

22   user fuckchrist, screen name PTasseater, on the PedoBook

23   website, which is website A referred to in some of the legal

24   process.

25             THE COURT:  And Exhibit 2, Mr. Berry, has various

1    highlighting.  I take it is the highlighting that you seek to

2    move in limine to not be discussed?

3           MR. BECKER:  I should clarify, Your Honor, that's the

4    government's highlighting.

5           THE COURT:  Oh, okay.

6           MR. BECKER:  That's not -- we've provided this today

7    to -- to Mr. Berry.  We had previously provided this to the

8    defense --

9           THE COURT:  Was his --

10           MR. BECKER:  -- provided this copy to the --

11           THE COURT:  Was his highlighted?

12           MR. BECKER:  Sorry?

13           THE COURT:  Was his highlighted?

14           MR. BECKER:  The copy we provided to him today was

15    highlighted.

16           THE COURT:  All right.

17           MR. BECKER:  But that -- that's our highlighting, not

18    theirs.

19           THE COURT:  I'll give you a moment then, Mr. Berry, to

20    review their highlighting to see if we're all on the same page.

21    And we can turn the recording off pending that.

22       (Pause.)

23           THE COURT:  Any objection to A?

24           MR. BERRY:  No, Your Honor.

25           THE COURT:  All right.  A will be received.  And the

1    Court does note that on -- in A is the letter attached to the

2    application.  All right.  That'll be received.

3         Now, let's go back to Government's Exhibit 2.  Mr. Berry,

4    in the highlighting that -- that is there, did you have --

5    other than the highlighting -- what you sought in your motion

6    in limine?

7              MR. BERRY:  I -- I do not believe so, Your Honor.

8              THE COURT:  All right.

9              MR. BERRY:  It looks like it covers -- it covers most

10   of it.

11             THE COURT:  All right.  So the Government's Exhibit 2

12   will be received.  And Government Exhibit 2 has various

13   portions that are highlighted which is the subject of -- that

14   highlighting is the subject of the defendant's motion in

15   limine.  And so therefore is there any further evidence from

16   either side on the motion in limine at this point?

17             MR. BECKER:  There will be from the government, Your

18   Honor, just I think for clarification sake, it will be at

19   trial, the government's intent to introduce all of the private

20   messages sent and received by the defendant through the user

21   account PTasseater and fuckchrist.  I want to make sure that we

22   are explicitly, from the government's side, not limiting

23   ourselves in any way to only admitting the ones that are

24   highlighted.  We highlighted those today for a particular

25   purpose to assist with our argument.

```
1              THE COURT:  Okay.

2              MR. BECKER:  I'm - -

3              THE COURT:  I guess -- I guess what I'm -- what I'm

4    looking at is that there was a motion in limine because of the

5    defendant's allegation of inflammatory aspect of it.  And the

6    inflammatory aspect particularly would be that is the

7    highlighted matter, which he seeks in his motion in limine.

8    That is not any aspect of precluding the government from

9    introducing any type of evidence in its case.  It's just what

10   we're dealing with in the motion in limine is the highlighted

11   portions in Exhibit 2.  And if there's other matters, it's

12   called objection to evidence or whatever else or additional

13   motions in limine or whatever, this is what we're talking about

14   in your motion in limine.  Is that right?

15             MR. BERRY:  Yes, Your Honor.

16             THE COURT:  Okay.  Now, all right.

17             MR. BECKER:  There are a few more exhibits that'll be

18   pertinent at least to the government's argument, Your Honor.

19             THE COURT:  All right.  You have -- you have no

20   further evidence on your motion in limine.

21             MR. BERRY:  No, Your Honor.

22             THE COURT:  Then you may present such evidence as you

23   wish on your motion in limine -- on the motion in limine.

24        Mr. Becker, you're on.

25             MR. BECKER:  Okay.  Your Honor, I think we're now at
```

```
 1    government -- we're now at Exhibit 3.

 2              MR. NORRIS:  I think 3 just went in.

 3              MR. BECKER:  3 just went in.  We're on 4 now.

 4         All right.  If I may approach?  Government Exhibit 4, which

 5    we provided a copy of to the defense.

 6              THE COURT:  All right.  Again, I note highlighting.

 7    Was that -- was it similarly highlighted for the defendant?

 8              MR. BECKER:  This is Government Exhibit 4 has been

 9    highlighted by the government for purposes of -- of our

10    argument.

11              THE COURT:  All right.

12              MR. BECKER:  Not -- not highlighted by the defendant.

13              THE COURT:  But I mean, you provided a copy -- the

14    copy that you provided --

15              MR. BECKER:  Yes.

16              THE COURT:  -- to the defendant has the highlighted

17    portions?

18              MR. BECKER:  Yes, it does, Your Honor.

19              THE COURT:  Okay.  Thank you.

20              MR. BECKER:  Sorry.  Government Exhibit 4 consists of

21    both the user information as well as the content of comment

22    posted by the user PTasseater on the website iMGSRC.ru.  This

23    website and the comments -- some of the content of the comments

24    referred within them are discussed in part in the residential

25    search warrant affidavit.  And I'll have more to say about that
```

