```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF NEBRASKA


UNITED STATES OF AMERICA,          )  8:13CR105-001
                                   )
         Plaintiff,                )
                                   )  Omaha, Nebraska
    vs.                            )  June 5, 2014
                                   )  2:53 p.m.
TIMOTHY DeFOGGI,                   )
                                   )
         Defendant.                )


          TRANSCRIPT OF HEARING ON MOTION TO DISMISS

          BEFORE THE HONORABLE THOMAS D. THALKEN

               UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:      Mr. Michael P. Norris
                        U.S. ATTORNEY'S OFFICE-OMAHA
                        1620 Dodge Street
                        Suite 1400
                        Omaha, Nebraska 68102


(telephonically)        Mr. Keith A. Becker
                        U.S. DEPARTMENT OF JUSTICE
                        CHILD EXPLOITATION SECTION
                        1400 New York Avenue, N.W.
                        Sixth Floor
                        Washington, DC 20530


For the Defendant:      Mr. John S. Berry, Jr.
                        BERRY, KELLEY LAW FIRM
                        2650 North 48th Street
                        Lincoln, Nebraska 68508


Proceedings transcribed from audiotape, transcript produced
with computer.
```

```
 1                         I-N-D-E-X

 2                              DIRECT   CROSS   REDIRECT   RECROSS

 3   GOVERNMENT'S WITNESSES:

 4     None

 5   DEFENDANT'S WITNESSES:

 6     None

 7

 8   EXHIBITS:                                  OFFERED   RULED

 9     None

10

11                                                         PAGE

12   CERTIFICATE OF TRANSCRIBER.............................  20
```

```
 1    (On June 5, 2014, at 2:53 p.m., the following proceedings were
 2    held:)
 3              THE COURT:  ...in United States versus Timothy
 4    DeFoggi, carrying the number 8:13CR105.  Counsel enter their
 5    appearance for the record, please.
 6              MR. NORRIS:  Your Honor, for the United States and
 7    present in the courtroom is Michael Norris.
 8              MR. BECKER:  Keith Becker for the United States
 9    participating via telephone.  Good afternoon, Your Honor.
10              THE COURT:  Good afternoon.
11              MR. BERRY:  John Berry present for the defendant
12    Timothy DeFoggi.
13              THE COURT:  All right.  We're here on the defendant's
14    motion to dismiss, filing number 138.  Mr. Berry?
15              MR. BERRY:  Your Honor, Mr. DeFoggi has both a
16    constitutional right and a statutory right to a speedy trial.
17    I realize that under Section 18, United States Code, Section
18    3161 there are some exceptions to the 70-day speedy trial
19    limit, and some of those exceptions are -- have been clearly
20    made in this case and for good -- for good cause.
21       However, Mr. DeFoggi regardless of whether 3161 is a
22    valid -- or an exclusion based on 3161 or a dismissal based on
23    3161 is -- is appropriate, it certainly is under a
24    (indiscernible) right to a speedy trial.  Mr. DeFoggi has been
25    in custody for over --
```

1           THE DEFENDANT:  14 months.

2           MR. BERRY:  -- 14 months.  I have provided the Court
3  with an index of my exhibits, Exhibits 101 through 105.  If
4  they are not considered by the Court as offered, I would offer
5  them at this time.

6           THE COURT:  Any objection?

7           MR. NORRIS:  No, Your Honor.

8           THE COURT:  Exhibit 101 -- make sure we have them
9  correctly -- is a letter from the defendant dated September 6,
10 2013; 102 is the forensic report dated October 28, 2013; 103 is
11 a motion for bill of particulars; 104 is a motion to extend
12 time to file pretrial motions; 105 is the government's motion
13 to set trial.  All right.  They will be received.

14      All right.  Mr. Berry, do you have further evidence?

15          MR. BERRY:  I have no further evidence to offer at
16 this -- the only other evidence I would offer is that Mr. --
17 I -- Mr. DeFoggi would proffer that a forensic report for
18 computers in this type of case should take seven to ten days.

