IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | 8:13CR105 |
| ) | |
| vs. ) | |
| ) | |
| TIMOTHY DeFOGGI, ) | |
| a/k/a fuckchrist, ) | |
| a/k/a PTasseater, ) | |
| ) | |
| Defendant. ) | |

**TRIAL MEMORANDUM OF THE UNITED STATES**

Prepared and Submitted by:

DEBORAH R. GILG
United States Attorney
for the District of Nebraska

MICHAEL P. NORRIS
Assistant U.S. Attorney
Suite 1400
1620 Dodge Street
Omaha, NE 68102

KEITH BECKER
DOJ Trial Attorney
1400 New York Ave NW 6th Floor
Washington, DC 20530
(202) 305-4104

SARAH CHANG
DOJ Trial Attorney
1400 New York Ave NW 6th Floor
Washington, DC 20530
(202) 353-4979

This memorandum is submitted in support of the prosecution of defendant Timothy DeFoggi for child pornography and child exploitation crimes. Defendant is charged with one count of Engaging in a Child Exploitation Enterprise, in violation of 18 U.S.C. § 2252A(g), one count of Conspiracy to Advertise Child Pornography, in violation of 18 U.S.C. § 2251(d)(1) & (e), one count of Conspiracy to Distribute Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1), and four counts of Accessing with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) in the District of Nebraska. This memorandum sets forth the elements of the offenses, the factual background, a list of the government's expected witnesses, and anticipated factual stipulations agreed upon by counsel.

**I.     Elements of the Offenses:**

    **A.     COUNT 1**

To find a defendant guilty of 18 U.S.C. § 2252A(g) as alleged in Count One, the government must prove each of the following elements beyond a reasonable doubt:

1. That between on or about March 2, 2012 and on or about December 8, 2012, in the District of Nebraska and elsewhere, defendant knowingly engaged in a series of three or more separate predicate felony violations. For purposes of 18 U.S.C. § 2252A(g), predicate felony violations include violations of Chapter 110 of the United States Code. Each of the charges in the seven count indictment charges defendant with a violation of Chapter 110.

2. That more than one minor victim was involved in the series of violations.

3. That the series of felony violations involved three or more persons with whom defendant acted in concert[1] to commit the predicate acts.

*See United States v. Daniels*, 653 F.3d 399, 412-13 (6th Cir. 2011); 18 U.S.C. § 2252A(g).

---

[1] To act "in concert" requires "proof of an agreement that would also violate [a] conspiracy offense." *United States v. Wayerski*, 624 F.3d 1342, 1350-51 (11th Cir. 2010) (applying court interpretations of the phrase "in concert" in 18 U.S.C. § 848 to Section 2252A(g)). *See also Rutledge v. United States*, 517 U.S. 292, 300 (1996) (explaining that "because the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or enterprise, . . . . this element of the CCE offense requires proof of a conspiracy that would also violate § 846."). However, it is not necessary that each individual predicate have been committed in concert with three or more other persons. Rather, "the required total of three other persons may be tallied by considering the predicate counts together." Daniels, 653 F.3d at 412.

### B. COUNT 2

To find defendant guilty of 18 U.S.C. § 2251(d)(1) & (e) as alleged in Count Two, the government must prove each of the following elements beyond a reasonable doubt:

1. That between on or about March 2, 2012 and on or about December 8, 2012, in the District of Nebraska and elsewhere, two or more people reached an agreement to commit the crime of advertising child pornography, the defendant voluntarily and intentionally joined the agreement, and the defendant knew the purpose of the agreement at the time the defendant joined the agreement.

