IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:13CR105 |
| | ) | |
| vs. | ) | DEFENDANT'S BRIEF IN |
| | ) | SUPPORT OF DEFENDANT'S |
| TIMOTHY DEFOGGI, | ) | MOTION PURSUANT TO |
| | ) | F.R.Cr.P. 29  AND F.R.Cr.P. 33 |
| Defendant. | ) | |

Comes now Defendant, by and through his undersigned attorney, and for his Brief in Support of  Defendant's Motion Pursuant to F.R.Cr.P. 29 and F.R.Cr.P. 33, states that, while Defendant continues to claim in general that there is insufficient evidence at trial to convict him of any of the charges for which jury verdicts of guilty were returned, and to deny that he is guilty of any of the offenses for which the jury returned verdicts of guilty at trial, and especially to deny that he is the person identified at trial as "fuckchrist," judgment of acquittal should be entered or a new trial granted especially as follows:

## **Table of Contents**

| Item | Page |
|---|---|
| Motion for Judgment of Acquittal | 2 |
| Statement of the law | 2 |
| Argument | 4 |
| Ct. 1 (CEE) | 4 |
| Instruction 7, Element 1 (Specific intent) | 4 |
| Instruction 7, Element 1 (Interstate transport) | 5 |
| Instruction 7, Element 2 ("in concert with") | 6 |
| Insufficient evidence | 7 |
| More than "mere conspiracy" | 11 |
| Cts. 2 & 3: Double Jeopardy | 12 |
| Lesser Included of Ct. 1 | 12 |
| In relation to each other | 15 |
| Ct. 2 | 16 |
| Instruction 13, Element 2 (Specific intent) | 16 |
| Insufficient evidence | 16 |
| intent | 16 |

**Table of Contents Con't.**

| Item | Page |
|---|---|
| agreement . . . . . . . . . . . . . . . . . . . . | 20 |
| PedoBook is the conspiracy . . . . . . | 21 |
| Affirmative defenses . . . . . . . . . . . . . . . . . . | 27 |
| Mapping Tor . . . . . . . . . . . . . . . . . | 27 |
| First Amendment . . . . . . . . . . . . . . | 28 |
| Instruction 13, Element 3 (insufficient evidence) . . | 29 |
| Ct. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 |
| Instruction 17, Element 1,2,3 (insufficient evid.) . . | 29 |
| Ct. 4-7 Instr. 21-24/28, Element 1, 3 . . . . . . . . . . . . . . . | 30 |
| Internal Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 |
| Motion for New Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 |
| Statement of the law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 |
| Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33 |
| Weight of the evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| Double Jeopardy issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| Jury Instruction issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| Unduly prejudicial evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . | 35 |
| "Newly Discovered Evidence" (Contingent) . . . . . . . . . . . . . . . . . | 36 |
| Internal Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 |
| Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37 |

**Motion for Judgment of Acquittal Pursuant to F.R.Cr.P. 29**

**Statement of the law**

Defendant submits that the law is generally well established regarding the standard for

review of a post-verdict motion for judgment of acquittal.

> A post-verdict motion for judgment of acquittal puts
> in issue the sufficiency of the evidence to sustain the
> verdict. . . . the court reviewing the sufficiency of the
> evidence, whether it be the trial or appellate court,
> must apply familiar principles.  It is required to review
> the evidence in the light most favorable to the verdict,
> giving the prosecution the benefit of all inferences to be
> drawn in its favor from the evidence.  The verdict may
> be based in whole or in part on circumstantial evidence.
> The evidence need not exclude every reasonable hypothesis
> except that of guilt; it is sufficient if there is substantial
> evidence justifying an inference of guilt as found
> irrespective of any countervailing testimony that may

> have been introduced.  If so, the issue of guilt or innocence has been properly submitted to the jury for its determination, and the motion for judgment of acquittal is properly denied.

*United States v. Lincoln*, 630 F.2d 1313, 1316-1317 (8th Cir.1980); *United States v. Huerta-Orozco*, 272 F.3d 561, 565, FN 10 (8th Cir.2001) *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir.2005); *United States v. Ford*, 726 F.3d 1028, 1033 (8th Cir.2013).

However, it is also well established that a motion for judgment of acquittal <u>must</u> be granted when the evidence viewed in a light most favorable to the verdict is such that a reasonably minded jury must have a reasonable doubt as to the existence of an essential element of the offense charged.  A jury cannot convict on mere suspicion, speculation or conjecture. *United States v. Frol*, 518 F.2d 1134, 1137-38 (8th Cir.1975); *United States v. DuBois*, 645 F.2d 642, 645 (8th Cir.1981); United *States v. Minor*, 815 F.2d 472, 474 (8th Cir.1986); *United States v. Springer*, 831 F.2d 781, 784 (8th Cir.1987); *United States v. Richards*, 967 F.2d 1189, 1196 (8th Cir. 1992); *United States v. Cacioppo*, 460 F.3d 1012, 1021, 1024 (8th Cir.2006), *United States v. Santana*, 524 F.3d 851, 853 (8th Cir.2008); *United States v. Williams*, 647 F.3d 855, 861 (8th Cir. 2011).

Defendant also respectfully submits that it is axiomatic regarding F.R.Cr.P. 29 motions that in general the court does not weigh the evidence or evaluate the credibility of witnesses. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir.2004).

Further, Defendant respectfully argues that, while apparently not the pattern, there is *bona fide* law in the Eighth Circuit to the effect that where the evidence is equally strong in inferring innocence of the crime charged, as in inferring guilt, the verdict must be one of not

guilty, and the court has a duty to direct an acquittal.  *United States v. Kelton*, 446 F.2d 669, 671 (8th Cir.1971); *United States v. Brown*, 584 F.2d 252, 262, 264 (8th Cir.1978).[1]

## Argument[2]

Defendant thinks that the issues presented herein are complex and often intertwined. Defendant therefore incorporates in each major portion of this Brief, all other major segments of the Brief, whether or not specifically referenced therein for incorporation.

### 1.  Count 1: Child Exploitation Enterprise

Count 1 charges Defendant with Child Exploitation Enterprise in violation of Title 18, United States Code, Section 2252A(g). The Court stated the Elements of Count 1 in Instruction No. 7, further explained in Instruction Nos. 8, 9, 10, 11 and 12.  Defendant moves for judgment of acquittal regarding Count 1 because the evidence produced at trial fails to satisfy beyond a reasonable doubt Element No. 1 or Element No. 2 of Instruction No. 7, as further explained in Instruction Nos. 8, 9, 10, 11 and 12.

### a.  Element No. 1 of Instruction No. 7 (Count 1): Specific Intent: Insufficient evidence & affirmative defense

In Element No. 1 of Instruction No. 7, as part of three Elements, the Court instructed the Jury that the crime of engaging in a child exploitation enterprise required the jury to find beyond a reasonable doubt that "the defendant accessed with intent to view child pornography on three or more separate occasions [between specified dates]."  Defendant argues that the evidence at

---

[1] But see, *Ortega v. United* States, 270 F.3d 540, 544-45 (8th Cir.2001), which addresses the Eighth Circuit-split on this issue. See also*, United States v. Campos*, 132 F.Supp.2d 1181, 1185 (N.D.IA.2011), in which a Court analyzes this issue and finds that the pattern of the Eighth Circuit over the then past ten years results in a contrary conclusion.

