IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 8:13CR105 |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY DEFOGGI, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL**

Prepared and Submitted by:

DEBORAH R. GILG
United States Attorney
for the District of Nebraska

MICHAEL P. NORRIS (#17765)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
Phone: (402) 661-3700

KEITH BECKER
DOJ Trial Attorney
1400 New York Ave NW 6th Floor
Washington, DC 20530
(202) 305-4104

SARAH CHANG
DOJ Trial Attorney
1400 New York Ave NW 6th Floor
Washington, DC 20530
(202) 353-4979

1

## I. INTRODUCTION

After a four-day jury trial, Defendant Timothy DeFoggi was found guilty on August 26, 2014 on all seven counts in the Indictment. See Dkt. No. 215. On November 24, 2014, Defendant filed a brief in support of a motion pursuant to Federal Rules of Criminal Procedure 29 and 33 for judgment of acquittal or, in the alternative, a new trial. See Dkt. No. 261. Defendant argues that the evidence adduced at trial was insufficient to support guilty verdicts on all seven counts of the Indictment. Based on the weight of the evidence as well as his various objections to the Court's instructions to the jury, Defendant also argues that a new trial is necessary to avoid a miscarriage of justice.

The United States respectfully submits that the evidence adduced at trial, viewed in the light most favorable to the government, was sufficient to sustain convictions on all seven counts of the Indictment and fully supports the jury's verdicts. Furthermore, the Defendant cannot and does not demonstrate that a miscarriage of justice would occur if his motion for a new trial were denied. Accordingly, this Court should deny both the Defendant's motion for judgment of acquittal and his motion for new trial.

## II. LEGAL STANDARDS

### A. Motion for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29, "a district court shall enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction. A district court must consider a motion for acquittal with 'very limited latitude' and must neither assess the witnesses' credibility nor weigh the evidence." United States v. Johnson, 474 F.3d 1044, 1048 (8th Cir. 2007) (citing United States v. Thompson, 285 F.3d 731, 733 (8th Cir. 2002)); see also

United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004) ("Where a party challenges the evidence underlying his conviction, the standard of review is very strict, and the jury's verdict is not lightly overturned."). The district court "must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor and accepting all reasonable inferences drawn from the evidence supporting the jury's verdict." *Id.* See also United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003) (citing United States v. Grimaldo, 214 F.3d 967, 975 (8th Cir. 2000)). "[I]f there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt, then "the "jury's verdict must be upheld." Id. (citations omitted). Furthermore, it is well-established that the evidence in support of a conviction "need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." United States v. McGuire, 45 F.3d 1177, 1186 (8th Cir. 1995); see also United States v. Hawkey, 148 F.3d 920, 923 (8th Cir. 1998).[1]

**B.    Motion for New Trial**

Under Federal Rule of Criminal Procedure 33(a), a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Although the decision to grant or deny a motion for a new trial is within the sound discretion of the trial court, "there are

---

[1] The Defendant is mistaken to assert that where the evidence is equally strong to infer either innocence or guilt the verdict must be one of not guilty. See Dkt. No. 261, pp. 3-4. In the Eighth Circuit's most recent case to date to address the contradictory holdings of United States v. Baker, 98 F.3d 330, 338 (8th Cir. 1996) (holding that if the evidence rationally supports two conflicting hypotheses, a reviewing court must not disturb a conviction), and United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996) (holding that a reviewing court has a duty to direct an acquittal if the government's evidence is equally strong to infer innocence as to infer guilt), the Eighth Circuit settled on Baker as the ruling case: "Although we are not free to overrule Davis, we are free to follow Baker, which is the standard this court has overwhelmingly favored." United States v. Butler, 238 F.3d 1001, 1004 (8th Cir. 2001) (citing United States v. Turner, 157 F.3d 552, 556 & n.5 (8th Cir. 1998)); see also United States v. Chipps, 299 F. 3d 962, 964 (8th Cir. 2002).

limits" to that discretion. United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). "[T]he jury's verdict must be allowed to stand" unless "the district court ultimately determines that a miscarriage of justice will occur. Campos, 306 F.3d at 579 (citing United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000)). Importantly, "the question is not what evidence the government did not have; rather, the test is how strong the evidence the government did introduce was." Campos, 306 F.3d at 581. To determine whether a defendant is entitled to a new trial, "the district court may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Walker, 393 F.3d 842, 847 (8th Cir. 2005) (quotation omitted). However, motions for new trials "based on the weight of the evidence are generally disfavored" and the district court "must exercise the Rule 33 authority sparingly and with caution." Campos, 306 F.3d at 579 (quoting United States v. Lincoln, 630 F.3d 1313, 1319 (8th Cir. 1980)). Unless the district court can conclude that the evidence "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred," it may not set aside the verdict and grant a new trial. United States v. Anwar, 428 F.3d 1102, 1109 (8th Cir. 2005); see also Campos, 306 F.3d at 581 (citing United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985)).