1    during our -- during our argument in terms of the significance

2    there.  In essence, these are comments of a similar nature to

3    those made by PTasseater/fuckchrist on PedoBook website --

4                THE COURT:  All right.

5                MR. BECKER:  -- that help to identify --

6                THE COURT:  Any -- any objection on that, Government

7    Exhibit 4?

8                MR. BERRY:  No, Your Honor.

9                THE COURT:  All right.  Received.

10               MR. BECKER:  Government Exhibit --

11               THE COURT:  Did I note -- did I note 2 received, Mary

12   Beth?

13               THE COURTROOM DEPUTY:  Yes.

14               THE COURT:  All right.  2 is received too.  Do we have

15   a 3?

16               THE COURTROOM DEPUTY:  No.

17               MR. BECKER:  We skip 3?

18               MR. NORRIS:  I misspoke, I thought 3 was the original

19   website A.

20               THE COURT:  Now, I have --

21               MR. NORRIS:  All right.  We don't have a 3.

22               THE COURT:  -- 2.  This is 3?  Or should be 3?

23               MR. BECKER:  It can -- it can stay as 4.  It can stay

24   as 4, Your Honor.

25               THE COURT:  It can stay 4, all right.  It'll stay 4.

```
 1              MR. BECKER:  We now have an Exhibit 3 which, if I may

 2    approach?

 3              THE COURT:  And this was provided to opposing counsel;

 4    is that correct?

 5              MR. BECKER:  It has been, Your Honor.

 6              THE COURT:  And is it in the same format where it is

 7    we have the dual colors and so forth?

 8              MR. BECKER:  It has been provided that -- in that

 9    format to the defense, Your Honor.

10              THE COURT:  All right.

11              MR. BECKER:  Both separately in discovery and today.

12              THE COURT:  All right.

13              MR. BECKER:  And Your Honor, Exhibit Number 3, which

14    is titled Messages in Pagefile.sys, S-Y-S, consists of text

15    that was found in a -- in a computer, a laptop computer, in the

16    defendant's household that was seized pursuant to a search

17    warrant on April 9th, 2012.  The particular -- these particular

18    messages are found in a file called a pagefile that's discussed

19    in our response to the -- to the motion in limine.

20         These were -- these are messages and the content of the

21    messages that were extracted from that laptop computer seized

22    from the defendant's home, again involving the topic of the

23    violent sexual abuse of children, and again similar nature to

24    those private messages sent on PedoBook by

25    PTasseater/fuckchrist, similar also in content to those
```

1    commented on by PTasseater in the website iMGSRC.ru.

2              THE COURT:  Any objection to the exhibit for the

3    purpose of this hearing?

4              MR. BERRY:  No, Your Honor.

5              THE COURT:  All right.  Exhibit 3 will be received for

6    the purpose of this hearing.

7              MR. BECKER:  And then just one further exhibit, Your

8    Honor.  That'll be Exhibit Number 5.  Actually haven't provided

9    a copy of this to the defense.  It's merely a chart to assist

10   with argument.  I can put it on the ELMO when we're actually

11   using it, but I wanted to mark it for now.

12             MR. BERRY:  That's fine.

13             THE COURT:  Exhibit 5, is that what it is?

14             MR. BECKER:  If I may approach?

15             THE COURT:  All right.  Mary Beth, go make a couple

16   copies of that right away.

17             THE COURTROOM DEPUTY:  Two?

18             THE COURT:  Yeah.  Or make three while you're at it,

19   while you're --

20             MR. BECKER:  Your Honor, may I approach for another

21   sticker?

22             THE COURT:  You may.

23        (Discussion off the record.)

24             THE COURT:  Mr. Norris, make sure --

25             MR. NORRIS:  Yes, Your Honor.

1          THE COURT:  -- Mr. Berry gets a copy.

2          MR. BERRY:  Thank you.

3          THE COURT:  Now, I take it you're going to use this

4    just as a demonstrative for your argument; is that correct?