19          THE COURT:  All right.  Mr. Norris.

20          MR. NORRIS:  Your Honor, I think I'm going to take
21 care of the speedy trial issue and I think Mr. Becker will take
22 care of the forensic issue, if that's all right with the Court.

23          THE COURT:  Very well.

24          MR. NORRIS:  And with the Court's permission, I'd like
25 to take up the speedy trial matter first.

```
 1              THE COURT:  You may.
 2              MR. NORRIS:  With regard to evidence, I would ask the
 3   Court to take judicial notice of the filings in this particular
 4   matter.
 5              THE COURT:  Which is?
 6              MR. NORRIS:  The docket sheets.  Just the docket
 7   sheet, and then I'll --
 8              THE COURT:  The docket sheet in 8:13CR105.
 9              MR. NORRIS:  Yes, Your Honor.
10              THE COURT:  So noted.
11              MR. NORRIS:  And then I can proffer for the Court my
12   speedy trial calculations and using the specific exclusions if
13   you wish, or I can represent to the Court or proffer to the
14   Court that by my calculations a total of 33 days have run.
15              THE COURT:  You may present your calculations so that
16   we'll have it on the record.
17              MR. NORRIS:  Sure.  You have a May 2nd of 2013
18   arraignment.  And Mr. Austin, who is a codefendant, makes his
19   initial appearance on May 22nd of 2013.  Right from the outside
20   there's -- outset there's excludable time.  And there's
21   excludable to July 26th of 2013 at the defendant Mr. DeFoggi's
22   request by his prior counsel Mr. Davis.  So as of July 26th of
23   2013 we're at zero.
24       Pretrial motions, again at the request of the defendant,
25   were extended to September 6th of 2013.  So as of September 6th
```

1       of 2013, we were at zero.

2              On August 7th of 2013 those motions were once again

3       extended at the request of the defendant until November 6th of

4       2013.  Again we're at zero.  On August 7th Mr. Austin joined

5       that motion and again he was given time until November 6th of

6       2013.

7              On November 6th of 2013 there were various motions filed, a

8       bill of particulars, a motion to sever.  The government's

9       response was filed on November 26th of 2013.  On December 2nd

10      of 2013 those motions were denied.  On December 11th of 2013

11      there was a motion to extend the pretrial motion deadline by

12      Mr. Davis.  And that was denied.

13             That's when the clock starts running.  So on January 14th

14      of 2014, it stopped with a motion to withdraw and a motion to

15      continue that's filed by Mr. Austin -- Austin.  So it's the

16      defendant Mr. DeFoggi's motion to withdraw.  That's when Mr.

17      Davis formally withdraws as counsel.  And Mr. Austin moves to

18      continue the pretrial motions.  That's 33 days have run between

19      December 11th of 2013 and January 14th of 2014.

20             Since that time not a -- not an additional day has run

21      based all the way up until this being determined a complex

22      case.  But even without the complex case designation, you still

23      have various motions that have been submitted to this Court,

24      have been filed by new counsel, and are either on appeal up to

25      the District Court or are pending this Court's determination.

1      THE COURT: Mr. Becker.

2      MR. BECKER: Your Honor, with respect to the forensic
3  issues in the case. First of all, as we've made clear both to
4  prior counsel and to current counsel the digital devices that
5  were seized from defendant's home have always been available
6  for defense examination. There's never been a point where that
7  wasn't available to -- to the defense in order to conduct their
8  own examination for -- for their own purposes.

9      I'm not aware of any basis for a conclusion that a
10 comprehensive forensic examination of numerous items of digital
11 evidence as were seized from the defendant's home should or can
12 or may be done comprehensively and accurately within seven to
13 ten days. Certainly that examination as -- as is reflected in
14 the examination report is one that is complex.

15     And of course as the Court and parties have recognized in
16 agreeing that this is, in fact, a complex case for speedy trial
17 purposes, one of those reasons is because of the forensics that
18 are involved. Not only with respect to digital devices seized
19 from the defendant, but of course because we're dealing with
20 a -- a website as well that is a -- a part of the evidence
21 here, a crucial part obviously of the evidence and -- and the
22 charges which does add an extra dimension to the case as a
23 whole.