*See United States v. May*, 476 F.3d 638, 641 (8th Cir. 2007) ("To obtain a conviction for conspiracy, the Government must prove (1) the existence of an agreement to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) the defendant's knowing participation in the agreement."); *see also United States v. Rodriguez-Mendez*, 336 F.3d 692, 695 (holding that it is not necessary that all of the conspirators have known each other to prove a conspiracy) (citing *United States v. Romero*, 150 F.3d 821, 825 (8th Cir. 1998). *See United States v. Lippner*, 676 F.2d 456, 466 (11th Cir. 1982); *See also Dickerson v. United States*, 18 F.2d 887, 893 (8th Cir. 1927) ("To warrant a conviction for conspiracy to violate a criminal statute, the evidence must disclose something further than participating in the offense which is the object of the conspiracy; there must be proof of the unlawful agreement, either express or implied, and participation with knowledge of the agreement.").

<u>Elements of Advertisement</u>

1. That between on or about March 2, 2012, and on or about December 8, 2012, in the District of Nebraska and elsewhere, the defendant knowingly [made/printed/published/caused to be made/caused to be printed/caused to be published] a [notice/advertisement];

2. The [notice/advertisement] sought or offered:
    a. To [receive/exchange/buy/produce/reproduce/display] any [visual depiction], if the requested production of [the visual depiction] would involve a real person under the age of 18 years engaging in sexually explicit conduct, or

3

      b. Participation in any act of sexually explicit conduct [by/with] a person under the age of 18 years for the purpose of producing a visual depiction of such conduct; and

      c.

          i. The defendant knew or had reason to know the [notice/advertisement] would be transported [in interstate or foreign commerce by any means] [or transmitted using any means of facility of interstate or foreign commerce], including by computer or by mail; or

          ii. Such [notice/advertisement] was actually transported [in interstate or foreign commerce by any means] [using any means or facility of interstate or foreign commerce], including by computer or by mail.

*See* Pattern Criminal Jury Instructions of the Eighth Circuit (2013 ed.), 6.18.2251(d)(1)-(2), 449-52.

## C. COUNT 3

To find defendant guilty of 18 U.S.C. § 2252A(a)(2) and (b)(1), the government must prove beyond a reasonable doubt the following elements:

1. That between on or about March 2, 2012 and on or about December 8, 2012, in the District of Nebraska and elsewhere, two or more people reached an agreement to commit the crime of distributing child pornography, the defendant voluntarily and intentionally joined the agreement, and the defendant knew the purpose of the agreement at the time the defendant joined the agreement.

*See United States v. May*, 476 F.3d 638, 641 (8th Cir. 2007) ("To obtain a conviction for conspiracy, the Government must prove (1) the existence of an agreement to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) the defendant's knowing participation in the agreement."); *see also United States v. Rodriguez-Mendez*, 336 F.3d 692, 695 (holding that it is not necessary that all of the conspirators have known each other to prove a conspiracy) (citing *United States v. Romero*, 150 F.3d 821, 825 (8th Cir. 1998). *See United States v. Lippner*, 676 F.2d 456, 466 (11th Cir. 1982); *See also Dickerson v. United States*, 18 F.2d 887, 893 (8th Cir. 1927) ("To warrant a conviction for conspiracy to violate a criminal statute, the evidence must disclose something further than participating in the offense which is

the object of the conspiracy; there must be proof of the unlawful agreement, either express or implied, and participation with knowledge of the agreement.").

Elements of Distribution

1. Between on or about March 2, 2012 and on or about December 8, 2012, the District of Nebraska and elsewhere, the defendant knowingly [distributed] [name of item or items] that contained [a/multiple] visual depiction(s) of child pornography;

2. That the defendant knew that the visual depiction(s) [was/were] of a minor engaging in sexually explicit conduct; and

3. That the [material containing the] visual depiction(s) had been [mailed/shipped/transported] [by computer] in interstate or foreign commerce.

*See* Pattern Criminal Jury Instructions of the Eighth Circuit (2013 ed.), 6.18.2252, 455.

### D. COUNTS 4-7

To find defendant guilty of 18 U.S.C. § 2252A(a)(5)(B), the government must prove the following elements beyond a reasonable doubt:

1. That on or about November 21, 2012, November 26, 2012, December 4, 2012, and December 8, 2012, in the District of Nebraska and elsewhere, the defendant knowingly [accessed with intent to view] [name of item or items] that contained [a/multiple] visual depiction(s) of child pornography;

2. That the defendant knew that the visual depiction(s) [was/were] of a minor engaging in sexually explicit conduct; and

3. That the [material containing the] visual depiction(s) [was/were produced using materials that] had been [mailed/shipped/transported] [by computer] in interstate or foreign commerce.