[2] As used herein:
    Indictment = Document No. 1-1 (filed 03/20/13).
    Jury Instructions = Document 214, with 48 pages, showing: page ____ of 48.
    Trial Transcript = TT, followed by page and line(s) numbers.

trial failed to establish beyond a reasonable doubt that Defendant so accessed[3] with the required

specific intent.  Defendant respectfully submits that the record at trial does not sufficiently

establish that it was the Defendant who accessed the images at issue in Counts 4-7.[4]  Defendant

also argues that it was not reasonable for the jury to find beyond a reasonable doubt that

Defendant had the specific intent required, in light of Defendant's affirmative defense that

Defendant was accessing Tor based on professional and security interests associated with his

then current and historical government employment.

> **b.  Element No. 1 of Instruction No. 7 (Count 1): Insufficient evidence of "transported using [interstate commerce]" (Instruction No. 8, Element No. 3) and Counts 4-7.**

Element No. 3 of Instruction No. 8[5] instructs the Jury that regarding the first Element of

Count 1, and in determining whether Defendant accessed [media] with intent to view child

pornography, the Jury must find beyond a reasonable doubt:

> The child pornography had been transported using any
> means or facility of interstate or foreign commerce or in
> or affecting interstate or foreign commerce by any means,
> including by computer.

Both in the context of the applicable statute (Title 18, United States Code, Section

2252A(a)(5)(B)), and in the context of the Instruction itself, the clear meaning of this Element of

Instruction No. 8 (applicable to Element No. 1 of Instruction No. 7), must be that the "computer

---

[3] Instruction No. 7 does not state what the Defendant must have accessed with the specific intent. The Court does state in each of Instruction Nos. 21-24 (beginning at Document No. 214, p. 28 of 48), that "accessed" refers to "a computer disk or any other material that contained an image of child pornography."  See also "ONE" under Instruction No. 8, p. 9 of 48.

[4] See, Instruction No. 8, last sentence: "The first element may be satisfied by finding the defendant guilty of any three or all of the Counts IV-VII as defined in Instruction Nos. 21, 22, 23, and 24."

[5] Defendant notes that this Instruction, as all of the Instructions given to the Jury at trial are consistent with those proposed by the Government, and without objection from the Government. TT. 711:1-16.

disk or any other material that contained an image of child pornography" had been transported in interstate commerce prior to Defendant's accessing of said "computer disk or any other material." Defendant submits that it is irrelevant whether the Defendant viewed the "disk or other material" in interstate commerce. According to the record at trial, any viewing occurred after the access had occurred. For purposes of establishing "interstate transportation" regarding Instruction No. 8 (Count 1), the relevant time ends at the moment anyone accesses the [media] on which the child pornography is stored. Defendant argues that there is insufficient evidence at trial (e.g., no evidence) to establish beyond a reasonable doubt that any specific "computer disk or other material" viewed by Defendant, on which child pornography was stored, had been transported in interstate commerce before Defendant is stated to have accessed that specific "disk or other material" on PedoBook or elsewhere. An inference or implication that any such specific "disk or other material" had been transported in [interstate commerce] is insufficient. By analogy of CEE to "conspiracy" (see above), "Charges of conspiracy are not to be made out by piling inference upon inference." *Ingram v. United States*, 360 U.S. 672, 680, 79 S,Ct, 1314, 1320, 3 L.Ed.2d 1503 (1959).

### c. Element No. 2 of Instruction No. 7 (Count 1): "in concert with"

In Element No. 2 of Instruction No. 7, as part of three Elements, the Court instructed the Jury that the crime of engaging in a child exploitation enterprise (sometimes herein referred to as "CEE") required the jury to find beyond a reasonable doubt that "the defendant committed [the offenses in Element No. 1] *in concert with* three or more other persons" (emphasis added). Defendant argues that the evidence at trial does not establish beyond a reasonable doubt that, even if Defendant did "access with [the required specific] intent," Defendant did so *in concert with* three or more other persons.

6

In Instruction No. 9, the Court, in pertinent part, instructed the Jury:

> . . . to act in concert with another person means the
> same as to engage in a conspiracy with that person.
>                    ***          ***          ***
> ONE: between [specified dates] the defen9ant reached
> an agreement with at least one other person to commit
> the crime of access with intent to view child
> pornography;
> TWO: the defendant voluntarily and intentionally joined
> in the agreement . . .
> THREE: at the time the defendant joined in the agreement,
> the defendant knew the purpose of the agreement.

Defendant makes two arguments regarding "in concert with." The first argument is that, even accepting the language of Instruction No. 9 as an accurate and full statement of the law, the evidence at trial fails to establish beyond a reasonable doubt "in concert with." The second argument is that the language in Instruction No. 9, explaining the first element of Count 1 (Instruction No. 7), must be read to include with mutual agreement ("conspiracy"), some sense of joint, cooperative action, for which there is no evidence at trial.[6]

### (1) Insufficient evidence to establish "in concert with" as defined in the Jury Instruction

Based on the Court's Instruction, the Jury must at least have found beyond a reasonable doubt that for each "accessing predicate to the CEE," Defendant joined in an agreement with one or more other persons to access a computer disk or any other material that contained child pornography. Defendant argues that the evidence adduced at trial fails to

---

[6] Defendant understands that his then counsel failed at the time of trial to object to Instruction No. 9, impacting Instruction No. 7, regarding "in concert with," or to offer a proposed alternative Instruction addressing "in concert with." Defendant may consider separate remedies regarding this matter at a later time. Regardless, Defendant raises this particular argument now only in the context of his F.R.Cr.P. 29 and 33 motion, preserving for another time whatever post-conviction remedies Defendant may have.

sufficiently show that Defendant entered into an agreement with any other person, regarding any of the purported predicate "accessings," of a computer disk or any other material that contained child pornography.

A conspiracy requires specific intent to commit a crime, that is, a specific criminal purpose to which the defendant agrees.[7]  At bar that purpose is expressly, repeatedly, and only identified regarding Count 1 as "to access a computer disk or any other material that contained child pornography."  The scheme of Chapter 110 of the Federal Criminal Code divides the purposes to which the law is directed to include three categories of offenses: soliciting, offering, and distributing child pornography. *United States v. Williams*, 553 U.S. 285, 310, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (J. Souter and J. Ginsburg, dissenting).  Likewise, the concurring opinion in *Williams* identifies separate categories of action under the scheme of Chapter 110 law, concentrating on "pandering":[8]

> Consistent with these dictionary definitions, our decisions have explained that "pandering" is "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest. (citations omitted)

*Id*, 553 U.S. at 308, 128 S.Ct. at 1847.  In arriving at this definition of pandering, the concurring opinion in part references Black's Law Dictionary definition of "pandering," to include "[t]he act or offense of selling or distributing textual or visual material . . . openly advertised . . ."

"Accessing" child pornography is distinct from "soliciting" child pornography, and from "offering (pandering)" child pornography, and from "distributing" child pornography. "Accessing" in this context is the act of "coming close or near to; approaching." Webster's New

---

[7] See, for example, Instruction No. 10, p. 11 of 28.
[8] Noting in the *Williams* opinion that the term, "pandering," is not actually used in the statute, but is used in legislative history and in common usage. *Williams,* 533 U.S. at 1847 (J. Stevens and J. Breyer, concurring).

World Dictionary of the American Language, Second College Edition, 1976, p. 8.  "Soliciting" in this context means, "to ask or seek earnestly or pleadingly; appeal to or for; to tempt or entice (someone) to do wrong; to approach for some immoral purpose, as a prostitute does." *Id.*, p. 1355.