### III. ARGUMENT

    A.    **The Defendant's Motion for Judgment of Acquittal should be denied**

        a.    **The Government's evidence at trial was sufficient to support the jury's guilty verdicts on all seven counts of the Indictment**

            i.    **Count I, 18 U.S.C. § 2242A(g), Child Exploitation Enterprise and Counts IV through VII, 18 U.S.C. § 2252A(a)(5)(B)**

The evidence adduced at trial established all elements of Count I of the Indictment, a

violation of 18 U.S.C. § 2252A(g). That statute is violated if a person commits, *inter alia*, offenses listed in Chapter 110 of Title 18 of the U.S. code, "as a part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons." 18 U.S.C. § 2252A(g).

The evidence established beyond a reasonable doubt that the Defendant utilized the online aliases "fuckchrist" and "PTasseater" on the PedoBook website, and, accordingly, that all activity associated with those identities was attributable to him. See TT, vol. 2, p. 309-312 (establishing Tor traffic at the residence around 5:00 am); TT, vol. 2, p. 316 (establishing that one person from the basement level, who was not Christopher Casto, fled to the main level of the residence); TT, vol. 2, pp. 354-356 (establishing that upon entering the main floor of the residence, SA Smith observed Defendant kneeling on the floor with a laptop in his hands); TT, vol. 2, pp. 356-358 (establishing that SA Smith had to forcibly remove Defendant from the laptop and observed that the laptop was actively downloading a file from a Tor hidden service website called Onion Pedo Video Archive, a website dedicated to the distribution of child exploitation material videos); TT, vol. 2, pp. 251-254 (establishing that user "fuckchrist," in his private messages, told other members that he resides in the Maryland/D.C./Virginia area and that he is usually on the website in the early morning, between 3 am and 6 am, before his roommate wakes up); TT, vol. 3, p. 562 (establishing that Defendant's domestic partner wakes up around 6:30 or 7:00 am); TT, vol. 2, pp. 259-286 (establishing that through various law enforcement investigative techniques, including open source searches, administrative subpoenas, and cooperation with foreign law enforcement, the names "fuckchrist" and "PTasseater" were uniquely identified as belonging to Defendant).

As to the defendant's commission of three or more violations of Chapter 110 – here, the four instances of access with intent to view child pornography charged in Counts IV-VII of the Indictment – the jury heard extensive testimony and received numerous exhibits through Special Agent Gordon ("SA Gordon") describing the Defendant's child pornography related activities on the website. Specifically, on August 20, 2014, SA Gordon testified that on four particular dates named in the Indictment under Counts IV through VII (11/21/2012, 11/26/2012, 12/4/2012, and 12/8/2012), the Defendant accessed numerous images of child pornography, depicted in Exhibits 5A through 5D and 6A through 6D, which capture user activity logs from the website as well as screen shots of that activity. Trial Transcript ("TT"), vol. 2, pp. 233-245. SA Gordon's testimony established that the Defendant "actually clicked on and viewed" child pornography files, as indicated by the user log entries, on all four dates. See, e.g., TT, vol. 2, p. 234-239. Defendant's intent and *mens rea* was shown throughout the trial by, among other things, his discovery of a website solely dedicated to the sexual exploitation of children which could not be found without extensive knowledge of Tor and a desire to remain anonymous while accessing child pornography, see TT, vol. 1, pp. 135-138, 145-146; see also TT, vol. 2, pp. 383-382; and his actions in registering as a member of the website, creating a profile page, selecting or accepting other members as "friends," requesting or soliciting child pornography from other users, and soliciting and obtaining membership in various groups, see TT, vol. 1, p. 146, 170-181; see also TT, vol. 2, pp. 249.

Furthermore, the government's evidence sufficiently demonstrated that all images and videos available on the website, which were uploaded by the global membership of the site, had traveled through interstate commerce before and at the time of Defendant's access. See, e.g., TT,

6

vol. 1, pp. 93-94 (SA Tarpinian testified that the server that hosted the data that comprised the website was located in Omaha, Nebraska); TT, vol. 2, pp. 215-216 (SA Gordon testified that a user accessing the website and its content from Maryland was actually accessing data that resided on and had traveled from a server located in Nebraska).