5          MR. BECKER:  That's correct, Your Honor.

6          THE COURT:  All right.

7          MR. BECKER:  We do have one more exhibit that is

8    Government Exhibit 6.  If I may approach?  I unfortunately just

9    have that copy, Your Honor, I apologize.

10      Your Honor, Government Exhibit 6 is a -- a printout or

11   screen shot from the page of the PedoBook website that

12   discusses the rules of the website.  I have shown it to the

13   defense.

14         THE COURT:  And you have a -- did you say you have a

15   copy or another copy?

16         MR. BECKER:  I -- I do not, Your Honor, that's the

17   only copy that -- that I have.

18         THE COURT:  Well, I don't have a color copier in my

19   chambers.

20         MR. BECKER:  I don't -- I don't think a color copy

21   would be necessary for the -- the purpose of it, Your Honor,

22   it's really to discuss the text anyway.  I'm happy to use the

23   ELMO.

24         THE COURT:  All right.  Well, show it -- show it to

25   him and -- and we'll provide a color copy to him at the

```
 1          conclusion of the hear -- or you will provide a color copy at
 2          the conclusion of the hearing.  But show it to Mr. Berry now so
 3          that he can follow along.
 4                  MR. BERRY:  And, Your Honor, I've been -- I've been
 5          provided a copy of that, and I believe I have the -- the color
 6          copy specifically of the -- the PedoBook and the rules.  I've
 7          also -- Mr. Tarpinian has also shown it to me --
 8                  THE COURT:  All right.
 9                  MR. BERRY:  -- while examining the forensic evidence.
10                  THE COURT:  Okay.  Thank you.  Then we're all on the
11          same thing.
12                  MR. BECKER:  If we can use the ELMO --
13                  THE COURT:  All right.
14                  MR. BECKER:  -- while we're actually discussing it,
15          Your Honor.
16                  THE COURT:  All right.  Now, do you have any further
17          evidence?
18                  MR. BECKER:  Not from the government, Your Honor.
19                  THE COURT:  All right.  Any in rebuttal?
20                  MR. BERRY:   No, Your Honor.
21                  THE COURT:  All right.  Then let's have at it.
22                  MR. BERRY:  Your Honor, after reviewing the
23          government's brief, specifically page 10, it appears that they
24          want to use this to prove that the defendant was PTasseater or
25          fuckchrist, and essentially they want to show that this is the
```

1   same person making chats in different places but also what has

2   been found specifically on his computer at his home when his

3   home was searched.

4       This is a child pornography case and child exploitation

5   case and there are some references to child exploitation.  I

6   understand that some of those are -- are fair game based on my

7   review of the case law.  My concern is that there are also

8   statements about the murder and decapitation of children.

9       Obviously, Mr. DeFoggi has not been charged with conspiracy

10  to commit murder.  And so I think that there are some -- there

11  are violent acts in here outside of the description of the

12  pictures.  And looking through, I believe it's Exhibit Number

13  2, which is -- if you look on the upper left-hand corner it's

14  titled PedoBook, Mr. DeFoggi allegedly makes comments that are

15  not violent in nature, that comments on -- on -- on -- on some

16  of the photos.

17      My argument is that the -- the graphic and violent and

18  murderous statements are unfairly prejudicial.  This is fantasy

19  chat as noted in the Pedo -- PedoBook site.  And so while I

20  understand that it may show an interest in -- in children, part

21  of this is fantasy.  And if people have fantasies to commit

22  murders and -- and commit other crimes, well, that may -- is

23  not necessarily relevant to fantasies regarding sex with

24  children, sexual exploitation of children.

25          So I -- I believe that these -- some of these comments,

1    the highlighted comments and I think there's a couple others I

2    noticed in there that talk about decapitation, I would argue

3    they're -- they're unfairly prejudicial.  There may be some

4    relevance in establishing a connection, but I would argue that

5    there is -- there's -- are enough messages comments about

6    photographs posted and videos and other information that was on

7    the site, that speaks specifically to the crimes alleged, and

8    we do not need to get into fantasy chat about murder,

9    decapitation, mutilation.

10            THE COURT:  Counsel?

11            MR. BECKER:  Thank you, Your Honor.  And, Your Honor,

12   both myself and Mr. Norris will be, I think, arguing on behalf

13   of the government.  I'm going to try to, I think, condense

14   the -- the factual aspect of things and -- and point out some

15   of the -- the links between this and very crucial evidence

16   against the -- the defendant.