24     There has been no purposeful delay on behalf of the
25 government or I -- or do I understand the defendant making any

1  allegations of any -- any purposeful delay on behalf of the
2  government.  We are -- we are obviously preparing for trial in
3  accordance with the current schedule set by the Court.
4      In terms of the -- of the issues related to the -- the
5  witness who is required, and we have submitted as we're noted
6  for the Court previously our request through the mutual legal
7  assistance process to gain the availability of that witness.
8  You know, that -- those sorts of matters are also contemplated
9  by the Speedy Trial Act and a valid reason for again some delay
10 in -- in a trial (indiscernible) or that those sorts of issues
11 be resolved.  We are of course not able to control
12 (indiscernible) of that because it's a diplomatic process and
13 ultimately the final decision on whether that witness will be
14 made available rests with another foreign government, over
15 which the United States doesn't have control.
16     I can update the Court that I have -- I've spoken with the
17 witness.  There are not any issues that we're aware of in terms
18 of that witness' availability or willingness to testify, but
19 that witness is not a diplomatic decision maker.  Ultimately
20 that process has to -- has to run through.  And the witness
21 itself is not the person -- or not a person who has any control
22 over that -- that process itself.
23     And so we -- we don't believe that there's any
24 justification for dismissal here either pursuant to the Speedy
25 Trial Act or under any constitutional speedy trial theory.

1          THE COURT: Mr. Berry.

2          MR. BERRY: Your Honor, Exhibit 101 is a letter from

3    Mr. DeFoggi not only requesting reinstatement of his speedy

4    trial right, but is his -- his -- his demand to have a trial as

5    soon as possible. And Exhibit 102 is the forensics report in

6    this case. It provides the Court with information that was --

7    that was -- that was in that report.

8       103 -- Exhibits 103 and 104 specifically discuss the delays

9    in getting that report. It's Mr. DeFoggi's position that such

10   report could have been prepared in seven to ten days. A delay

11   in preparing the report has violated his constitutional right

12   to a speedy trial notwithstanding 18 United States Code 3161

13   and some of the exclusions that may apply to this case.

14         Furthermore, Mr. DeFoggi would point out that Exhibit 105

15   specifically addressing a witness from Russia has to do with

16   a -- apparently a website called Image Source, which Mr.

17   DeFoggi argues is outside of the Tor network which is the --

18   the subject of this trial, Mr. DeFoggi's alleged participation

19   in the Tor network. And therefore, this out-of-country witness

20   is completely irrelevant to Mr. DeFoggi's case. This

21   out-of-country's witness relation to Image Source is not

22   relevant to Mr. DeFoggi's participation (indiscernible) or with

23   anything else related to this case and, therefore, is again an

24   unnecessary delay.

25         So based on these factors, specifically that there was a

1  delay in providing the forensics report of six-and-a-half to
2  seven months and now a delay to gain another witness from
3  another country regarding a site different than the subject
4  matter of the trial, that his constitutional right to a speedy
5  trial under the Sixth Amendment has been violated, and he has
6  been sitting in custody for almost 14 months now.  And that is
7  the extent of what I wanted to tell the Court.
8      If the Court would indulge, I believe Mr. DeFoggi would
9  like to address the Court as well.
10          THE COURT:  Mr. DeFoggi, you can make a statement.
11 However, you should be aware that you have the -- under the
12 Fifth Amendment to the United States Constitution you cannot be
13 compelled to make a statement in this case; that if you do make
14 such a statement it can be used against you in these
15 proceedings or elsewhere; that if you do not make a statement,
16 I cannot use that against you in a determination on your
17 motion.
18      And is the defendant going to -- is this going to be a
19 sworn or unsworn statement?
20          MR. BERRY:  It's going to be unsworn, Your Honor.
21          THE COURT:  All right.
22          MR. BERRY:  It's going to be argument.
23          THE COURT:  And then -- and you should also be aware
24 that a sworn statement has more weight because it is subject to
25 cross-examination.  An unsworn statement does not have such