*See* Pattern Criminal Jury Instructions of the Eighth Circuit (2013 ed.), 6.18.2252, 455.

### DEFINITIONS

**DEFINITION: "child pornography"**
**§ 2256(8)** For purposes of this chapter, the term "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

5

(A) The production of such visual depiction involves the use of a minor engaging in ***sexually explicit conduct***;
(B) Such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
(C) Such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

**DEFINITION: "sexually explicit conduct"**
**§ 2256(2)**
**(A)** Except as provided in subparagraph (B), "sexually explicit conduct" means actual or simulated—
**(i)** sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
**(ii)** bestiality;
**(iii)** masturbation;
**(iv)** sadistic or masochistic abuse; or
**(v)** lascivious exhibition of the genitals or pubic area of any person;[2]

**DEFINITION: "interstate commerce" and "foreign commerce"**
**§ 10,** *See also* Pattern Criminal Jury Instructions of the Eighth Circuit (2013 ed.), 6.18.2252B, 459.
The term "interstate commerce", as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia.
The term "foreign commerce", as used in this title, includes commerce with a foreign country.

**MENS REA – KNOWLEDGE**

All of the substantive counts of the indictment incorporate knowledge requirements. In

the Eighth Circuit, the word "knowingly" does not need to be defined. *See United States v.*

---

[2] The Eighth Circuit has held that "more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the statute." *United States v. Kemmerling*, 285 F.3d 644, 645-46 (8th Cir. 2002) (citing *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999)). In *Kemmerling*, the Eighth Circuit found that a picture is "lascivious" "only if it is sexual in nature." *Id.* at 646. As an example, the *Kemmerling* court provided the following instance: "the statute is violated, for instance, when a picture shows a child nude or partially clothed, when the focus of the image is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer." *Id.* Importantly, the *Kemmerling* court emphasized that "the relevant factual inquiry . . . is not whether the pictures in issue appealed, or were intended to appeal, to [the defendant's] sexual interests but whether, on their face, they appear to be of a sexual character." *Id.* The Eighth Circuit has also found it helpful to refer to the six criteria suggested in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). Of the six *Dost* factors, the Eighth Circuit found most helpful the following three to determine whether an image is lascivious: 1) when the child is nude or partially clothed; 2) when the focus of the depiction is the child's genitals or pubic area; and 3) when the image is intended to elicit a sexual response in the viewer. *See Horn*, 187 F.3d at 789. The Eighth Circuit then went on to say that "the *Dost* criteria are neither definitive nor exhaustive." *Id. See also* Pattern Criminal Jury Instructions of the Eighth Circuit (2013 ed.), 6.18.2252A, 458.

*Smith*, 635 F.2d 716, 719-20 (8th Cir. 1980); *United States v. Gary*, 341 F.3d 829, 834 (8th Cir. 2003). An instruction is required only where necessary for a fair determination of the defendant's guilt or innocence. *United States v. Brown*, 33 F.3d 1014, 1017 (8th Cir. 1994). If a definition is requested and deemed necessary, the Eighth Circuit Pattern Jury Instructions recommend:

> The [government] [prosecution] is not required to prove that the defendants knew that [his] [her] [their] acts or omissions were unlawful. An act is done knowingly if the defendants are aware of the act and does not act [or fail to act] through ignorance, mistake, or accident. You may consider evidence of the defendants' words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

A similar instruction was approved in *United States v. Dockter*, 58 F.3d 1284 (8th Cir. 1995).

In most statutes, the word "knowingly" does not require proof that the defendant knew he was violating the law. In *Bryan v. United States*, 524 U.S. 184 (1998), the Court explained:

> [T]he term "knowingly" does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law."