Such is the manner in which Chapter 110 of the Federal Code is written.  For example, "possess or access" is used in Title 18, United States Code, Sections 2252A(a)(5)(A) and (B) [with (B) charged in Counts 4-7, and as predicates for Count 1]; whereas, "advertises, promotes, presents, distributes, or solicits" appears in Title 18, United States Code, section2252A(a)(3)(B). Similarly, and still in Chapter 110 of the Federal Criminal Code, Title 18, United States Code, Section 2251(d)(1) addresses "advertising," which under the Supreme Court's trilogy of child pornography actions, would appear to fall within "offering" child pornography.  Defendant argues that clear Congressional intent with regard to child pornography is that "access" is different from "possesses," is different from "solicits", is different from "offers", is different from "distributes."

The Court, at the Government's request, and as per the Indictment, Instructed on "access."  For the Jury to have found Defendant guilty of Count 1 (and Counts 4-7), the Jury must have found beyond a reasonable doubt that the Defendant, with regard to *each* claimed "accessing" predicate to the CEE, joined in an agreement with one or more other persons to access a computer disk or any other material that contained child pornography.  That is, there is no joint agreement if the Defendant's purpose was to access, but the other person's purpose was to solicit, or to offer, or to distribute.  "Accessing" has a specific meaning, which is not "soliciting," "offering," or "distributing."  This is common usage, dictionary definitions, and the scheme of Chapter 110 of the Federal Criminal Code.

9

Defendant argues that there is <u>no evidence</u> that with regard to Counts 4-7, or any other claimed "accessing" by Defendant, and, therefore, regarding Count 1, that Defendant entered into any agreement or understanding with any other person to <u>access</u> [media] containing child pornography.  No reasonable juror could have concluded that Defendant entered into a conspiracy regarding each of the purported "accessings" predicate to the CEE, in which the purpose of the conspiracy was to <u>access</u> media containing child pornography.  Therefore, judgment of acquittal must be entered with regard to Count 1.  Even if he did as alleged by the Government, that is, access child pornography, Defendant did not in any of the claimed "accessing" do so in agreement or understanding with any other person to access child pornography.  If Defendant accessed child pornography, he did so as his own, unilateral action, not "in concert with" anyone.

Further, while "in concert" might be demonstrated by showing three different co-conspirators, each with regard to a different claimed "predicate accessing," there must nonetheless, beyond a reasonable doubt, be such a co-conspirator regarding each claimed "predicate accessing."  Each "accessing" must be a conspiracy – otherwise, under the Instruction, there is no "in concert with" regarding that "accessing."  There is <u>no</u> such evidence at trial herein.

## (2)  "In concert with" means more than "mere conspiracy"

Defendant respectfully argues that the concept of "in concert with," contained in the CEE Statute, while signifying mutual agreement in common plan or enterprise, means more than mere "conspiracy."[9]  The leading case on "in concert with" appears to be *Jeffers v. United*

---

[9] Defendant is aware that his then counsel did not object to Instruction Nos. 7 or 9 at the time of trial, or propose an alternative Instruction dealing with "in concert with" in the context of this

*States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).  In *Jeffers*, the Supreme Court dealt

with Title 21, United States Code, Section 848, Continuing Criminal Enterprise (CCE).

However, the rationale of *Jeffers* has since been applied to CEE (18 USC 2252A(g)).  *United*

*States v. Wayerski,* 624 F.3d 1342, 1351 (11th. Cir.2010), referencing, *Rutledge v. United States*,

517 U.S. 292, 298-300, 116 S.Ct. 1241, 1246-1247, 134 L.Ed.2d 419 (1996).  *Rutledge*, in turn,

relies heavily on *Jeffers* regarding "in concert with."   In *Rutledge*, the Supreme Court, in

reaching its decision in the case, expressly found that, ". . . the plain meaning of the phrase "in

concert with" *signifies* mutual agreement in a common plan or enterprise . . ." (emphasis added).

*Id.*, 517 U.S. at 300, 116 S.Ct. at 1247.

     In *Jeffers*, the Supreme Court went into greater detail regarding "in concert with."  The

*Jeffers* Court first found that in Section 848 (CCE), Congress intended the word "concert" to

have its common meaning of agreement in a design or plan, appearing to equate "in concert

with" to "conspiracy."  However, having made this initial finding, the *Jeffers* Court developed its

understanding of "in concert with," expanding it to "concerted action and conspiracy."  In its

explanation, the *Jeffers* Court observed that "in concert with" "as used in other statutes . . . has

generally connoted cooperative action and agreement."  432 U.S. at 149, and FN 14.

     Reference to a standard dictionary definition of "concert" and "in concert" also expand

the concept of "in concert with" beyond mere "conspiracy," to include, with some sense of

mutual agreement [i.e., "conspiracy"], temporal proximity and unity of action.  For example,

standard definitions of "concert" and "in concert," include: "mutual agreement, concord,

---

argument.  Defendant may consider separate remedies regarding this matter at a later time.
Regardless, Defendant raises this particular argument now only in the context of his F.R.Cr.P. 29
and 33 motion, preserving for another time whatever post-conviction remedies Defendant may
have regarding his attorney's performance.

*harmony of action*; *in unison*, in agreement, *together*; mutually arranged or agreed upon, *made or done together, combined*" (emphasis added). Webster's New World Dictionary of the American Language, Second College Edition, 1976, p. 293.

Therefore, Defendant argues that Instructions 7 and 9 must be read as requiring some concept of joint action, as well as mutual agreement, regarding Element 2 of Count 1, concerning accessing [media] to view child pornography "in concert with" three or more other persons, on all of the occasions referenced in Element 1 of Instruction 7.  Defendant argues that there is <u>no</u> evidence at trial of Defendant accessing [media] to view child pornography in mutual agreement with, temporal proximity to, <u>and</u> joint action with any other person, let alone an aggregate total of at least three of such other persons, on at least three separate occasions.  Therefore, Defendant further respectfully argues that judgment of acquittal must be entered regarding Count 1 (CEE).

## 2. Counts 2 and 3 (conspiracy to advertise; conspiracy to distribute child pornography): Fifth Amendment Double Jeopardy violation.

### a. Lesser included offenses of Count 1

Defendant moves to dismiss both Counts 2 and 3 because said offenses are each a lesser included offense of Count 1, thereby constituting multiple punishment for the same offense, and, therefore, a lesser included offense Instruction should have been included regarding both Counts 2 and 3, directing the Jury <u>not</u> to consider Counts 2 and 3 if the Jury returned a verdict of guilty regarding Count 1.[10]  Of course, the Jury returned verdicts of guilty regarding all of Counts 1, 2

---

[10] Defendant is aware that his then counsel did not request a lesser included offense Instruction regarding either Count 2 or Count 3, and did not object to the Court's failure to give such an Instruction.  Defendant may consider separate remedies regarding this matter at a later time. Regardless, Defendant raises this particular argument now only in the context of his F.R.Cr.P. 29 and 33 motion, preserving for another time whatever post-conviction remedies Defendant may have regarding his attorney's performance.

and 3.  Defendant argues that, if the Court allows the guilty verdict to stand regarding Count 1, the only appropriate remedy is the vacation of the judgments regarding Counts 2 and 3, that is, entry of judgment of acquittal regarding Counts 2 and 3. *Rutledge v. United States*, 517 U.S. at 307, 116 S.Ct. at 1250-51, relying on *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

As above, that Counts 2 and 3 are lesser included offenses of Count 1, turns upon argument by analogy to the relationship between conspiracy to distribute controlled substances (Title 21, United States Code, Section 846), and continuing criminal enterprise (CCE) (Title 21, United States Code, Section 848).  This close analogy has been described above.  For example, in *United States v. Wayerski,* 624 F.3d at 1351, the Eleventh Circuit Court of Appeals specifically found that a conspiracy to advertise, transport, receive and possess child pornography and to obstruct justice (in violation of Title 18, United States Code, Sections 371, 1512(k), 2251(d)(1) and (e), and 2252A(a)(1) and (b)(1), was a lesser included offense of a CEE (in violation of Title 18, United States Code, section 2252A(g)), and, therefore a violation of the Double Jeopardy Clause of the Fifth Amendment.