The evidence also established that the defendant committed the charged offenses "in concert with" three or more other persons. As the Court properly instructed the jury, to act "in concert" requires "proof of an agreement that would also violate [a] conspiracy offense." United States v. Wayerski, 624 F.3d 1342, 1350-51 (11th Cir. 2010) (applying court interpretations of the phrase "in concert" in 18 U.S.C. § 848 to Section 2252A(g)). See also Rutledge v. United States, 517 U.S. 292, 300 (1996) (explaining that "because the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or enterprise, . . . this element of the CCE offense requires proof of a conspiracy that would also violate § 846."). The government presented at trial substantial evidence to show the defendant's knowing participation in a criminal conspiracy with three or more other persons. In particular, SA Gordon's testimony and the exhibits admitted during that testimony established that the images of child pornography accessed by the defendant on the dates on which he was charged with accessing with intent to view child pornography were posted by three or more other site members. *See, e.g.*, TT, vol. 2, p. 240 (testifying that all the pages viewed by user "fuckchrist" on December 4, 2012 during a particular session contained images of child pornography uploaded by the user "jackspade."); TT, vol. 2, p. 245 (testifying that on December 8, 2012, user "fuckchrist" accessed numerous webpages featuring images of child pornography uploaded by other members of the website). Further, the sum total of the defendant's numerous actions on the website, to include registering a

username, creating a persona, interacting with other users via private messages, joining public groups, joining private groups where child pornography shared was limited to group members, and soliciting particular child pornography from other users, further evidence his knowing and intentional participation in this child pornography conspiracy.

Defendant twice misstates the law regarding the requirement that "defendant commit those offenses in concert with three or more other persons." Dkt. No. 214, p. 8. First, while the Defendant would prefer an interpretation that would require *each* predicate offense to have been committed "in concert with" three or more other persons, the law is clear that "those offenses" refer to the "*series* of felony violations": "[T]he required total of three other persons may be tallied by considering the predicate counts together." United States v. Daniels, 653 F.3d 399, 412-13 (6th Cir. 2011). As discussed above, the government's evidence established that, at a minimum, the four instances of access with intent to view charged in the Indictment *together* involved three or more other people. To the extent that the defendant suggests that there must have been proof that the defendant joined a new agreement each time he accessed child pornography, see Dkt. No. 261 at p. 9, that argument finds no support in law.

Defendant also misreads Jeffers v. United States, 432 U.S. 137 (1977) to conclude that Congress intended the phrase, "in concert with" to "expand" the meaning of conspiracy. See Dkt. No. 261, p. 11. There was no such expansion in Jeffers. In fact, that Court was clear in its reading of "in concert with" that it should be read as an *inclusive* concept: "The actual language of the bill, however, used the words 'in concert with' to cover *both* concerted action and conspiracy. Thus, it is apparent that the Senate understood the term 'in concert' to *encompass* the concept of agreement." Jeffers, 432 U.S. at 150, n.14 (internal citations omitted) (emphasis added). In fact,

the Defendant's next claim—that Counts II and III are lesser included offenses of Count I—supports this statement of the law. Thus, rather than differentiating "in concert with" from conspiracy, the Jeffers court *included* conspiracy within its meaning.

> ii. **The government will request the Court to vacate the jury's verdict on Counts II and III, upon particular findings, at the time of sentencing**

The government concedes that Counts II and III, on the theory presented at trial, are both lesser included offenses of Count I.[2] Accordingly, the government will request at the time of sentencing that the Court vacate the jury's verdict on Counts II and III and not impose any sentence regarding those Counts. The government will further request that the Court condition the vacating of those convictions upon Count I being upheld on appeal. In the event that the conviction on Count I were to be reversed but Counts II or III upheld, the appellate court could then either reinstate the verdicts or order this Court to do so and resentence the defendant. See Rutledge, 517 U.S. at 305.

B. **Defendant's Motion for a New Trial should be denied**

   a. **The Defendant does not and cannot show that a miscarriage of justice will occur in the absence of a new trial and his Rule 33 motion should be denied**

Defendant summarily concludes that a miscarriage of justice will occur in the absence of a new trial. Motions for new trials "based on the weight of the evidence are generally disfavored" and the district court "must exercise the Rule 33 authority sparingly and with caution." Campos, 306 F.3d at 579 (quoting Lincoln, 630 F.3d at 1319). Even when the district court considers the weight of the evidence and evaluates for itself the credibility of the witnesses, unless the district

---

[2] Counts II and III, which contain different elements as to the object of the conspiracy, are not lesser included

court can conclude that the evidence "preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred," it may not set aside the verdict and grant a new trial. Anwar, 428 F.3d at 1109; see also Campos, 306 F.3d at 581 (citing Martinez, 763 F.2d at 1313). As discussed *infra* Section A, the government's evidence sufficiently proved beyond a reasonable doubt Defendant's guilt on all counts charged in the Indictment and the jury's guilty verdicts must not be disturbed.