17        Of course the defendant's charged with engaging in a child

18   exploitation enterprise as well as conspiracies to advertise

19   and to distribute.  It is incumbent upon the government to

20   prove that he in fact participated in those conspiracies to

21   advertise and distribute child pornography and that he did so

22   through the PedoBook website of which we must prove he was in

23   fact a member acting though his user name

24   PTasseater/fuckchrist.

25        One factual point to point out, that's -- that's one

1    account.  That is one user.  And so when a user logs into the

2    site they're -- the user name here is fuckchrist, the user puts

3    in a password, and then when a user takes actions on the site

4    the name that appears to other users is PTasseater.  And so we

5    are talking about one account on the -- the PedoBook -- the

6    PedoBook site that encompasses those two user names.

7         If Your Honor looks at the -- the graphic that we -- that

8    we've prepared I've tried to just lay out in I think a visual

9    sort of fashion how this identification takes place.  It's an

10   identification that is highly complicated by the fact that the

11   users of PedoBook chose to utilize the Tor network and chose to

12   utilize the anonymizing benefits of that network.

13        And so that means that the sort of direct evidence that one

14   might normally rely on in proving the identity of the user of a

15   website isn't available to law enforcement.  And so what we've

16   got to look to are the circumstantial links that link Timothy

17   DeFoggi to his user name PTasseater and fuckchrist on that

18   site.

19        And an important part, a component of that, ends up being

20   messages that discuss the violent sexual abuse of children.

21   And that is these messages are -- are important and very

22   significant in proving that this man is in fact PTasseater and

23   fuckchrist on PedoBook.

24        And so that -- there's a couple of important -- important

25   pieces of the -- the picture here.  When a search warrant was

1    executed on April 9th of 2012 in the defendant's home, as we

2    discussed in our response, he was found at a laptop computer.

3    He actually had to be physically removed from it.  Being

4    downloaded on that computer was a video of child pornography

5    from a Tor network child pornography website.

6        The computer itself, a forensic examination was conducted

7    on the computer, were numerous -- excuse me, two different

8    types of evidence elimination software.  That added another

9    level of complication to the examination because that software

10   is designed to hide the tracks of what a computer user is doing

11   on that computer.

12       Thankfully, in the pagefile document that Your Honor has as

13   Government Exhibit 3 was extracted some substantive activity,

14   some -- some actual chat comments, chat messages, or pieces of

15   chat messages from that computer.  The topic of those messages

16   as Your Honor can see from Government Exhibit 3 is the violent

17   sexual abuse of children.  So that becomes a substantive factor

18   here in terms of linking the defendant to the use -- the use of

19   this site.

20       Also contained within Government Exhibit 3, Your Honor will

21   see references to the user name fuckchrist directly within

22   the -- the content of those messages that were extracted from

23   the laptop computer in -- in the defendant's residence, the

24   very same one he had to be removed from the morning of -- of

25   the search.

1    When Your Honor looks at the PedoBook private messages sent

2    and received -- and I apologize, I -- I forgot which exhibit

3    number that is, it's page numbered 10 through 50.  Your Honor

4    will certainly see numerous messages discussing violent sexual

5    abuse, the rape of children, the murder of children.  The

6    context of those -- of those comments is important.

7    And that is that they're -- these private messages, and

8    numerous of them, are not discussing these sorts of matters in

9    isolation, they're discussing these sorts of matters, one,

10   within the context of the PedoBook website itself dedicated to

11   the exploitation of children, but they're also occurring in the

12   context of talking about and seeking and talking about viewing

13   videos and images depicting just that sort of abuse.

14   The fact is the evidence in this case is going to be that

15   user PTasseater and fuckchrist had a particular interest in

16   child pornography.  It wasn't child pornography just in general

17   or in any type, it was child pornography that was violent.  It

18   was child pornography that was particularly focused on very,

19   very young infant, baby, toddler-aged children who were

20   experiencing sexual abuse.

21   And so if Your Honor takes a look at some of the -- the

22   highlighted messages, Your Honor will see message after message

23   discussing not just sexual abuse and -- and violence, but

24   discussing videos, wanting to get videos, where the user's

25   discussing how he's not able to find videos that are violent

1    enough depicting this sort of abuse.

2         And this is part and parcel to the conduct that's a part of

3    the conspiracy here.  It really goes to the heart of the

4    government to prove not just of identity, but certainly of

5    identity, but also proof of participation in the conspiracy

6    itself.

7         So members of PedoBook participated in that website in

8    various ways.  They registered.  They set up a user account.