1  weight, but also has weight to be considered by the Court in
2  light of all the other evidence in the case.  And knowing all
3  that, do you still wish to make a statement in this case?
4          THE DEFENDANT:  I do, Your Honor.  And if the
5  government wishes to pursue perjury charges at some date based
6  on their belief that anything I say today is non-factual --
7          THE COURT:  Well, no, it's not so much -- it's not so
8  much of the perjury charges, although you should be aware that
9  that's -- that's a possibility, what I was talking about
10 with -- with -- also with regard to a sworn statement is that
11 if you make a sworn statement the government could
12 cross-examine you as to your statement.  If it's an unsworn
13 statement the government will not be able to cross-examine you.
14 But I also could inform you that an unsworn statement has less
15 weight than a sworn statement in the ordinary circumstance.
16         THE DEFENDANT:  I understand, Your Honor.
17         THE COURT:  All right.  Now, given that explanation,
18 first of all, do you wish to make a sworn or unsworn statement?
19         THE DEFENDANT:  Unsworn statement, Your Honor.
20         THE COURT:  All right.  And then you may make such
21 statement at this time then.
22         THE DEFENDANT:  Thank you, Your Honor.  And it
23 shouldn't take more than five minutes, but in order to speak to
24 the forensic report, I wanted to quickly --
25         THE COURT:  Pull the microphone closer to you to make

1  sure we have you on a recording.

2              THE DEFENDANT:  I wanted to make sure that I reiterate
3  my background from over a year ago when I had my pretrial
4  hearing, because that will provide the Court with some
5  assurance that my estimate of seven to ten -- seven to ten days
6  is a valid argument in this case.

7       But so the background I just wanted to go over once again
8  is I have four years of college of mathematics, 16 industry IT
9  certifications which is equivalent to about another five years
10 of college.  That's about nine years of college.

11      I attended courses on how to make nuclear weapons, how to
12 make dirty bombs as part of my job.  I developed technology for
13 the intelligence community to address threats within the
14 intelligence community, foreign intelligence and that sort of
15 thing.  I attended regular meetings at the CIA to actually spy
16 on the spies in -- within the federal government and develop
17 technology to identify individuals who are releasing
18 information to foreign countries.

19      Many of these -- in all of these cases I received awards
20 for going -- developing technology and going well beyond the
21 duty of what was expected of me.  I also had a higher clearance
22 than probably most anybody at the FBI justice department or
23 CIA, because I had a TS/SCI.  I also had a Q, which gave me
24 access to nuclear weapons which the CI and FBI and justice and
25 them would not have had.

1      And to speak more specifically to the forensics before, I
2 was director of cybersecurity for a federal agency for
3 three-and-a-half years.  In that role I dealt with intrusions
4 by China and various countries.  And in that, forensics was a
5 large role in -- in that particular position.  And so I have a
6 vast experience in the forensic realm and what needs to be done
7 and how much data you've collected.
8      And based on what they collected at my residence, in my
9 experience as a director of cybersecurity for a federal agency,
10 I could've had that done, my department would've had that done
11 in seven to ten days maximum.  They took -- Mr. Davis didn't
12 actually get that for seven months.  About seven months.  But
13 it took them six-and-a-half months to do the report.
14      That was a -- an enormous delay that, you know, Mr. Davis
15 or I, neither one of us could pursue a trial until we get the
16 forensics report.  Because, well, Mr. Becker said that we had
17 access to look at it any time we wanted, the fact of the matter
18 is they hadn't completed a forensics report yet.  So that
19 prevented us.  That took six-and-a-half or seven months --
20 seven months in actuality, where we could not move forward
21 because we did not have the forensic report from the FBI.
22      So that's a significant delay that was out of our -- my
23 control, rather, my attorney's control.  And that significantly
24 impacted my ability to -- to a speedy trial.
25      And I would like to sum up what -- up until the -- the