*See, e.g., United States v. Udofot*, 711 F.2d 831, 835-37 (8th Cir. 1983) [18 U.S.C. § 922(e)]; *United States v. Enochs*, 857 F.2d 491, 493 (8th Cir. 1988) [18 U.S.C. § 511(a)]. *See also United States v. Hutzell*, 217 F.3d 966, 968 (8th Cir. 2000) (statute providing penalties for those who "knowingly" violate separate statute prohibiting possession of a firearm by one who has been convicted of misdemeanor crime of domestic violence requires government to prove only that the defendant knew of facts constituting the offense, not that he knew it was illegal for him to possess a gun; statute does not require knowledge of the law nor an intent to violate it); *United States v. Sinskey*, 119 F.3d 712, 715-16 (8th Cir. 1997) (to establish that the defendant "knowingly violated" Clean Water Act (CWA) discharge limitations or condition or limitation contained in implementing permit, as basis for criminal liability, government was not required to

7

prove that the defendant knew that his acts violated either CWA or permit, but merely that he was aware of conduct that resulted in permit's violation); *United States v. Farrell*, 69 F.3d 891, 893 (8th Cir. 1995) (to prove knowing violation of Firearms Owner's Protection Act (FOPA) provision which prohibits transfer of possession of machine guns, as required for imposition of statutory penalty, government need only prove knowing and intentional conduct, not knowledge of the law). Nor does "knowingly" require knowledge of federal involvement. *United States v. Yermian*, 468 U.S. 63, 75 (1984) (18 U.S.C. § 1001).

## **PROVING A "MINOR"**

The Supreme Court in *United States v. X-Citement Video, Inc.,* 513 U.S. 64 (1992), held with respect to a different statute, 18 U.S.C. § 2252(a)(1) and (2), that proof of scienter as to the age of the person depicted is required for conviction. While the phraseology of § 2252A(a) is different, in that it uses the phrase "child pornography" instead of "visual depiction involving the use of a minor," the statute also contains as an element scienter of the age of the person depicted. *See United States v. Acheson*, 195 F.3d 645, 653 (11th Cir. 1999). Courts have also held that the scienter requirement extends to knowledge that the visual depictions were sexually explicit. *X-Citement Video, Inc.*, 513 U.S. at 78 (' 2252(a)(2)); *United States v. Fabiano*, 169 F.3d 1299, 1303-04 (10th Cir. 1999); *United States v. Cedelle*, 89 F.3d 181, 185 (4th Cir. 1996).

The age of the child depicted may be proved by, *inter alia*, language used by the defendant in correspondence; Postal Inspector's professional and personal familiarity with child development; and a pediatrics professor's testimony. *United States v. Broyles*, 37 F.3d 1314, 1317-18 (8th Cir. 1994); *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001). In *United States v. Vig*, 167 F.3d 443, 449-50 (8th Cir. 1999), the court found that the jury could draw its own independent conclusion as to whether real children were depicted by examining the images

8

presented to them. Finally, in *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003), the court held that the government is not required to introduce affirmative evidence that images of children were *not* computer generated.

*See* Pattern Criminal Jury Instructions of the Eighth Circuit (2013 ed.), 6.18.2252, 447.

In the present case, most of the images found on PedoBook depict prepubescent as well as baby/toddler aged minors. The jury will be able to draw their own independent conclusion as to whether the depicted children are minors.

### EVIDENCE OF SIMILAR CRIMES UNDER RULE 414

The government intends to introduce evidence of child pornography possessed by the defendant at his home in Maryland, which was found on computers seized from his home at the time of his arrest. This evidence is direct evidence relating to the charges in the indictment. However, to the extent that the Court were to determine that the evidence was not directly related or inextricably intertwined evidence, the evidence is clearly admissible under Rule 414(a) and 404(b) of the Federal Rules of Evidence. The evidence is directly probative of intent, knowledge, identity, motive and lack of mistake. Rule 414(a) of the Federal Rules of Evidence provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). "Child molestation" is defined as, *inter alia*, a crime under Federal or State law that involved conduct proscribed under Chapter 110 of Title 18 the United States Code. *Id.* Conspiracies and attempts are also included. *Id.*. Here, all of the offenses with which the defendant is charged, as well as the uncharged offense of possession of child pornography in the State of Maryland, are violations of Chapter 110. This evidence is accordingly "admissible unless its probative value is substantially