The finding in *Wayerski* rested upon the determination that the requirement of "in concert with" under Section 2252A(g) (CEE) was tantamount to a conspiracy encompassing violations of Chapter 110 of the Federal Criminal Code (including Sections 2251 and 2252A(a)), and, therefore, the separate conspiracy charge constituted punishing the defendants therein multiple times for the same offense.  The *Wayerski* Court relied upon *Rutledge v. United States*, *supra*, 517 U.S. 292, which relied substantially upon *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932).

Referencing *Rutledge*, the *Wayerski* Court found that:

13

> The Court reasoned that the requirement for a continuing criminal enterprise offense that the defendant have acted "in concert" with others required proof of an agreement that would also violate the conspiracy statute.  Because the conspiracy offense did not require proof of any fact that was not also part of the continuing criminal enterprise offense, a straightforward application of the *Blockburger* test resulted in the conclusion that the conspiracy statute did not define a separate offense and was a lesser included offense of the more serious crime for a continuing criminal enterprise.

*United States v. Wayerski*, 624 F.3d at 1351.  Similarly to the situation here at bar, the lesser included offenses in *Wayerski* were violations of statutes within Chapter 110 of the Federal Criminal Code, the factual bases for which fell under the "in concert with" provision of a CEE.  That is, the defendant's conspiracy convictions in *Wayerski* did not require proof of facts which were different from the CEE offense's "in concert with" requirement.  Based on this finding, the Eleventh Circuit vacated the conspiracy conviction.  *Id.*

Based on this analysis, Defendant respectfully argues that, if the guilty verdict for Count 1 is allowed to stand, judgment of acquittal must be entered for Counts 2 and 3.

### b.  Counts 2 and 3 in relation to each other

Defendant also challenges on Fifth Amendment Double Jeopardy grounds, Counts 2 and 3 in relation to each other.   Defendant argues that bringing separate conspiracy charges in Counts 2 and 3, constitutes multiplicity, that is, that the Government has inappropriately brought one charge as many separate charges, thereby exposing Defendant to multiple sentences for the same alleged crime.  This argument is based on the evidence adduced at trial, and the Government's closing argument with regard thereto.  As argued below (which argument is by this reference incorporated herein), the evidence in support of Count 2 and in support of Count 3,

14

(and also, Count 1) is the same evidence.  This argument is furthered by the Government's closing argument in which the Government made clear that its theory of conspiracy is that PedoBook constituted the conspiracy, and that association with PedoBook is what the Government claims makes Defendant a co-conspirator.  That is, the Government's theory of prosecution, as based on the evidence at trial and its closing argument, is really that there is one conspiracy with multiple purposes.

Had Defendant known in advance that this was the Government's theory of prosecution, which could not be gleaned from the Indictment itself, or from the presentation of evidence at trial, Defendant could have at least requested a Jury Instruction regarding "single conspiracy v. multiple conspiracies."  This was further aggravated by the denial in pre-trial pleadings of a defense motion for a bill of particulars (Motion – Document 64, Nov. 6, 2013; Order – Document 75, Dec. 2, 2013), and denial of an Instruction regarding the conspiracies which would have included the overt acts of each conspiracy (TT. 714:2-725:4).

If the jury verdicts regarding Counts 2 and 3 are both otherwise allowed to stand, the Court should cause the Government to elect between the Counts 2 and 3, with the Court then granting judgment of acquittal regarding the other Count.

### 3.   Count 2: Conspiracy to advertise child pornography

Count 2 charges a conspiracy to advertise child pornography, in violation of Title 18, United States Code, Section 2251(d)(1) and (e).   The Court stated the elements of Count 2 in Instruction No. 13, further explained in Instruction Nos. 14, 15 and 16.  Defendant moves for judgment of acquittal regarding Count 2 because the evidence at trial fails to satisfy beyond a reasonable doubt Element Nos. 2 and 3 of Instruction No. 13 (Count 2), as further explained in Instruction Nos. 14, 15 and 16.

### a. Element No. 2 of Instruction No. 13 (Count 2): Specific Intent: Insufficient evidence and affirmative defense

#### (1) Insufficient evidence

In Element No. 2 of Instruction No. 13, the Court instructed the Jury that to find the Defendant guilty, the Jury must find beyond a reasonable doubt that:

> The defendant voluntarily and intentionally joined in the agreement [to advertise child pornography] . . .

Instruction No. 14, in pertinent parts, defines advertising child pornography as:

> ONE:  knowingly making, printing, or publishing, or causing to be made, printed, or published a notice or advertisement;
>
> TWO: the notice or advertisement sought or offered to receive, exchange, buy, produce, display, or distribute any visual depiction

#### (a) Insufficient evidence of Defendant's purported intent/purpose

For the Jury to have found Defendant guilty of conspiracy to advertise child pornography, the Jury must have found beyond a reasonable doubt that Defendant joined in the agreement to knowingly make, print, or publish (or so cause), a notice or advertisement seeking or offering to receive, exchange, buy, produce, display, or distribute [child pornography].  Defendant argues that no reasonable jury could have found that Defendant intentionally joined in any such agreement.  To have joined in such an agreement, Defendant must himself have held the intent/purpose to knowingly make, print, or publish (or so cause), a notice or advertisement seeking or offering to receive, exchange, buy, produce, display, or distribute [child pornography]. There is insufficient evidence to establish that Defendant himself had such intent.

First, there does not appear to be even a claim at trial that, of the string of possible options to violate the statute, Defendant by any sort of notice or advertisement sought or offered

16

to *buy, produce, display, or distribute* any child pornography.  Defendant respectfully argues that there is <u>no evidence</u> that Defendant by any sort of notice or advertisement sought or offered to buy, produce, display, or distribute any [child pornography].  See, for example, TT. 299:6-8; 17-23  [SSA P. Michael Gordon].)

That leaves consideration of any sort of notice or advertisement sought or offered to *receive or exchange* child pornography.  Defendant argues that there is insufficient evidence to prove beyond a reasonable doubt that Defendant intended the making, printing or publishing (or causing) a notice or advertisement to receive or exchange child pornography.

The Government argued at trial that Gov. Ex. 9A[11] showed example after example of Defendant  "soliciting" others to send him child pornography.  These included among others, three specific examples cited by the Government: "You ever share pictures of your son?" (TT., p. 249); "Do you have any more pictures of her?" (TT., p. 249); and Defendant seeking violent videos of acts against children (TT. 259:18-21).[12]

In the specifically referenced communications attributed by the Government to Defendant, the communications (although often vile, even shocking) are actually not a solicitation (seeking or offer to receive) child pornography; but, rather, an expression, in the context of a "discussion" or wanting to find a certain type of child pornography or to continue a relationship with the individual with whom he was communicating (e.g., Government witness

---

[11] After asking what appears to be a highly prejudicial, objectionable question (leading and expert opinion going to the ultimate question which is for the jury regarding whether the string of specific communications to follow is requesting or soliciting child pornography)  TT. 249:4-6.