### b. The Defendant's untimely challenge to jury instructions does not require a new trial

The defendant also moves for a new trial based upon a largely untimely challenge to some of the Court's jury instructions.  Other than to preserve some objections raised at trial and state new objections not made at the time of the Court's charge conference or when the Court gave the instruction, the defendant raises no persuasive reason or legal authority to support his objections to the Court's instructions.  In any event, "[j]ury instructions are adequate if, taken as a whole, [they] adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." United States v. Rice, 449 F.3d 887, 895 (8th Cir. 2006) (quotation omitted).  "The district court has wide discretion in formulating appropriate jury instructions." United States v., Cruz-Zuniga, 571 F.3d 721, 725 (8th Cir. 2009) (quotation omitted). Accordingly, so long as a particular jury instruction "fairly and adequately submitted the issues to the jury," it will survive appellate review. Poitra, 648 F.3d at 887 (quoting United States v. Farish, 535 F.3d 815, 821 (8th Cir. 2008). Further, "it is typically not necessary to define a particular term in the jury instructions if the meaning being attributed to that term is a matter of common knowledge." Id. (citing United States v. Bro*wn*, 33 F.3d 1014, 1017 (8th Cir.

---

ooffenses of one another.

10

1994)). And even if the district court's allegedly flawed jury instructions were an abuse of discretion, prejudicial effect must be found for a reversal. United States v. Mitchell, 613 F.3d 862, 867 (8th Cir. 2010).

Here, in addition to his failure to show any actual error or misstatement of the law, Defendant fails to allege any prejudicial effect; nor can he show that the judicial proceeding's integrity has been jeopardized. Accordingly, the Defendant's untimtely quibbles with jury instructions does not support his request for a new trial.

### c. The admission of evidence regarding the website and the Defendant's "fantasy chats" are not grounds for a new trial

The defendant chose to commit his crimes via the website known as Pedobook. The admission of evidence regarding the operation and functionality of the PedoBook website was accordingly necessary to provide the jury with an adequate understanding of Defendant's charged offenses and the method and means by which he committed them. That it was necessary for the government to present that information is not grounds for a new trial. See Butler, 296 F.3d at 723 ("An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing the factors commits a clear error of judgment.") (internal citations omitted). In fact, without an adequate understanding of the website, the jury would not have been able to deliberate fairly the nature and scope of Defendant's actions.

In terms of the defendant's objection to the presentation of so-called "fantasy chats," that issue was addressed both prior to and during trial. The Court previously issued a ruling allowing the admission of Defendant's "fantasy chats." Dkt. No. 148, p. 8-10. The Court found that:

> [T]he content of the chats, while graphic and aberrant, has some tendency to make certain facts more or less probable than it would be without the evidence. Such facts are of consequence in this action. In particular, the chats, both the existence of them and the content, tend to show the identity, intent, and knowledge of the participants. The prejudicial nature of the chats' content does not outweigh the probative value.

Dkt. No. 148, p. 9. See also Dkt. No. 169 (adopting Dkt. No. 148 in its entirety, denying the Defendant's motion *in limine* to exclude the "fantasy chats."). During trial, the Court made a further ruling admitting the chat evidence over the defendant's objection. TT, vol. 1, pp. 139-144. As the Court has recognized, that evidence was important to show the defendants identity, intent, and knowledge. Their admission is no reason to grant a new trial.

### d. Defendant is not entitled to a new trial based on "newly discovered evidence" because he has not shown that it would likely result in an acquittal

The defendant further makes an alternative argument that he was somehow prevented from asserting a baseless affirmative defense that he accessed the Tor network for personal and professional reasons. Even if that were a defense to engaging in illegal child pornography offenses, which it is not, the defendant testified and had an opportunity to explain that defense to the jury. He decided not to. The defendant also elected not to request any material witness warrant or continuance in order to procure a witness to support such a non-existent affirmative defense. In any event, merely asserting the existence of *additional* evidence that *may* have bolstered his affirmative defense is insufficient grounds for a new trial. See United States v. Rouse, 410 F.3d 1005, 1009 (8th Cir. 2005) ("To receive a new trial, the movant must show that the newly discovered evidence is of such a nature that, in a new trial, [it] would probably produce an acquittal.") (internal citations omitted).

## IV. CONCLUSION

The Defendant has failed to meet both standards required for a judgment of acquittal or a new trial. Accordingly, the Court should deny the Defendant's motions.

WHEREFORE, the United States respectfully prays this Honorable Court to deny both the defendant's motion for judgment of acquittal and motion for new trial.

Respectfully submitted,

\_\_/s_____
MICHAEL P. NORRIS
ASSISTANT U.S. ATTORNEY

\_\_/s_____
SARAH CHANG
TRIAL ATTORNEY

\_\_/s_____
KEITH BECKER
TRIAL ATTORNEY

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of this motion to be sent to counsel for defendant, Stuart J. Dornan, via e-mail on December 16, 2014, at stu@dltlawyers.com.

\_\_\_\_/s_____
KEITH BECKER
TRIAL ATTORNEY