9    It's a social networking website.  They would friend other

10   users, or have other users friend them.  They would join as

11   PTasseater did, public and private groups.  Many of those

12   groups, many of the groups that PTasseater joined, the

13   defendant joined, were dedicated specifically to images of very

14   young children, to violent images, groups -- you know, groups

15   that contained terms like "no limits," that contained terms

16   like "hurt core" referring to that violent sexual abuse.

17        And so this is not -- these are not chats that are existing

18   in a fantasy.  These are chats with a purpose.  And the purpose

19   is furthering this conspiracy.  And the purpose is getting the

20   defendant to have access to the type and the particular kinds

21   of child pornography images that he was seeking out.

22        So I'll just -- if I can just highlight a few of those

23   messages here.  If we go -- actually go to the last page of the

24   PedoBook exhibit, it's page number 50, the very last message on

25   the bottom is discussing, did you get the NLF video?  We'll

1    have testimony that NLF refers to no limits fun.  No limits fun

2    referring to particularly violent images or video of -- of

3    child pornography.

4         And it's then -- it's discussing, can't wait for someone to

5    post it, love to see her getting brutally raped.  Since I'm in

6    the U.S. hard to come by little ones that you can live out your

7    fantasies with.

8         So again you see that this, you know, this fantasy is

9    really an interest.  And that's what we're talking about.  And

10   the interest is tied not just to murder and sexual abuse, but

11   the commemoration of it through image and video, the core

12   purpose of the conspiracy here.

13        So if we look at there are countless examples here of

14   private messages sent by the user fuckchrist to other users

15   seeking pictures.  We see a number of those examples on page 47

16   where the user in multiple private messages is asking another

17   user to send pictures of particularly violent child

18   pornography.

19        We see those sorts of examples again on page -- just to

20   commemorate it for the record -- on page 45.  On page 44 we see

21   again the defendant discussing the NLF, no limits fun, video

22   with another user in the context of the -- this interest in

23   again violent sexual abuse of children.

24        We see other examples on page 43, the defendant talking

25   about screen captures for a video called Daisy's Destruction.

1    Again, discussing those videos of child pornography within the

2    context of his particular interest.

3         So I won't belabor the point in terms of the -- the factual

4    examples, Your Honor.  I think we've highlighted a number of

5    them that make it clear.  Again this is -- this is something

6    that is part and parcel of the -- the proof of the defendant's

7    participation within the -- within the conspiracies that are

8    charged, but also that identify him.

9         In government's -- in the iMGSRC.ru exhibit, Your Honor,

10   and again we've highlighted some examples there.  Now, this is

11   a direct connection.  And if we go to the -- the chart that

12   we've got here.  The PTasseater user name shows up on the

13   iMGSRC.ru website and there is a direct connection between the

14   defendant's residence and that website, because there are

15   literally hundreds of IP addresses from his Verizon internet

16   account in his name that tie into the user PTasseater on the

17   website iMGSRC.ru.  That was a regular internet website, not a

18   Tor network website.  And so the IP addresses from that site

19   are useful in identifying who the user is.  And so there's a

20   direct connection between the defendant and that iMGSRC site.

21        And then what do we see in the comments of that iMGSRC

22   user?  Again, we see comment after comment talking about again

23   the violent sexual abuse of children.  And we've -- we've

24   highlighted those, those examples throughout the exhibit.

25   Those examples are all tied to an IP address the Court will

1    look at.

2        So if the Court looks at page 28, again towards the end of

3    this -- of this document we'll see comments by that user, love

4    stroking it to little girls in pain, nothing hotter than a

5    little one gasping for air and crying while you slam your cock

6    down their throat.

7        Both of those comments tied in -- not only to the user

8    PTasseater, but that IP address 96.231.186.155, the IP address

9    at the defendant's home at that -- at that time.

10       And so just again to the -- the factual point about the --

11   the significance of these messages being I think identification

12   obviously, but also how he participated.

13       If Your Honor looks at the rules exhibit -- and I think

14   I'll just -- I'll put this up on ELMO so we can all see it --

15   this is Government Exhibit 6, Your Honor, just up on the ELMO.

16   You see the PedoBook rules.  Well, there are particular rules

17   for -- we see, you know, here are the rules for our community.

18   PedoBook is a communication tool for fellow pedos to discuss

19   their interests and share content.  Here are the rules for our

20   community, one, be civil, PedoBook is for the discussion of our

21   mutual pedophilic interests in a mature and civilized fashion,

22   please be respectful of your fellow users even those that do

23   not share your point of view.