 1  point where we -- where an indictment was issued, back in
 2  October of 2006 this started out where the FBI contacted by
 3  telephone a confidential informant who claimed to be a -- the
 4  former director of the Federal Trade Commission.  That
 5  individual alleged no illegal activity on my part, yet they
 6  issued four administrative subpoenas for my e-mail and
 7  telephone records without any probable cause whatsoever.
 8      Then from there, we go into the Tor network where there was
 9  an alleged -- well, there was a -- a forum where somebody
10  posted that they liked fantasy chat, explicitly saying fantasy
11  chat.  There was a similar user name.  But the fact of the
12  matter is this individual wrote that there was -- there was
13  fantasy chat.
14      There was no evidence -- when I looked through the report,
15  I saw no evidence of any transmission of illegal activity, or
16  transmission of any type of pornographic images at all.  No
17  downloading specifically of any illegal content.  And four
18  images that were viewed.  And that's the extent of the
19  information that was provided to get the indictment.
20      Fantasy chat and four images that were viewed, and I'm
21  sitting here for 14 months based on their loose definition of
22  probable cause.  Which is why from the very beginning I have
23  asked to go to trial.  And for whatever reason there's -- this
24  is determined complex, which based on what the evidence is I
25  don't see it as a complex case from a technological standpoint.

1           But the fact of the matter is I've been asking and
2    demanding to go to trial since the day I was arrested.  14
3    months later I'm still sitting here.  The trial has been
4    rescheduled now for a fourth time.  And now we're waiting on
5    someone from Russia who is unrelated to the Tor network,
6    related to Image Source -- and by the way, Image Source in the
7    indictment they specifically stated there was no evidence of
8    pornographic images, and there was no evidence that there was
9    any transmission, downloading, anything of pornographic images
10   again.  And I'm sitting here for 14 months.  So, Your Honor,
11   I -- I really feel that it's just to take this to trial.
12          I would also just raise one other issue that you had --
13   when you responded to my letter back in December 17th.  There
14   is likely to be classified information disclosed at trial.  Mr.
15   Becker and Mr. Norris did get copied on your letter, so they
16   have -- the 30-day notification has been met.  And they have a
17   list of all the classified systems I've worked on.
18          Some of that may be related, so I will -- there may be a
19   need to disclose classified information.  And there also could
20   be some political fallout, based on part of that could've
21   related to Benghazi, and some embassy issues that were raised
22   in another classified report.
23          So that's just something I wanted to raise to the awareness
24   of the Court that there will likely be classified information
25   released in court, but the government has been notified and

1   they've gotten their 30-days notice.

2       But the bottom line is, Your Honor, I would ask the Court
3   to move this to trial as quickly as possible.  As you know, I
4   lost my mother during this.  But anyway that's all I have.

5           THE COURT:  All right.  Mr. Becker, you may respond in
6   argument.

7           MR. BECKER:  I just -- I'll be brief, Your Honor.
8   There is no right either under the Speedy Trial Act or -- or
9   really any other law to a forensic report from the government
10  regarding items seized.  The defense's choice was to wait and
11  get the results of that before they wanted to move forward.
12  They weren't required to make that choice.  They could've
13  employed any examiner of their own, done their own examination,
14  come to their conclusions, done it in seven to ten days if they
15  believe that it could've been done in that period of time and
16  then said they were prepared to go to trial.

17      That's not what they opted to do.  And so I just want to
18  (indiscernible) that point.  We're not dealing in something
19  that there was some -- some right to that ultimately caused a
20  delay.

21      With regard to the relevance of the information regarding
22  the website Image Source, I think frankly we -- we went over
23  that the -- the prior hearing where we discussed the current
24  trial date.  I don't want to belabor the point, but the -- the
25  obvious relevance of it is that the user name used on the Image

1 Source site is the exact same user name that Mr. DeFoggi used
2 on Pedobook. And that user name on Image Source is tied
3 directly to Mr. DeFoggi's home via an IP address. That is
4 crucial extremely probative identifying evidence helping to
5 prove that Mr. DeFoggi is in fact PTasseater/fuckchrist from
6 Pedobook. So, you know, that is -- that is important and
7 probative evidence and as we -- as we discussed at the prior
8 hearing.
9      THE COURT: All right. Anything further from either
10 side?
11      MR. NORRIS: Your Honor, if I may, with regard to any
12 letters that Mr. DeFoggi has written, if he wrote a letter to
13 you and you shared with us then we would've received it. If he
14 copied me in on a letter, I would've sent it directly to
15 counsel without looking at it. So just for the record that's
16 all I wanted to -- to set forth.
17      THE COURT: All right.
18      MR. NORRIS: And I -- I do recall getting a letter
19 from you from him --
20      THE COURT: All right.
21      MR. NORRIS: -- to all counsel.
22      THE COURT: As -- as I -- as I recall -- I receive
23 letters, and when I receive letters from defendants I send a
24 copy of it to counsel, both his own counsel and opposing
25 counsel, because it's a communication with the Court and I