outweighed by one or more of the factors enumerated in [Fed. R. Evid.] 403, including the danger of unfair prejudice." *United States v. Axsom*, 2014 WL 3805452, at *2 (8th Cir. 2014) (quoting *United States v. Coutentos*, 651 F.3d 809, 819 (8th Cir. 2011); *see also United States v. Reynolds*, 720 F.3d 665 (8th Cir. 2013).

**OTHER CRIMES, WRONGS OR ACTS**

The government may introduce evidence of defendant's other crimes, or acts pursuant to Federal Rule of Evidence 404(b). Rule 404(b) of the Federal Rules of Evidence has long been viewed as a rule of inclusion. *See United States v. Kohl*, 537 F.3d 923 (8th Cir. 2008); *United States v. Brown*, 499 F.3d 817, 822 (8th Cir. 2007). "To be admissible under Rule 404(b), which is a rule of inclusion, [the evidence] must be (1) relevant to a material issue, such as intent, (2) proved by a preponderance of the evidence, (3) greater in probative value than prejudicial effect, and (4) similar in kind and close in time to the charged offense." *United States v. Jones*, 255 F.3d 916, 919 (8th Cir. 2001).

**FORFEITURE**

The indictment also provides notice that the government intends to seek forfeiture of any and all property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of Counts One through Seven as well as any and all property used or intended to be used in any manner or part to commit and to promote the commission of Counts One through Seven.

II.     **Factual Background**

   A.     **Originating National Operation**

This case stems from a nationwide operation which targeted the users of three separate Tor-network child pornography websites that were hosted in Omaha, Nebraska. The websites

10

were run by a single administrator – Aaron McGrath – who was convicted in the United States District Court for the District of Nebraska with Engaging in a Child Exploitation Enterprise in connection with his administration of one of the sites. McGrath was arrested in November of 2012. The child pornography sites, including PedoBook, were seized. They continued to operate for a period of weeks at an FBI facility in Omaha. During that time period, Title III Electronic Intercepts were conducted on two of the sites to monitor users' communications and various investigative techniques were deployed on each of the three sites in an effort to defeat the anonymous browsing technology afforded by the Tor network and identify the actual IP addresses of site users. These investigative techniques successfully revealed the true IP addresses of approximately 25 domestic users who accessed the sites (a small handful of domestic suspects were identified through other means, and numerous foreign-based suspect IPs were also identified). In March 2013, 25 individuals were indicted in the District of Nebraska in five separate indictments.[3] Two additional individuals were indicted in the District of Nebraska on the same charges in August, 2013.

### B. PedoBook

PedoBook was one of the websites run by McGrath that operated on the Tor network and whose primary purpose was the advertisement and distribution of child pornography as well as the discussion of matters pertinent to the sexual abuse of children. The rules of the site, which were accessible on the main page to anyone who accessed PedoBook, described it as a tool for communication among pedophiles to discuss their interests and share "content." Users could register on PedoBook with a username and a password. Once registered, users could set up a profile that included a picture, personal information, contact information, and other functions

---

[3] Users who acted anonymously, were initially charged as "John Doe a/k/a [IP address used to access site on DATE]."

11

such as blogs, uploaded files, web pages, or polls. Many users had a user photo, sometimes called an "avatar," that was in and of itself an image of child pornography. Although users could register and set up their own profile, most of the site was accessible to any user without registration or log in. The only exceptions were pages of private groups and users' private messages.