[12] "Daisy's Destruction" video by NLF production, discussion with undercover agent. TT. p. 207-210.  Which Defendant characterizes more as a discussion that he would like to find this, than an actual solicitation (seeking or offer to get this from the undercover agent).  This is not "an advertisement," let alone any showing of having joined with anyone to make this purported solicitation, in the specific sense of this solicitation, or in the general sense of making solicitations to receive child pornography.

MacMillan).  The expression of a general desire to find an item or to continue a relationship is not a notice or advertisement specifically seeking or offering to receive child pornography.  Even the inclusion of what the Government claimed at trial was the Defendant's email in two of the communications (TT. 249:14-15, 23-25) is not evidence beyond a reasonable doubt that the Defendant was soliciting child pornography.  In none of the referenced communications was there a specific request to receive child pornography.  However, both in the communications with SA Gordon and with Charles MacMillan there was clear communication seeking a more personal relationship with each (TT. 259:3-4 [are you married, have children]; 389:21-390:2; 390:17-18; 391:5-16) [sadomasochistic fantasies and a desire to meet in person]).  In particular, in one of the "fantasy communications" between this user and MacMillan, the user included the user's email address (TT. 387:18-25).   Other of the communications referred to by the Government as claimed advertisements for child pornography are clearly in the context of the described user engaging in communications discussing the users claimed perversions (much as with MacMillan).  In this context of these communications, even the giving of an email address (as with MacMillan) is much more probably to continue the discussion of the subject with the recipient of the communication, rather than to solicit specific child pornography.  This is further bolstered by the user giving information regarding his personal location (only capable of interpretation as more of a movement toward meeting in person, than trying to receive child pornography).  See, for example, 250:1-14; 250:15-253:10 (including an invitation to engage in a video chat, not asking for child pornography).

None of the witnesses presented by the Government, even Charles MacMillan ("toddlerlover"; "noonewillknow312"), testified that the person going under the identified user or display names ("fuckchrist/PTasseater"), requested from, received from, or sent child

18

pornography to MacMillan or any person.  See, for example, TT. 393:9-17 [MacMillan].

MacMillan was repetitively specific that the person using the identified user/display names, was

engaging with MacMillan in "fantasy chat."  TT.  387:18-20, referencing Gov. Ex. 4; 389:25-

390:2; 391:5-25.  In this last reference (TT. 391), MacMillan refers to "pictures, videos,

whatever we wanted to share with each other [of child pornography] [if they got together], yet

MacMillan never states that the person with the identified user/display name ever actually asked

to receive any child pornography, and clearly MacMillan did not send the user anything.

Defendant respectfully suggests that it is instructive that the Government never asked

MacMillan at trial if he felt this user had tried to get child pornography from MacMillan.

### (b) No evidence Defendant entered into agreement to do so

There is <u>no evidence</u> Defendant sought to enter into a common purpose with any other

person to solicit the actual or proposed transfer of a product from one person to another,

including to Defendant.  *United States v. Williams*, 553 U.S. at 294, 128 S.Ct. at 1840.  For the

sake of argument, and with no admission with regard hereto, Defendant states that even if he did

seek or offer to receive (or even exchange) child pornography, there is no evidence that

Defendant agreed with any other person to seek or offer to receive (or even exchange) child

pornography.  For the sake of argument, Defendant states that even if he did seek or offer to

receive (or even exchange) child pornography, that is to advertise to receive (or even exchange)

child pornography, he did so unilaterally, solely for himself, and not jointly in agreement with

anyone else.

Again, the evidence referred to above much more strongly suggests that the user in these

communications sought first to engage in communications, including messages and video chats;

and second to foster a personal relationship by meeting with the person with whom the user was

communicating.   Clearly, these are personal and unilateral intentions, not joint, conspiratorial

activity.  In particular, referencing the testimony of Charles MacMillan, MacMillan gave no

indication that the user with whom he was communicating was acting in concert with anyone

else.  In fact, the clear implication of the communications between MacMillan and this person is

that the other person was acting alone in contacting MacMillan.


### (c)    "PedoBook is the conspiracy"

Defendant respectfully suggests that the Jury at trial was moved by a prejudicial display

of PedoBook (and the vileness of some of the articulated communications), rather than by

evidence actually establishing that Defendant engaged in a conspiracy to advertise child

pornography.   Defendant further respectfully suggests that this is very succinctly stated by the

Government's statement in closing:

> I want to talk to you for a moment about what makes
> PedoBook a conspiracy.  I was talking with my colleagues . . .
> last night in trying to brainstorm about how to articulate
> why PedoBook in particular is a conspiracy . . .

TT. 739:23-740:2.

Of course "PedoBook" is not a conspiracy.  PedoBook was an Internet (Tor) website.

But the inference is unmistakable, that anyone having anything to do with PedoBook is a co-

conspirator in anything and everything that happens on PedoBook.  It seems undeniable from the

voluminous evidence adduced by the Government at trial about PedoBook, that many

reprehensible things occurred through this website.  While this vile and voluminous evidence

regarding PedoBook unquestionably, severely tainted the Jury's consideration of the Defendant's

innocence or guilt, the voluminous evidence about PedoBook, simply does not establish that the Defendant, even if he used the services of PedoBook, was a co-conspirator (which consideration applies to Counts 1, 2 and 3). The Instructions at trial clearly establish that the Jury must have found Defendant voluntarily and intentionally engaged in the specific purposes charged in each of Counts 1, 2 and 3.

With regard to Count 2 (but also applicable to Counts 1 and 3), for purposes of this argument, and without admitting that he did so, the evidence at trial might show that Defendant unilaterally and individually took advantage of the opportunity PedoBook presented for individuals to view child pornography. That is, subject to all of Defendant's other arguments in this Brief, the evidence might show that Defendant was an individual consumer of some of what PedoBook had to offer. This does not make Defendant a co-conspirator.

The Government summarized its case regarding conspiratorial activity at TT. 731:5-734:20. The Government argued that the user identified at trial by the Government as Defendant made choices to take actions which establish him as a co-conspirator, including: registered on the website (which gave greater access to solicit and receive child pornography); published his interests in a profile; joined public and private groups (private groups giving greater access to certain child pornography); responded to polls; and reached out to friends. These choices and actions are the basis of the conclusion Defendant is a co-conspirator. The Government concluded its argument about why Defendant was a co-conspirator by stating:

> So, ladies and gentlemen, that's the site. You know the structure; you know how it was set up. You've seen the way it facilitated these sorts of interactions among its users.

TT. 734:17-20.

21

Examining this summary of the trial record, Defendant argues that there was insufficient evidence to find that Defendant was a co-conspirator (again, really with regard to Counts 1, 2 and 3), and that the Jury finding Defendant guilty of Count 2 (and Counts 1 and 3) was based on impermissible reasons, especially mislead passion directed at the vulgarity, even shocking nature, of general activities over PedoBook and specific comments attributed to Defendant. This passion being aroused and enhanced by the volume of unduly prejudicial information presented by the Government at trial. PedoBook was not on trial (although one might conclude it was from the record). The Defendant only was on trial.

Instruction No. 15, states in pertinent part:

> A person's mere knowledge of the existence of a conspiracy, or mere knowledge of an objective of a conspiracy was being considered or attempted, or mere approval of the purpose of a conspiracy, is not enough to prove that the person joined in a conspiracy.