24       Number two, extreme content/topics, one, for example hurt

25   core, scat, etcetera, hurt core being particularly violent

1  sexual abuse, scat involving bodily fluids.  Bestiality is
2  allowed only if it involves children or JB -- JB commonly
3  referring to jail bait.  No snuff or gore.  Please keep these
4  topics private to you and your friends or in groups that are
5  private to their members out of respect for those that find it
6  distasteful.
7       And so what do we see in terms of the use that the user
8  PTasseater and fuckchrist makes of the site?  We see these
9  private messages exchanged with that user's friends discussing
10 those sorts of more extreme topics that were of particular
11 interest to him.
12      So, you know, we see a user who's actually following the
13 rules of the site by engaging in those communications.  That's
14 powerful evidence of his knowing and intentional participation
15 within the conspiracy that's taking place on that site.
16      So I can -- I'll turn it over to my colleague, Mr. Norris,
17 who will discuss the -- the law behind our -- our defense.
18           MR. NORRIS:  Your Honor, I'll be somewhat brief
19 because --
20           THE COURT:  Make sure you get to the mic there.
21           MR. NORRIS:  Will this work?  I'll be somewhat brief
22 because all of this is set forth in the brief that was
23 submitted with regard to the motion in limine.
24      If this was a robbery case or a homicide case or something
25 along those lines, we wouldn't be contesting that some of these

1    images would be problematic and should be problematic.  But

2    that's not what this case is.  This is a child exploitation

3    case.  It's a child pornography case.  It has everything to do

4    with what his intent was, what his plans were, what his motive

5    was, and identifying him.

6         It is -- you can't just say, well, that's a fantasy, and

7    you get to discharge that.  Which is basically what he's

8    telling you, these are fantasy-type statements.  Well, it's up

9    to a jury to decide whether they're fantasy or whether the

10   evidence is intent, or whether they evidence plan, or whether

11   they evidence identity, and it's not for us to just toss out

12   there because he claims that they're fantasy.  So that's a

13   little bit of a misnomer and I wanted to address that first of

14   all.

15        Mr. Berry talked about how this has to do with a

16   decapitation and murder.  Well, it has -- as Mr. Becker has

17   shown you -- it has much more to do than a decapitation and

18   murder.  It shows sexual abuse as part of that decapitation of

19   a child.  Sexual abuse being the resounding factor.

20        If you look in those chats you will see chats in which he's

21   trying to reach out to a co-conspirator.  Another

22   co-conspirator who happens to live in the area.  And by that

23   area I mean Washington, DC.  Trying to get together after

24   talking about their mutual desire to see this and to live this

25   out.  Trying to reach out to that individual.  And if they

1    can't do what they intend to do or if they want to do or what

2    Mr. DeFoggi wants them to do, then maybe they can masturbate to

3    images of it, or -- or a video of it, or something along those

4    lines.

5         So again, it is much, much more than something that's

6    unrelated.  It is integrally related to what we have here.  So

7    if you look at this under a 104 basis or a relevancy, it is

8    clearly relevant.  There can really be no argument that it's

9    anything but relevant.

10        So then we look to whether or not it's 404(b) or

11    inextricably intertwined as well.  And as Mr. Becker has

12    indicated to you all of this evidence is part and parcel of the

13    government's proof.  Part and parcel of the government's proof

14    as it relates to elements that we have to prove with regard to

15    this matter.

16        So inextricably intertwined evidence is outside Rule

17    404(b).  The question is whether the evidence is properly

18    admitted to provide the jury with a complete story of the crime

19    on trial, whether its absence would create a chronological or a

20    conceptual void, whether it is so blended or connected that it

21    incidentally involves explains the circumstances surrounding or

22    tends to prove any element of the charged crime.  And all of

23    this tends to prove an element of -- of the charged crimes and

24    it is inextricably intertwined.

25        So it's not necessarily a 404(b) analysis that we get into

1    because it is inextricably intertwined, it is direct evidence,

2    it is part and parcel of what we're trying to prove.  But let's

3    talk about whether it's 404(b) or not or whether we can rely on

4    404(b).

5        We've given notice.  All of this has been provided with

6    regard to discovery.  And there is plenty of case law that

7    suggest that the Rule 404(b) is a rule of inclusion and not

8    exclusion.

9        I've cited a couple of cases in this.  I -- I believe

10   Reynolds is one.  Both out of -- and another one is Allen out

11   of the Eighth Circuit.  Both relating to 404(b) evidence as it

12   relates to child pornography or child exploitation cases.  So

13   the rules aren't all that much different than they've been in

14   any other type of case.  We have to demonstrate to the various

15   predicates, all of which we can do here.