1    don't feel that it's privileged in that respect, so that both
2    counsel -- and they -- once they get the letter they can do
3    with it as they wish with regard to the content.
4         The -- with respect to the motion to dismiss for lack of a
5    speedy trial will be taken under advisement upon the filing of
6    a transcript in this matter so that I can -- and we'll get --
7    expedite the transcript in this matter so that we'll have a
8    full transcript of -- of what parties' positions are.
9         With another matter of which Mr. -- so that we don't have
10   any -- in the event the motion is denied, and the matter
11   remains for trial I believe August 18th, as I recall, the --
12   Mr. DeFoggi raises the issue with regards to the Classified
13   Information Act and whether or not we're going to have some
14   issues there that we need to start working on so that we can
15   proceed to trial without delay.
16             MR. NORRIS:  I've never had that issue come up.
17   Perhaps Mr. Becker --
18             THE COURT:  Mr. Becker.
19             MR. NORRIS:  -- can speak more to this.  But I would
20   imagine that we'd have to have more specifics as to what it is
21   that is likely to come out and why.
22             THE COURT:  All right.  Mr. Becker.
23             MR. BECKER:  It's not going to -- classified
24   information isn't going to be coming from the government in
25   this trial, Your Honor.  I really don't know what Mr. DeFoggi's

1   referring to.
2           THE COURT:  All right.  All right.  Mr. Berry -- Mr.
3   Berry, I'll address you in that if you -- if the defendant
4   intends to insert or inject such matters into the trial of this
5   matter, that you will place a sealed notice of -- of that on
6   file so that there -- the appropriate statutory actions may be
7   taken in this matter.  And I will require that you do that by
8   July 1st.  And that'll be in the form of a filing, but a sealed
9   filing, with copy to counsel for the government.
10          MR. BERRY:  Yes, Your Honor.
11          THE COURT:  All right.  Now, the exhibits that we have
12  is the ones that are contained in -- make sure that we have
13  it -- filing number 143; is that correct, Mr. Berry?  Is
14  that -- I think that's filing number 143.  It's your index in
15  support of the defendant's motion to dismiss.
16          MR. BERRY:  Yes.  Yes, Your Honor, I believe so.
17          THE COURT:  All right.  And so they're a part of the
18  record and they're under restricted access at this point.
19      Is that correct, Mary Beth?
20          THE COURTROOM DEPUTY:  Yes, Your Honor.
21          THE COURT:  All right.  They're restricted, so --
22  to -- to the counsel in this matter.  So there will be no need
23  to -- I have the documents here and it -- because we'll just
24  take judicial notice of that filing.  Okay?
25          MR. BERRY:  Yes, Your Honor.

1    THE COURT:  All right.  Anything further from either
2  side?
3    MR. BECKER:  No, Your Honor.
4    THE COURT:  Mr. Berry?
5    MR. BERRY:  No, Your Honor.
6    THE COURT:  All right.  We'll be in recess.  Counsel
7  are excused.
8    MR. BECKER:  Thank you, Your Honor.
9    THE COURT:  Thank you, Mr. Becker.
10   MR. BECKER:  Thank you, Your Honor.
11      (3:22 p.m., recessed.)
12      I, Vicki L. Jarchow, Transcriber, certify that the
13  foregoing is a correct transcript from the official electronic
14  sound recording of the proceedings in the above-entitled
15  matter.
16
17  Vicki L. Jarchow                June 9, 2014
                                          Date
18
19
20
21
22
23
24
25