PedoBook contained a section that compiled all files posted by users. Within that section were images and videos. The section contained more than 17,000 images, all of which depicted children. All of those images were accessible to any user who accessed the site. Those images depicted minor children engaging in sexually explicit conduct with adults or other children, minor children posed while exposing their genitals, or images of child erotica. Most of those images were of prepubescent children. Many of those images depicted infant and toddler-aged children being sexually abused by adults or posed to expose their genitals. The section also contained approximately 120 videos. The file names of those videos were consistent with child pornography, including titles such as "Dad Cum in 4y0 mouth" and "smiling pretty 4y0 girl sucks big dick." Agents reviewed videos posted which included videos of minor children, most of whom are prepubescent, engaging in sexually explicit conduct with adults or other children.

PedoBook also contained a section for users to set up groups. There were over 300 groups as of November 17, 2012. Any user could start a group. Within a group, users could post images and messages which were visible to all group members. Groups could be open or closed. The vast majority of groups on PedoBook were open. In an open group, all users who access PedoBook, even those who have not registered and logged in with a username and password, could view images and messages posted to the group. In a closed group, messages and images were visible only to group members.

The names and descriptions of all groups on PedoBook were listed and visible to anyone who accessed the site, whether the group was open or closed. The number of members in any given group varied from a handful to dozens to hundreds to over a thousand. Although labeled as groups on PedoBook, the open groups which were accessible to all users essentially functioned as labels or subcategories for postings of distinct types of child pornography on the site. For example, there was a group with over 1,000 members whose stated purpose was to gather/share pictures and videos produced only in 2012. That group's pages contained numerous images of infant and toddler aged children whose genitals are exposed and/or are being subjected to sexual abuse. Other open groups on PedoBook were dedicated to, for example: sexually explicit images of kindergarten age girls ages 4-8; images of a well-known and often traded series of child pornography involving the molestation of a prepubescent female by her father, who published the images to the Internet; and numerous images of infant and toddler aged children being sodomized. Other open groups with more than 100 members included groups dedicated to incest, female pedophiles, boy pedophiles, pedophilic videos with "no limits" and videos of infant children. Within those groups, the group descriptions and images posted within them were consistent with their group titles. All of those groups' pages contained images of minor children engaging in sexually explicit conduct with adults or other children, or posed to expose their genitals.

Images posted in closed groups were only accessible to members of those groups. Closed groups were similarly dedicated to subcategories of child pornography, including: images depicting children covered in semen; children having sex with animals; forcible rape of toddler-aged girls; particular identified and widely-traded images of child pornography; infants under one year old; and infants and toddlers under five years old.

PedoBook members also utilized private messaging to communicate. Private messages are similar to internal e-mail messages that are sent between two members of PedoBook. They are accessible only by the user who sent/received such a message, or to the site administrator. PedoBook users, including DeFoggi, occasionally furnished personal information in private messages, including e-mail addresses, in order to communicate with other PedoBook users on a one-to-one basis and to facilitate the trafficking of child pornography via e-mail.

    **C.**    **DeFoggi, user "fuckchrist" a/k/a "ptasseater"**

According to data obtained from logs on PedoBook and monitoring by law enforcement, on March 2, 2012, a user created an account on PedoBook with the username, "fuckchrist" and display name "PTasseater." According to the user "fuckchrist," the following describes himself: "Have many perversions. Contact me for fantasy chat." The account remained active until December 8, 2012, the day the site was taken down. The following are examples of activity conducted on PedoBook by that user:

    a.  Between March 2, 2012 and December 8, 2012, user "fuckchrist" joined 32 groups, both open and closed to include, "Boys Hardcore," "Kids with dogs & other animals," "Toddler Girls Forced," and "0-2 Year Little Girls Private Sharing Group 2012."

    b.  Between March 2, 2012 and December 8, 2012, user "fuckchrist" participated in numerous group "polls" in which he would have had to access pages featuring images of child pornography. For example, on April 25, 2012, user "fuckchrist" took a poll featured on the group page "Boy Pedo," noting "0-2." This group page contained numerous images of pre-pubescent males engaged in sexually explicit conduct.