Instruction No. 16 states in pertinent part:

> It is not enough that the defendant and other alleged participants in the agreement to commit the crime of conspiracy to advertise child pornography simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.

In *United States v. Hoelscher*, 914 F.2d 1527, 1531, 1534 (8th Cir.1990) (cocaine distribution ring operating in the St. Louis area, with supply connections to California), the panel of the Eighth Circuit approved a jury instruction regarding the conspiracy charge which stated:

> Mere similarity of conduct among various parties and the fact that they may have been associated with each other, and may have assembled together, and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy."

Defendant respectfully argues that reviewing, individually and in the aggregate, the list of choices and actions the Government claimed constitute evidence that defendant was a co-conspirator demonstrates that there was insufficient evidence to prove Defendant was a co-conspirator.

- Defendant registered on PedoBook:  There does not appear to be anything illegal about registering on PedoBook.  Actions taken by a user after registering might be illegal.  But, while it appears established that registering on PedoBook granted that person greater access to solicit and receive child pornography, as argued above, the record is devoid of any specific, expressed solicitation or receipt of child pornography by Defendant regarding PedoBook; and, as argued above, there is no record at trial that Defendant took advantage of the "greater access to solicit or receive child pornography.

- Defendant published his profile on PedoBook:  There does not appear to be anything illegal in publishing a profile on PedoBook, especially if that profile does not contain any of the string of statutorily prohibited activities regarding child pornography. While the record appears to establish that this user did publish a profile on PedoBook, there is nothing about that profile which suggests any of the string of statutorily prohibited activities regarding child pornography, including, among others, advertising child pornography.  Rather, the referenced profile supports Defendant's claim, argued above, that, if associated with PedoBook, Defendant was interested in fantasy chats and developing certain personal relationships.

- Defendant joined public and private groups:  There does not appear to be anything illegal about joining groups on PedoBook.  What a person does after joining a group might be illegal. But, other than an argument about Defendant accessing child pornography through PedoBook or

a group thereof, there is insufficient evidence (and generally no evidence) that Defendant engaged in any of the string of statutorily prohibited activities regarding child pornography in any group on PedoBook.  In particular, in response to the Government's comment that joining private groups gave that person greater access to certain child pornography, there is no evidence Defendant received any child pornography from any group on PedoBook.

- Defendant responded to polls:  There does not appear to be anything illegal in just responding to polls on PedoBook, especially if no response violates any of the string of statutorily prohibited activities regarding child pornography.  There does not appear to be any record that this user violated any statutory prohibitions in responding to polls on PedoBook. Rather, this supports Defendant's claim, argued above, that, if associated with PedoBook, Defendant was interested in fantasy chats and developing certain personal relationships.

- Reached out to friends:  There does not appear to be anything illegal in reaching out to friends over PedoBook, so long as the content of the communication does not violate any of the string of statutory prohibitions regarding child pornography.  Defendant has argued above that, if Defendant was associated with PedoBook, any of his communications with "friends" over or initiated through PedoBook did not violate any of the string of statutorily prohibited activities regarding child pornography.  Rather, again, as argued above, such communications, including with SA Gordon and with Charles MacMillan, support Defendant's argument that, if Defendant was associated with PedoBook, it was for fantasy chats and developing personal relationships with certain persons.

In none of the above-listed choices and actions regarding PedoBook, and in none of the claimed specific examples of advertisements soliciting the receipt of child pornography (argued

above) is there any showing that Defendant joined in an agreement with any other person to make requests to receive child pornography. Defendant argues that there is no evidence from any witness, Gov. Ex. 4, Gov. Ex. 9A, or otherwise to show beyond a reasonable doubt that Defendant joined with any other person to seek or offer to receive (or even exchange) child pornography (or to distribute child pornography as charged in Count 3).

Defendant offers that of particular interest is the Government's focus at trial on "avatars" (e.g., TT. 385: 17-386:12 (Charles MacMillan's avatar, which was for the purpose of establishing credibility with other users, so as to be considered serious about the site, and not to be law enforcement) [Charles MacMillan]; 733:7-15 [Gov. closing argument – again stressing "credibility" to get the user "access to what they could provide for him"]). Defendant[13] did not have an avatar (TT. 298:9-10 [SSA P. Michael Gordon]). Further, Defendant's "profile" for PedoBook emphasized "fantasy chats" (TT. 172:9-10; 299:1-2 [SSA P. Michael Gordon]).

A stipulation at trial clearly established that:

> It is not alleged that the defendant, Timothy DeFoggi, had any role in creating, operating, or administering the PedoBook website.

TT. 118:14-16. This is the equivalent in the context of this trial, and the absence of any evidence to the contrary, to stipulating that Defendant did not create, operate, or administer PedoBook.

The list of things this user did not do with PedoBook is lengthy, substantial, and impressive. Among the things this user did not do, are the following:

- Did not "create" PedoBook (or any Tor or other child pornography website)

---

[13] Defendant has steadfastly denied that he is the person referred to at trial and on PedoBook as "fuckchrist." All arguments made by Defendant which might otherwise appear to be an admission that Defendant is "fuckchrist," are for purposes of argument only, and not an admission.

- Did not administer PedoBook (or any Tor or other child pornography website)

- Did not in any manner operate PedoBook (or any Tor or other CP website)

- Did not set or enforce any rules of PedoBook, including group rules

- Did not accept any users into any group of PedoBook (or otherwise)

- Did not contribute any child pornography to PedoBook (or otherwise)

- Did not post any "formal" notices seeking child pornography on PedoBook (or otherwise)[14]

- Did not distribute any child pornography through PedoBook (or otherwise)

- Did not initiate polls of PedoBook (or otherwise)

- Did not create "tag clouds" on PedoBook (or otherwise)

- Did not have possession of any child pornography images from PedoBook

At most, for this argument only and without any admission, Defendant had "mere knowledge" or "mere association," but did not enter into any agreement to advertise to seek or offer to receive (or even exchange) child pornography. Defendant respectfully offers that it is instructive that at trial the Government never specifically described the purported conspiracy to advertise child pornography, or specifically with whom Defendant is purported to have conspired. Instead, the Government described PedoBook and what user other than this user ("Defendant") did. The Government appears to have rested its conspiracy theories on any association with PedoBook, without showing specific co-conspirators Defendant is supposed to have had. See, for example, TT. 740:13-16 [Government's Closing Argument].

---

[14] Defendant has above argued why there was insufficient evidence at trial that Defendant was engaged in a conspiracy to advertise child pornography, including that Defendant had no intent to and did not make any notice or advertisement regarding the statutorily prohibited string of prohibited activities regarding child pornography.

26

On the record as argued herein, no reasonable jury could find beyond a reasonable doubt that Defendant engaged in a conspiracy to advertise child pornography.  Judgment of acquittal should be entered regarding Count 2 (and Counts 1 and 3).