16       What I want to bring the Court's attention to are the cases

17   that talk about prejudice, because that seems to be the big

18   argument here.  Prejudice.  Never mind that he's the one who's

19   created his own prejudice.  Never mind that his prejudice are

20   his intent, his thoughts, what he's trying to accomplish by

21   being a member of this particular board.  And now he wants to

22   use that prejudice to preclude the government from proving its

23   particular case.

24       If you look at I think the first case that I indicated was

25   United States v. Worthey, where the Court considered a 403

1    challenge to child pornography admitted before the jury.  First

2    the Court rejected his argument that the District Court erred

3    by permitting the government to play videotapes containing

4    child pornography.  Worthey's important because it dismissed

5    any attempt by the defendant to stipulate to this, allowing the

6    government to prove this, so it threw out Old Chief as a

7    defense in this type of case.  There's a previous case called

8    McCourt that did exact same thing.

9        In Worthey the Court said, we do not agree with Worthey

10   that the video clips unfairly prejudiced him.  Our court

11   considered and rejected a similar argument in McCourt.  The

12   only argument that McCourt offers in support of his unfair

13   prejudice claim is that videos of child pornography, more so

14   than still images, arouse emotions that a jury is unable to set

15   aside in reaching its verdict.  While the videos were no doubt

16   unfavorable to McCourt, the fact remains that 403 does not

17   offer protection against evidence that is prejudicial in the

18   sense of being detrimental to a party's case.  The rule

19   protects against evidence that is unfairly prejudicial.  And

20   this -- and Worthey was not considered to be unfairly

21   prejudicial.

22       I ask the Court to take a look at United States v. Manning,

23   a very recent decision in the Eighth Circuit in which the Court

24   allowed -- the District Court allowed the use of chat logs to

25   demonstrate that Mr. Manning was in possession of child

1    pornography.  The Court indicated that chats are admissible for

2    an additional reason.  They are circumstantial evidence, i.e. a

3    non-hearsay purpose, associating Manning with the child

4    pornography found on his computer.

5        In United States v. Koch our Court affirmed a District

6    Court's decision to admit evidence of documents found on a

7    computer and flash drive that contained information identifying

8    the defendant.  This Court held that it was within trial

9    court's discretion to do so.  The chat transcripts found on the

10   computer can alternatively be construed as circumstantial

11   evidence connecting Manning to the child pornography on the

12   computer and on the Memorex disc discovered near the computer.

13   In other words, no matter how the chat conversations are

14   characterized, the District Court was within its discretion to

15   admit it.  If we look at a peer 404(b) analysis, we're relying

16   on identity, intent, motive, plan, participation in the

17   conspiracy, as well as the act.

18       There are all sorts of other Eighth Circuit cases that I

19   don't -- I don't really think it's necessary for me to go into

20   right now, but Broomfield, Cook, also talk about chats and

21   those chats being admissible with regard to 404(b) to show one

22   of those elements.

23       And then there were two cases that I would ask the Court to

24   also take a look at because they appear to be on point.  One is

25   a DC Circuit case, United States v. Hite (phonetic), that

1    appears to be on point, the same type of chats offered for the

2    same type of purpose by the government.  And then in the

3    Seventh Circuit United States v. Chambers, the defendant's

4    images and chats were, as the Court -- as the Seventh Circuit

5    said, sure to disgust the jury toward the defendant.  However,

6    the Seventh Circuit observed, sexual abuse of a child or the

7    attempt thereof is a disgusting crime and any evidence of it is

8    no doubt unfavorable to the defendant, but here it was not

9    unfairly prejudicial.

10       Again here, Mr. DeFoggi's chats were disgusting.  So were

11   the crimes he's charged with.  He created his own prejudice by

12   posting his own thoughts and comments on that board and those

13   comments and thoughts are fair game for the government in order

14   to prove who he is, the fact that he posted what his intent was

15   and all of the things that we've set forth in the -- in the

16   brief.

17       Thank you.

18           THE COURT:  Mr. Berry.

19           MR. BERRY:  Your Honor, looking specifically at

20   Manning, the Eighth Circuit did say that, look, these chats are

21   admissible.  But the chats in Manning were not like the chats

22   in this case where they talk about murder, decapitation and

23   mutilation.

24       So again the issue isn't prejudice, it's unfair prejudice.

25   And that's where I think the line should be drawn is in the

1    murder, the mutilation, the decapitation.  If we look at

2    Exhibit Number 4, the part the government highlighted

3    specifically says, love fantasy chat and comments, to the

4    lawless governments who try to criminalize consensual sex you

5    need to reject Christianity.  And it goes on.