    c.  Between April 19, 2012 and December 5, 2012, user "fuckchrist" exchanged numerous private messages with other PedoBook users expressing an interest in the violent rape of infants and toddlers. For example, on April 21, 2012, user "fuckchrist" wrote the following to another PedoBook user: Would love to find an extremely violent video where an infant or toddler is beaten, raped and killed but those seem to be impossible to find. I LOVE hearing the little fucks scream in pain when a big cock is being forced inside them. I would give anything to be able to beat, rape and kill a baby for real, boy or girl."

d. On or about April 19, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a pre-pubescent female, who appears to be an infant or toddler, displaying her genitals.

e. On or about November 20, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a pre-pubescent female performing oral sex on an adult male penis.

f. On or about November 21, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a pre-pubescent female being penetrated by a sex toy while being surrounded by adult females who are holding her down. There is a piece of duct tape hanging off of her face as well.

g. On or about November 22, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a pre-pubescent female performing oral sex on an adult male penis.

h. On or about November 23, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a male infant lasciviously displaying his genitals.

i. On or about November 26, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a female toddler performing oral sex on an adult female vagina.

j. On or about December 4, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a pre-pubescent female performing oral sex on an adult male penis.

k. On or about December 5, 2012, user "fuckchrist" accessed an image on PedoBook which depicted an infant male being penetrated anally by an adult penis.

l. On or about December 8, 2012, user "fuckchrist" accessed an image on PedoBook which depicted a toddler aged male lasciviously displaying his genitals.

m. On numerous dates, user "fuckchrist" sent private messages to other PedoBook users soliciting images of child pornography.

According to law enforcement review of PedoBook activity, username "fuckchrist" / "PTasseater" had accessed numerous images of child pornography through the site. A review of that username's private messages to other PedoBook users revealed an interest in the violent rape

of children, including infant and toddler-aged children. The user also described his location as in or near "DC."

An FBI covert employee contacted "PTasseater" / "fuckchrist" on PedoBook via private messaging and learned that he had interest in the murder of "little ones" and violent child exploitation material. The user also stated that he normally accessed the Tor Network on which PedoBook operated between the hours of 4 am and 6 am and again between 4 pm and 6 pm. Pen register/trap trace data obtained from the Verizon Internet service account associated with defendant's residence showed internet connection to IP addresses associated with the Tor Network primarily in the early morning or late evening hours, consistent with statements made by "PTasseater" / "fuckchrist" to the FBI covert employee.

An account with the username "ptasseater" was also located on an image hosting website known to be used for the upload and distribution of child exploitation images. A review of information obtained by the FBI from foreign law enforcement authorities revealed that comments made by the user "ptasseater" on that image hosting website bore numerous similarities to private messages sent by user "fuckchrist/PTasseater" on PedoBook – in particular, that the comments involved the violent sexual abuse of children. A review of IP address information for user "ptasseater" on the image hosting website revealed that the account user had utilized numerous IP addresses which were then assigned to the home Internet account of the defendant.

The username "ptasseater" was also located on a website using open source searches. On this website was listed an associated AOL instant messaging (AIM) account, "ptasseater," In response to legal process, AOL provided IP address log information related to AIM username

"ptasseater." Those IP addresses included IP addresses then assigned to the defendant's home Internet account.

Additionally, open source database checks confirmed that Timothy DeFoggi, at the time of the proposed residential search, resided at 20311 Crown Ridge Court, Germantown, Maryland. After confirming through USPS and visual surveillance that Timothy DeFoggi receives mail at that residence and maintains a vehicle registered in his name at that residence, investigators presented an affidavit in support of a search of that residence to a magistrate judge in Maryland.

When agents first entered the home, they found DeFoggi in possession of a laptop computer from which he had to be physically removed. The laptop was in the process of downloading a video from a Tor website called "OPVA" (Onion Pedo Video Archive). A later forensic analysis revealed that the video which had been downloading at the time of defendant's arrest consisted of child pornography. In addition, the laptop computer contained evidence of the alias "fuckchrist" as part of an online forum message post. Several forum messages were extracted and they contained discussions on torturing and abusing infants. "PTasseater69" was also located on the same laptop as a Yahoo Messenger profile. In addition, the Tor browser bundle was found on the laptop with evidence of browsing activities involving PedoBook and OPVA, among other Tor child pornography websites. Child pornography images depicting infants and toddlers were also located on the laptop computer.