### (2) Affirmative defenses

### (a) Mapping Tor

As noted elsewhere in this Brief, Defendant, to a limited extent[15], advanced an affirmative defense that Defendant was accessing Tor to attempt to map hidden sources of information flow/storage over Tor.  In *United States v. Williams*, there appears an underlying, unifying purpose to Chapter 110 of the Federal Criminal Code.  That purpose is to stop the flow of materials regarding children, which materials "appeal to the erotic/sexual interests" of the recipient of the child pornography.  This is what Congress has sought to target. *United States v. Williams,* 553 U.S. at 307-308, 128 S.Ct. at 1847 (J. Stevens and Bryer, concurring).  The offense in Count 2 is conspiracy to advertise child pornography.  Defendant argues that it is an affirmative defense to Count 2, if Defendant was acting only for purposes of legitimate professional (i.e. computer/internet expert) satisfaction in the context of federal agency security interests in trying to map portions of the Tor network.  If such is the case, Defendant was not engaged in advertising/soliciting child pornography any more than the FBI offers it was in operating the PedoBook website for legitimate investigative purposes.  In that event, Defendant could, even if shown to have been acting with others (which Defendant denies the trial record establishes), Defendant would <u>not</u> have possessed the specific intent/purpose of the conspiracy, to make him a co-conspirator.

---

[15] This will be dealt with more below regarding "New Trial," as Defendant was artificially stifled, to his substantial prejudice,  in his attempt to present this affirmative defense.

**(b) First Amendment protected speech**

Defendant further argues that if the claimed solicitations at issue were not in fact solicitations of child pornography; but were, in fact, "fantasy chats" or mere expressions of the desire to obtain something without actually taking a step toward obtaining child pornography (not actually and specifically "inducing the transfer of child pornography from one person to another"), what Defendant said or wrote is speech protected under the First Amendment, and as such, even if deemed vile or vulgar, is not subject to criminal prosecution. *United States v. Williams*, 553 U.S. at 295, 297-298, 128 S.Ct. at 1840-1842.

> **b.   Element No. 3 of Instruction No. 13, as further explained in Instruction Nos. 14, 15 and 16: Insufficient evidence; Affirmative Defenses**

Defendant by this reference incorporates herein his arguments above regarding Element No. 2 of Instruction No. 13, as though set forth in full herein.  Element No. 3 of Instruction No. 13, is a collar to Element No. 2.  Element No. 3 requires that "at the time the defendant joined in the agreement," the defendant knew the purpose of the agreement.  Based on his arguments above, Defendant argues that there was insufficient evidence at trial to establish: (1) that Defendant entered into any agreement to advertise child pornography, or (2) that he knew the purpose of any such agreement which others might have entered into.  Therefore, Defendant seeks judgment of acquittal regarding Count 2.

> **4.   Count 3 (conspiracy to distribute child pornography)**

> **a.   Element No. 1, 2 or 3 of Instruction No. 17, as further explained in Instruction Nos. 18, 19 and 20: Insufficient evidence**

The scheme of Instruction Nos. 17, through 20 (regarding Count 2, conspiracy to distribute child pornography), is essentially the same as Instruction Nos. 17, through 20 (Count 3, conspiracy to distribute child pornography).  Again, in Count 3, similarly as in Count 2,

28

Defendant is charged only with a conspiracy, and not with any substantive act of distribution of child pornography. Indeed, defendant could not be charged with any substantive act, because there is no evidence that Defendant ever distributed or attempted to distribute child pornography. Defendant has reviewed the Government's closing argument, and finds that it appears to contain no argument in favor of Count 3 (conspiracy to distribute child pornography). Again, Defendant respectfully suggests that this is instructive.

In the absence of any argument at trial by the Government concerning why Defendant is guilty of conspiracy to distribute child pornography, Defendant must conclude that the Government in Count 3, as in Count 2, is primarily resting its case upon Defendant's association with PedoBook. That is, that any person associated to any degree with PedoBook is guilty of conspiracy to commit essentially any of the string of statutorily prohibited activities listed in Chapter 110 of the Federal Criminal Code. Therefore, Defendant by this reference incorporates herein Defendant's arguments regarding Counts 1 and 2, as though set forth herein in full. Further, Defendant argues that there is <u>no evidence</u> in the record to support a verdict of guilty on Count 3, especially in consideration of any evidence which goes to the intent and actions of Defendant, as opposed to PedoBook in general and the PedoBook administrator or users other than Defendant.

Based on this record, Defendant argues that no reasonable jury could find Defendant guilty beyond a reasonable doubt of Count 3, conspiracy to distribute child pornography. Defendant further argues that the Jury having returned a verdict of guilty regarding Count 3, strongly demonstrates that the Jury did not deliberate dispassionately, reaching a verdict based on the Court's Instructions as applied to the evidence before the Jury. Rather, the Jury returned verdicts of guilty regarding all Counts, and especially Counts 1, 2 and 3, based on impermissible

29

reasons, especially passion, arising from and enhanced by the voluminous and unduly prejudicial

evidence regarding PedoBook itself and certain comments attributed to Defendant which are of a

particularly vile, even shocking nature.

Wherefore, Defendant respectfully argues that judgment of acquittal should be entered

regarding Count 3.

**5. Counts 4-7, inclusive (accessing child pornography): Element No. Element No. 1 , or Element No. 3 of, respectively, Instructions No. 21, 22, 23 and 24, as further explained in Instruction No. 28**

Instruction Nos. 21-24, inclusive, each respectively address Counts 4-7, inclusive.  All

charge Defendant with separate substantive acts of knowingly access, with intent to view,  child

pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B).  In pertinent

part, each Instruction states:

> THREE:      the child pornography had been transported
> using any means or facility of interstate or
> foreign commerce or in or affecting interstate
> or foreign commerce by any means, including
> by computer.

It is clear the statute requires that the "computer disk or other material that contained an

image of child pornography" ["the media"] traveled in interstate (or foreign) commerce before

the Defendant is alleged to have accessed that media on which the child pornography was stored

i.e., "*had* been transported").  See, Eighth Circuit Manual of Model Jury Instructions (2014),

Instruction No. 6.18.2252: Receipt, Possession or Distribution of Material Containing Child

Pornography (18 U.S.C. Sec. 2252A(a)(2)(A) and (B) and *(a)(5)(B)*).[16]   *United States v. Fald*,

---

[16] The Eighth Circuit Instruction regarding Sec. 2252A(a)(5)(B) reads: "*Three*: that the [material containing the] visual depictions [*was produced using materials that*] had been [mailed] [shipped] [transported] [by computer] in interstate or foreign commerce. Notes on Use, Note 3

498 F.3d 862, 866 (8th Cir.2007) ("production" case: camera used to take pornographic picture of child moved in interstate commerce before defendant possessed it and used it to take picture at issue); *United States v. Schene*, 543 F.3d 627, 636-37 (10th Cir.2008) ("production" case: stipulation at trial that hard drive containing images of child pornography was manufacture in country of Singapore).

Defendant asserts that there does not appear to be any evidence adduced at trial which demonstrates that the computer disk or other material containing the visual depiction of child pornography in each Counts 4-7, inclusive, had, prior to Defendant accessing it, been transported [in interstate commerce].  Defendant argues that this does not include the user's ("Defendant's") actual access of the image of child pornography on PedoBook.  The interstate nexus must be established prior thereto.  See also, Instruction No. 28 (p. 35 of 48): "It is for you to determine, however, if the material containing the visual depiction had been transmitted or received over the internet" [referencing transmission over the Internet as *per se* having moved in interstate commerce].

Wherefore, Defendant argues that the Court should grant judgment of acquittal regarding Counts 4-7, inclusive (which also affects Count 1).

**6.  Internal Conclusion**

Wherefore, Defendant respectfully requests the Court to grant judgment of acquittal regarding Counts 1-7, inclusive, for the reasons set forth herein.

<u>**Motion for New Trial Pursuant to F.R.Cr.P. 33**</u>

**Statement of the law**

---

advises that the italicized language should be used only in prosecutions under Sec. 2252A(a)(5)(B), as in the case at bar.