6        But essentially it indicates I love these fantasy chats and

7    comments.  The fantasy, these go beyond sexual fantasies, these

8    go into murderous fantasies.  And I believe that's outside the

9    scope.  Because I -- I agree everything's prejudicial.  The

10   government wouldn't be offering if it wasn't.  But this point

11   it becomes unfairly prejudicial because we've gone into a crime

12   outside of just the exploitation of children, but the -- the

13   killing, maiming and decapitation of children.

14           THE COURT:  I will make a report and recommendation to

15   Judge Bataillon with regard to the motion in limine.  Keeping

16   in mind you have various aspects of when if there -- if it was

17   to be granted in any respect, whether it's during voir dire or

18   opening statements to so forth.  Obviously the problem is is

19   that if the testimony is going -- or the evidence is going to

20   be allowed that while it would be very shocking in voir dire

21   and opening statements unless the parties are unable -- or able

22   to explore whether or not a jury could sit during such a case

23   and while such evidence is being adduced.

24       That's critical to both sides with regards to whether or

25   not they could get a fair and impartial jury in the case.  But

1    I'll keep that all in mind when I make my report and

2    recommendation to Judge Bataillon on that matter.

3        The only other matter today is the defendant's motion for

4    modification of the detention order in the matter.  Is there

5    any other matters that's loose at this point?

6             MR. BECKER:  No, Your Honor.

7             MR. BERRY:  Not that I'm aware of, Your Honor.

8             THE COURT:  All right.  Mr. DeFoggi, you do have the

9    sympathy of the Court.  And I will not allow a furlough to

10   attend the funeral of your mother, but I would allow an escort

11   by -- suitable to the United States Marshals to and from -- to

12   and from a viewing or whatever.

13       However, such a -- such a trip is at defendant's expense.

14   The government is not going to pay for that.  And it may be

15   prohibitive because whether or not both the -- both the

16   transportation for yourself and for probably a minimum of two

17   marshals and so forth would be very prohibitive in the matter.

18       So I'm going to deny your motion for modification of the

19   detention order to the extent that you're seeking a furlough --

20   in other words that you get out and go to the funeral and come

21   back -- that is not going to happen according to my order.  But

22   what I would permit is if you arrange and show a financial

23   responsibility to the marshals, and whatever the marshals will

24   need for the purposes of such an escort, then I would permit

25   that.  But again it's going to be probably prohibitive in

1    expense in the matter.

2         But that being the case, that will be my order on that

3    thing.  And I'll get an order on that immediately so that if

4    you wish to appeal that order to Judge Bataillon you may do so.

5         The other orders will be submitted after the transcript is

6    filed in this matter, and then I'll have a report and

7    recommendation on file.

8         The one matter which you must attend to, Mr. Berry is the

9    30 day on our expert.

10             MR. BERRY:  Yes, Your Honor.

11             THE COURT:  And so that if there are any other motions

12   as a result of your report of your expert, I will -- they'll be

13   done within the 30 day too, in that period.  Okay?

14             MR. BERRY:  Yes, Your Honor.

15             THE COURT:  All right.  Presumably then after the

16   report and recommendation and if there's any objections to it,

17   the time Judge Bataillon needs to rule upon the motions within

18   the Speedy Trial Act, then the case will be set for trial.

19             MR. NORRIS:  Your Honor, I think the designated is

20   complex.

21             THE COURT:  Pardon?

22             MR. NORRIS:  The (indiscernible) we agree that this is

23   complex.

24             THE COURT:  Right.  It is a complex case, but we

25   still -- we still need to promptly get the matter to trial.

1           MR. BECKER:  We do have a trial date of April 28th,

2    Your Honor.

3           THE COURT:  Okay.  Exhibit 6 wasn't offered.  I take

4    it you wish that to be offered?

5           MR. BECKER:  Yes, Your Honor.  I'm sorry.

6           THE COURT:  All right.  I'll receive it.  Okay.

7    Anything further today?

8           MR. BECKER:  No, Your Honor.

9           MR. BERRY:  No, Your Honor.

10           THE COURT:  All right.  We're in recess.  Counsel's

11    excused.

12        (3:11 p.m., recessed.)

13        I, Vicki L. Jarchow, Transcriber, certify that the

14    foregoing is a correct transcript from the official electronic

15    sound recording of the proceedings in the above-entitled

16    matter.

17

18    Vicki L. Jarchow                  March 31, 2014
                                           Date
19

20

21

22

23

24

25