In addition to the laptop computer, a desktop and thumb drive were seized from the residence and were found to contain numerous child pornography videos and images.

### III. Government's Case-in-Chief

#### A. Witnesses

| Witness | Agency/Relationship to Defendant |
|---|---|
| Robert Webber | - FBI CART Omaha |
| Matthew Grant | - FBI CART Omaha |
| Jeff Tarpinian | - FBI Special Agent |
| Kevin Smith | - FBI Task Force Officer |
| Steven Smith | - FBI Special Agent |
| Michael Gordon | - FBI Special Agent |
| Ray Hsu | - FBI Forensic Examiner |
| Jimmy Dale Bounds | - Defendant's life partner |
| Christopher Casto | - Defendant's adopted son |
| Pavel Stepashkin | - foreign law enforcement agent |
| Alex Hernandez | - Special Agent, HHS OIG |
| Charles Macmillan | - Co-conspirator |
| Patricia J. Teakle | - FBI Special Agent |
| Jacqueline Dougher | - FBI Special Agent |
| Elizabeth A. Weiland | - FBI Special Agent |
| Michael Mizer | - FBI Supervisory Special Agent |
| Verizon Records Custodian | - Verizon |
| AOL Records Custodian | - AOL |
| Vicki L. Jarchow | - Court reporter/transcriber |
| Dean Clarke | - Physical Security Specialist |

#### B. Trial Stipulations

The following stipulations are anticipated:

1. On November 18, 2012, FBI agents, acting pursuant to a search warrant authorized by the United States District Court for the District of Nebraska, copied and seized a computer server from an Internet hosting facility in Bellevue, Nebraska, in the District of Nebraska. That computer server contained the data and information that formed the PedoBook website.

From November 19, 2012, until December 8, 2012, the PedoBook website operated at an FBI facility in Omaha, Nebraska. During that time period, user communications on the PedoBook website were monitored by the FBI pursuant to the authorization of the United States District Court for the District of Nebraska.

The PedoBook website ceased to operate on December 8, 2012.

Exhibits _ through _ consist of fair and accurate digital copies or "screen shots" of various web pages of the PedoBook website as of December 8, 2012, the date it ceased to operate.

Exhibits _ through _ consist of fair and accurate copies of user data from the PedoBook user account for "PTasseater/fuckchrist" as of December 8, 2012, the date the PedoBook website ceased to operate.

It is not alleged that the defendant, Timothy DeFoggi, had any role in creating, operating or administering the PedoBook website.

2.  On [ ], foreign law enforcement authorities provided to the FBI fair and accurate copies of user account data for the user name "ptasseater" from the website www.imgsrc.ru. Exhibits _ through _ consist of fair and accurate copies of that user account data.

The defendant, Timothy DeFoggi, is not alleged to have committed any crime in connection with the website www.imgsrc.ru.

3. Exhibits _ through _ represent fair and accurate copies of subscriber information from Verizon and America Online.

    Respectfully submitted,
    UNITED STATES OF AMERICA,
    Plaintiff

    DEBORAH R. GILG
    United States Attorney

    *s/ Michael P. Norris*
    By: MICHAEL P. NORRIS (#17765)
    Assistant U.S. Attorney
    1620 Dodge Street, Suite 1400
    Omaha, Nebraska 68102
    (402) 661-3700

    *s/Sarah Chang*
    SARAH CHANG
    TRIAL ATTORNEY

    *s/Keith Becker*
    KEITH BECKER
    TRIAL ATTORNEY

**CERTIFICATE OF SERVICE**

  I, the undersigned, do hereby certify that on August 14, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the counsel of record.

                *s/Michael P. Norris*
                MICHAEL P. NORRIS
                Assistant U.S. Attorney