Defendant submits that the law is generally well established regarding a Motion for New Trial based on insufficiency of the evidence (F.R.Cr.P. 33((a)(2)).

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial.  The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of witnesses.  If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury. This authority should be exercised sparingly and with caution; nevertheless, the trial court has wide discretion in deciding whether to grant a new trial in the interests of justice.

*United States v. Lincoln*, 630 F.2d at 1319; *United States v. Huerta-Orozco*, 272 F.3d 561, 565-566 (8th Cir. 2001).  To grant a motion for new trial, the district court must find that "the interests of justice so requires."  *United States v. Huerta-Orozco*, 272 F.3d at 565.

### Argument

Defendant respectfully argues that the granting of a new trial in this case is in the interests of justice, and that the denial of a new trial may be a manifest miscarriage of justice because: (1) the weight of the evidence regarding Counts 1, 2, 3, 4, 5, 6 and 7, preponderates sufficiently against the verdicts of guilty that a serious miscarriage of justice may result unless a new trial is granted; or (2) serious Double Jeppardy issues exist regarding Counts 1, 2 and 3, which issues also include what Defendant now respectfully states appears to have been the incorrect denial of Defendant's motion for bill or particulars; or (3) Defendant respectfully

argues that some of the Instructions given by the Court, even in the absence of objection by Defendant's then counsel, are an inappropriate statement of the law, and that a new trial with reconsideration of Instructions is necessary to avoid a miscarriage of justice, and that this issue also includes the Court's denial of Defendant's object to the giving of Instruction regarding Counts 2 and 3 (conspiracies) without requiring or Instructing regarding overt acts; or (4) that the quantity and nature of evidence admitted at trial regarding the PedoBook website, the use of the website by persons other than the identified user ("Defendant"), and the evidence regarding "fantasy communications" by Defendant, particularly as considered in the aggregate, are unduly prejudicial and especially inflammatory, and that a new trial is necessary to overcome a serious miscarriage of justice; or (5) in an extraordinary application of a new trial predicated upon "newly discovered evidence," Defendant makes the "contingent argument" (see footnote below) that a new trial is necessary to avoid a serious miscarriage of justice because one or more witnesses essential to the defense were not produced[17].

Defendant by this reference incorporates herein, as though set forth in full, his Brief in Support of his Motion pursuant to F.R.Cr.P. 29 for Judgment of Acquittal, above, offering in the alternative, the reasons stated in support of said Rule 29 Motion, as rationale that the vacating of the verdicts regarding Counts 1, 2, 3, 4, 5, 6 and 7, and the granting of a new trial with regard to all or any of said Counts, is "in the interests of justice."

### 1. Weight of the evidence

Defendant's argument herein rests squarely upon his arguments regarding sufficiency of

---

[17] If the Court construes this argument by Defendant to be tantamount to a claim of ineffective assistance of counsel by Defendant, Defendant withdraws this argument in favor of preserving the potential pursuit of an action pursuant to Title 28, United States Code, Section 2255, at a later time.

the evidence concerning the motion for judgmental of acquittal, above, incorporated herein by this reference.

### 2.   Double Jeopardy issues

Defendant's argument herein rests squarely upon his arguments regarding Double Jeopardy and associated issues concerning the motion for judgmental of acquittal, above, incorporated herein by this reference.

### 3.   Court's Instructions to the Jury

Defendant is aware that his then counsel made very few objections to proposed Instructions.  Defendant preserves and hereby renews those objections to Instructions previously made (TT. 711:11-716:25), which include: changing the dates in the Instruction relating to Count 1 (Elements No. 1 and 2); requiring an Element regarding overt acts with regard to Instructions concerning both Counts 2 and 3; Requesting avenue Instruction and corresponding verdict form; stating in the Instruction regarding the Child Exploitation Enterprise that "in concert with *three other persons*" should apply to each predicate offense, and not in the aggregate.

As noted above, Defendant, although not challenged at trial, states challenges regarding Instruction Nos. 7, 8 , 9, 10, 11 and 12 (CEE) regarding the full meaning of "in concert with."  These are dealt with above regarding Defendant's Rule 29 motion, by this reference incorporated herein.

To these challenges regarding Instructions, Defendant adds, only regarding his Rule 33 motion, a challenge to:

- Instruction No. 14 regarding Count 2, Element 1 for failure to Instruct regarding what constitutes "a notice or advertisement"; and

- Instruction No. 37 (p. 44 of 48) regarding the form of the Instruction, which refers to having heard evidence that the Defendant "committed offenses involving child pornography that were not charged in the Indictment," respectfully arguing that said language should have referred to, as it does in the last phrase of the Instruction, "similar acts in the past."

**4. Unduly prejudicial evidence**

Defendant has essentially addressed this argument in his Rule 29 motion, which is incorporated herein. Defendant is herein challenging the range and quantum of evidence regarding PedoBook in general, and users of PedoBook other than the identified user ("Defendant"), which does not necessarily address Defendant; and the quantum of evidence regarding "fantasy chat" statements involving Defendant, especially without demonstrating the attempted commission of a charged crime (or of any crime).

**5. "Newly discovered evidence"**

[But only if this is not construed by the Court to constitute a claim of ineffective assistance of counsel, in which event Defendant withdraws this portion of his Rule 33 motion in deference to preserving the potential for later consideration of a 2255 action.]

At trial, Defendant clearly attempted to mount an affirmative defense regarding Defendant accessing Tor as an exercise of personal professional interest and federal agency security, to attempt to map certain functions/parts of Tor. Defendant had anticipated introducing the testimony of Dan Bright regarding this subject. However, Defendant was summarily denied

this opportunity when his then attorney failed to proffer the testimony of Bright, failed to prove

up service of a subpoena upon Bright, and failed to request a continuance of trial to produce this

witness.  See, TT. 702.

With regard to this argument for new trial, if judgment of acquittal is not granted

regarding Counts 1-3, inclusive, and a new trial is not otherwise granted regarding any Counts

remaining, Defendant requests the Court to grant Defendant an additional opportunity to produce

a an affidavit or proffer of key additional evidence Defendant would produce at any new trial.

As the Court is aware, Defendant has relatively new counsel in this case, and the complete

review of Defendant's file, including regarding the trial, preparation of objections regarding the

Presentence Report, and general preparation for sentencing, has left new counsel without a

reasonable opportunity to adequately prepare its case regarding new trial based on this excluded

evidence.

### 6.   Internal conclusion

Wherefore, Defendant respectfully requests the Court to grant Defendant a new trial for

the reasons stated herein.

**Conclusion**

Wherefore, Defendant respectfully requests the Court to grant Defendant's F.R.Cr.P. 29

motion, and in the alternative, to grant Defendant's F.R.Cr.P. 33 motion.

TIMOTHY DEFOGGI, Defendant

By:     s/Stuart J. Dornan
        STUART J. DORNAN, #A0011658
        Dornan, Lustgarten & Troia, PC, LLC
        1403 Farnam Street, Suite 232
        Omaha, Nebraska  68102

36

Tel: 402.884.7044
Fax: 402.881.7045
stu@dltlawyers.com

Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2014, I electronically filed the foregoing document with the Clerk of the District Court using the CM/ECF system which sent notification of such filing to the following:

Michael P. Norris, Assistant United States Attorney

and I hereby certify that I have electronically served (via email) a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below:

N/A

By:     s/Stuart J. Dornan

STUART J. DORNAN, #A0011658
Attorney for Defendant