```
 1                   IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF NEBRASKA
 2
       UNITED STATES OF AMERICA,      )
 3                                    )
                 Plaintiff,           )           8:13CR105
 4                                    )
            vs.                       )
 5                                    )        Omaha, Nebraska
       TIMOTHY DEFOGGI,               )        January 5, 2015
 6                                    )
                 Defendant.           )
 7

 8                   TRANSCRIPT OF SENTENCING PROCEEDINGS
                    BEFORE THE HONORABLE LAURIE SMITH CAMP
 9                    CHIEF UNITED STATES DISTRICT JUDGE

10
                         A-P-P-E-A-R-A-N-C-E-S
11
       FOR THE PLAINTIFF:            Mr. Michael P. Norris
12                                   Asst. United States Attorney
                                     1620 Dodge Street
13                                   Suite 1400
                                     Omaha, NE 68102
14
                                     Mr. Keith A. Becker
15                                   Ms. Sarah Chang
                                     DOJ Trial Attorneys
16                                   1400 New York Avenue, N.W.
                                     Sixth Floor
17                                   Washington, DC 20530

18     FOR THE DEFENDANT:            Mr. Stuart J. Dornan
                                     Dornan, Lustgarten Law Firm
19                                   1403 Farnam Street
                                     Suite 232
20                                   Omaha, NE 68102

21

22     COURT REPORTER:              Ms. Brenda L. Fauber, RDR, CRR
                                     111 South 18th Plaza
23                                   Suite 3122
                                     Omaha, NE 68102
24                                   (402) 661-7322

25     Proceedings recorded by mechanical stenography, transcript
       produced with computer.
```

1          (At 2:35 p.m. on January 5, 2015, with counsel for the

2    parties and the defendant present, the following proceedings

3    were had:)

4          THE COURT:  We are here in the matter of the United

5    States versus Timothy DeFoggi, Case Number 8:13CR105.

6       Will counsel please enter their appearances.

7          MR. BECKER:  Keith Becker for the United States, your

8    Honor.

9          MR. NORRIS:  Michael Norris for the United States.

10          THE COURT:  Good afternoon.

11          MS. CHANG:  Sarah Chang for the United States, your

12    Honor.

13          THE COURT:  Very good.  Ms. Chang is joining us by

14    telephone.  And thank you for chiming in.  I'm glad that they

15    got you connected.  Good afternoon.

16          MS. CHANG:  Thank you, your Honor.

17          MR. DORNAN:  Good afternoon, your Honor; Stu Dornan

18    on behalf of Mr. DeFoggi.

19          THE COURT:  Very good.  Good afternoon to both of

20    you.

21       The matter we're addressing is the sentencing.

22       After a jury trial on Counts I through VII of the

23    indictment, the defendant was found guilty of those counts.

24       And a motion was filed to dismiss Counts II and III as

25    lesser included offenses, and those counts have been dismissed

1    by the Court's order of December 30, 2014.

2        Mr. Becker, shall I address you as opposed to both of

3    you?  Mr. Norris is nodding.

4        Mr. Becker, did you receive the revised presentence

5    investigation report in this case and the Court's tentative

6    findings?

7            MR. BECKER:  I did, your Honor.

8            THE COURT:  Very good.

9        Mr. Dornan, did you receive those documents and discuss

10   them with your client?

11           MR. DORNAN:  I did, your Honor.

12           THE COURT:  The defendant's objections appear at

13   filing 267.  One of the objections had to do with Counts II

14   and III being lesser included offenses, and so that issue is

15   now moot.

16       The other objections largely relate to the defendant's

17   assertion of his innocence.  And he takes issue with the

18   government's version of the offense that is set out in the

19   presentence investigation report.

20       Those objections are denied.  The defendant's motion for

21   variance appears at filing number 269.

22       And generally as most of the lawyers know, perhaps not

23   Mr. Becker because he doesn't appear here as often, but I

24   generally, for the record, deny a motion for a variance,

25   recognizing that the guidelines are advisory, recognizing that

1     I can sentence outside the guideline range, considering all

2     the statutory sentencing factors -- and in fact, I may have an

3     obligation to if those factors indicate that I should.

4          Of course, I am bound by the statutory mandatory minimum.

5          So Mr. Dornan, do you want a separate argument on the

6     motion for variance that appears at 269 -- it's actually

7     titled Sentencing Memorandum -- or is it agreeable to you if

8     those arguments are consolidated with allocution?

9          MR. DORNAN:  I would prefer the second way and have

10    it consolidated, Judge.  Thank you.

11         THE COURT:  Very good.

12         Then, because the Sentencing Memorandum was actually

13    filed as a pending motion -- at least it has a gavel next to

14    it which means I have to take some action on it -- I will deny

15    it for the record, but keeping an open mind as to what is the

16    appropriate sentence in this case, considering all the

17    statutory sentencing factors.

18         Mr. Becker, did you receive the sentencing recommendation

19    in this case?

20         MR. BECKER:  Yes, your Honor.

21         THE COURT:  And Mr. Dornan, did you also receive the

22    sentencing recommendation and discuss it with your client?

23         MR. DORNAN:  I did, your Honor.

24         THE COURT:  I will go through the advisory

25    guidelines.

1          And then I do understand, Mr. Dornan, that you may have

2     some documents that you want me to receive and consider as

3     exhibits.  And I will make sure that you have an opportunity

4     to address that.

5          MR. DORNAN:  Thank you, Judge.  There are three short

6     documents, which I have provided to counsel.

7          THE COURT:  Okay.  Very good.

8          I'll go through the advisory guidelines.  The base

9     offense level under Section 2G2.6(a) is level 35.  There's an

10    upward adjustment of four levels because of the age of the

11    victims involved in the pornographic material.  There's an

12    upward adjustment of two levels because of the use of the

13    computers, which brings us to an adjusted offense level of 41.

14         The defendant's criminal history category is category I.

15         The range of imprisonment under the guidelines on Count I

16    is 324 months to 405 months, with a 20-year statutory

17    mandatory minimum.

18         As noted, Counts II and III have been dismissed.

19         On Counts IV through VII, the statutory maximum is 20

20    years, and that is also the guideline.  The supervised release

21    range for all counts is five years to life.

22         The fine range is 25,000 to $250,000.  And the special

23    assessment now totals $500 because there are only the five

24    counts remaining.

25         And I do note, for the record, that the counts are

1     grouped pursuant to Guideline Section 3D1.2(d).

2          The parties have indicated they've received the

3     sentencing recommendation.  The recommendation is for a

4     sentence of 324 months on Count I and 240 months concurrent on

5     Counts IV through VII, to be followed by a term of supervised

6     release that would be a lifetime term.

7          The imposition of a fine is not recommended because the

8     defendant at this stage is unable to pay a fine and is not

9     expected to become able to pay a fine.  And as noted, the

10    special assessment now totals $500.

11         So we will proceed to allocution.

12         And at that juncture, Mr. Dornan, of course, you go

13    first.  And if you wish me to consider some other documents --

14    I will note that I have reviewed and considered those which

15    were already sent to me and which appear in the filing in this

16    case.

17         You may proceed.

18         MR. DORNAN:  Thank you, Judge.

19         I have presented to your courtroom deputy an item marked

20    as Exhibit 10, which is an Evidence Recovery Log that's dated

21    April the 9th, 2013, that I'd like to offer.

22         THE COURT:  As you may recall, we start defense

23    exhibits at number 100 generally.  And I don't recall where

24    the exhibit numbers left off at the time of the trial.

25         Mr. Dornan, was there a reason that you started with

1     number 10?

2              MR. DORNAN:  Yes.  When we were compiling these

3     exhibit lists, my paralegal did speak with the court

4     reporter with respect to -- or somebody in your office.

5              THE COURT:  Well, this is not a big deal.  We just

6     want to make sure that -- for purposes of the record that the

7     appellate court gets the exhibits in an orderly manner.

8          So let me check with Ms. Frahm about what the last

9     exhibit number was for the defense.  And I realize,

10    Mr. Dornan, you were not counsel of record at the time of

11    trial.  This is not a criticism at all.

12             COURTROOM DEPUTY:  One moment, Judge.  The next

13    number should be 307.

14             THE COURT:  All right.  Mr. Dornan, would you have

15    any objection to me relabeling these exhibits as 307, 308 and

16    309?

17             MR. DORNAN:  No, your Honor.

18             THE COURT:  I'm going to ask Ms. Frahm to do that,

19    and that will help make sure we don't have two exhibits in the

20    record that have the same number and could potentially cause

21    confusion.

22             MR. DORNAN:  Thank you, your Honor.

23             THE COURT:  All right.

24         What has been titled Evidence Recovery Log is now labeled

25    Exhibit 307.  What is entitled Federal Bureau of Investigation

1    appearing as a report dated April 9, 2013, is labeled 308.

2    And what appears to be the handwritten statement that begins

3    with the word "overview" is labeled Exhibit 309.

4        And Mr. Dornan, I guess my first question about these

5    exhibits -- I understand you're offering them at this

6    juncture.  And my question is, are these exhibits relevant to

7    sentencing, or are these exhibits that the defendant wanted to

8    have considered at the time of trial in connection with the

9    issue of guilt?

10       MR. DORNAN:  The second -- the latter, your Honor.

11   These are -- I did not provide these as part of my sentencing

12   presentation.  These are something that Mr. DeFoggi believes

13   are relevant for the Court to consider.

14       THE COURT:  All right.  Any objection to Exhibits

15   307, 308 and 309?

16       MR. BECKER:  No, your Honor.

17       THE COURT:  All right.  I will receive them for the

18   record, recognizing that the jury found the defendant guilty

19   beyond a reasonable doubt on all counts.

20       And you can explain to me what, if any, relevance these

21   may have for the purpose of sentencing.  But they will be a

22   part of the record.

23       MR. DORNAN:  Thank you, your Honor.

24       THE COURT:  You may proceed.

25       MR. DORNAN:  Your Honor, I would -- first, in my

1    Sentencing Memorandum, I've asked the Court to consider

2    finding the statute -- the child exploitation enterprise --

3    unconstitutional in this case based on the offense that

4    Mr. DeFoggi was convicted of and the punishment being grossly

5    disproportionate to what he was actually convicted of.

6         I know this Court is well aware of the continuum in

7    Chapter 110 concerning offenses involving child pornography

8    and child exploitation.

9         If you take a look at the beginning of the continuum,

10   Judge, it's "access with intent to view" as being the least

11   serious.  And then you go to "possession", then you go to

12   "receipt", then you go to "distribution", then you go to

13   "production", then you go to "hands-on offenses".

14        Some of the hands-on offenses and sexual abuse penalties

15   are less than what Mr. DeFoggi faces here with respect to the

16   minimum 20 years.  And I would argue that the position of

17   Mr. DeFoggi under the guidelines is just -- basically amounts

18   to cruel and unusual punishment, concerning that whole

19   statutory scheme.

20        The other defendants in this matter -- I think most of

21   them have been sentenced, Judge, and I think most of them were

22   sentenced by Judge Bataillon.  Maybe all of them were

23   sentenced by Judge Bataillon.

24        Mr. McGrath, who is the person who was responsible for

25   operating and administering the PedoBook website, received a

1     20-year sentence of imprisonment.

2           Mr. McMillan, who this Court heard as a witness, if you

3     will recall, received a 12-year sentence of imprisonment.  And

4     if you'll recall, Judge, the fantasy chat attributed to him

5     was more egregious than the fantasy chat attributed to

6     Mr. DeFoggi.

7           Anything I say here, Judge, just so Mr. DeFoggi is aware,

8     he stands on his plea of not guilty.  And I'm not admitting

9     anything in that regards that he admits anything in this, just

10    so he's aware of that, for purposes of sentencing.

11          The other defendants, Judge, Jason Flanary received 20

12    years; Zackary Austin, 16 years; Wesley Cameron, 15 years.

13    They, of course, pled -- Flanary, Austin and Cameron pled to a

14    lesser offense of conspiracy to distribute.

15          So your Honor, you have a situation where a individual,

16    who has no past criminal history whatsoever, whose prior track

17    record is of significant assistance, not only to his country

18    through the military, to the United States government, but

19    also to his community of very fine, long-standing

20    contributions and benefits with respect to his roles as a --

21    both in the state system and at the highest level of the

22    federal government.

23          I think all of those things, Judge, at the age of 56, and

24    the fact that he has not been convicted of anything else, are

25    very important factors with respect to the Court constructing

1    and fashioning an appropriate sentence.

2         He's 56 years of age.  Whatever sentence the Court

3    imposes here is going to -- if the Court imposed a mandatory

4    minimum, it's going to place him outside of society for a

5    significant period of time, and perhaps for the rest of his

6    natural life.

7         All of those things, Judge, I think are very important,

8    again not sentencing him to something more than the lower end

9    of the continuum.

10        I realize that what is attributed to him is -- certainly

11   is -- would be considered vile and provocative.  But it was --

12   it was in the context of a fantasy chat.  And I think it's

13   very important for the Court to sentence him in accordance

14   with the "access with intent to view".

15        As I mentioned, Judge, in my Sentencing Memorandum, he

16   was not part of operating, administering, or controlling this

17   website.  He did not enforce any rules on PedoBook.  He did

18   not accept any users into PedoBook.

19        He did not contribute any child pornography into

20   PedoBook, did not post any formal notices seeking child

21   pornography on PedoBook, did not distribute any child

22   pornography, did not initiate polls in PedoBook, did not

23   create tag clouds, did not have possession of child

24   pornography images from PedoBook, and very importantly did not

25   financially benefit from PedoBook or otherwise from child

1    pornography.

2        You have a number of exhibits which show that he has very

3    good family support, family ties to the community.  He's not

4    in need of educational or vocational rehabilitation, Judge.

5        I've set forth a number of instances in your sister --

6    not sister, your fellow judges here in this court relating to

7    their problems with the excessive nature of the child

8    pornography guidelines.  I reference Judge Bataillon, Judge

9    Gerrard, Judge Bennett in the North District of Iowa, where

10   they have found that the child pornography guidelines should

11   be deconstructed, that they're not representative of empirical

12   data from the Sentencing Commission.

13       For all those reasons, Judge, I would respectfully ask

14   the Court to consider the child exploitation enterprise

15   statutes unconstitutional and sentencing Mr. DeFoggi to below

16   the mandatory minimum.

17       In the alternative, Judge, if the Court chooses not to do

18   that, to sentence him to the mandatory minimum of 20, and run

19   any other sentences concurrent.

20           THE COURT:  Thank you, Mr. Dornan.

21       Mr. DeFoggi, is there anything that you would like to say

22   today in connection with the sentencing?

23           THE DEFENDANT:  Yes, there is.

24       I wanted to comment on the PSI first off.  And you have

25   the letter from my previous attorney where the content was

1    from my son's computer, and the search -- or the exhibits that

2    Mr. Dornan gave you.  The thumb drive in question is also in

3    the PSI, it was found in my son's room.

4         You also have the statement given to [*sic*] my son at the

5    time he was interviewed by the FBI where he states that the

6    eMachine, that nickname Scooter in the PSI, is also his.  And

7    I think that adds volumes of information that's not relevant

8    to my PSI, all of that coming from my son's computer and his

9    thumb drive.  So I just wanted to point that out to your

10   Honor.

11        Then I wanted to give you the -- I'm sorry.  I want to

12   give you the other side, the part of me you didn't hear in

13   court.

14        I know you had three days of testimony which made me look

15   like I don't know what.  And I wanted to testify on the actual

16   allegations in this case, but my former attorney told me it

17   wasn't a good idea, so I wasn't allowed to do it.

18        And I did to want highlight -- I had written out another

19   letter to your Honor that -- and I'll just read parts of it,

20   okay?

21        THE COURT:  Be sure you read slowly.  Sometimes

22   people read faster than they talk extemporaneously so just

23   take it slowly so we can make a record.

24        THE DEFENDANT:  The first part, as I said, I wanted

25   you to see the real me, the real side of me that you didn't

1    get to see in court.

2         As Mr. Dornan said, I've spent probably 20 years working

3    for the government and in the military, serving my country, as

4    a former federal law enforcement agent, as an innovator of

5    technology for the intelligence community, the IN, NSA, and as

6    director of cyber security for a federal agency.  And that was

7    in my blood.  I loved every part of it.

8         And you know that Snowden and WikiLeaks certainly used

9    Tor to exfultrate classified data out of government networks.

10   And that was my passion, to defeat Tor as part of my job.

11        I also wanted to take -- I'm sure you've read the letter

12   I wrote you originally, but I want to tell you how important

13   my family is to me, and my --

14        I want to address my Christian background, because I was

15   portrayed as certainly not being Christian at all in this

16   trial.  And I wanted badly to address who I really am and

17   address the charges, but that never materialized.

18        But my childhood, I was saved back when I was around 6,

19   attended church regularly.  But then in adulthood, I was kind

20   of irregular church attendance and not much in the way for

21   prayer life.

22        I'm kind of in -- I'm thankful actually that this

23   happened, that this got my attention.  My life was mostly work

24   and my family.  And I never gave God -- I didn't give him much

25   time.  I went to church once a month maybe, and I never gave

1   him the time he deserved.

2       So when I got arrested and I prayed about it, I felt

3   pretty guilty that I didn't go to him any other time until I

4   needed him.  So that's something I've had to contend with.

5       I lost my mother while I was in jail; didn't get to see

6   her, didn't get to go to her funeral.  She was all I had in my

7   family pretty much, never grew up with my father.

8       Since being moved to Douglas County, I've been in the God

9   Mod the entire time.  Before that, I was in Saunders and Cass.

10  I read every -- I read the Bible from cover to cover.  I've

11  read a Bible encyclopedia, everything I can get my hands on,

12  which I'm so thankful that -- if I had been out, I never would

13  have taken the opportunity to do any of that.  Now in the God

14  Mod over the last four months, I'm so much closer to God than

15  I've ever been in my life.  And I'm sorry I didn't do that

16  before.

17      I just wanted you to know the real side of me that didn't

18  get presented at trial.  And I ask that you consider that,

19  consider my career, what I've done, and why I was doing it,

20  and the person that I really am.

21      That's what I wanted to tell you, your Honor.

22          THE COURT:  Thank you, Mr. DeFoggi.

23  Mr. Becker?

24          MR. BECKER:  Thank you, your Honor.

25          THE COURT:  I did receive the government's memorandum

1  regarding sentencing.

2       MR. BECKER:  Indeed, your Honor, and I'll try not to

3  be repetitive of that, knowing that the Court has received and

4  reviewed that.

5       As the Court is well aware, the PedoBook was itself a

6  social networking site for pedophiles and child pornographers.

7  It was an intensive organization with a massive and global

8  membership; thousands of users and members, thousands -- tens

9  of thousands of images of children, hundreds or thousands of

10  children were exploited through this site and by its users and

11  members.

12       I think it's important, and I think the Court will

13  recognize and should recognize the unique and serious danger

14  that organized child pornography communities like PedoBook

15  pose to children, not only in the United States, but all

16  throughout this world; and that that problem, that danger is

17  something that is unique and particular to these sorts of

18  communities and one that this Court should be very greatly

19  concerned about.

20       That is, of course, a danger that, one, Congress has

21  recognized certainly in setting tiers of punishments for

22  different types of offenses, different types of child

23  pornography offenses.  It's one of the reasons why the child

24  pornography enterprise statute carries the 20-year mandatory

25  minimum that it does as distinguished from other particular

1    statutes.

2        But, as we've pointed out in our sentencing paperwork as

3    well, that is also a concern in reality that the Sentencing

4    Commission has recognized.  And while I understand that the

5    defense wishes that this Court would view this sort of case in

6    light of an ordinary, passive child pornography recipient type

7    of case where there may be more argument to be made about the

8    current sentencing guidelines and whether they focus on the

9    right factors, the fact is that the Commission in its study,

10   as we pointed out, was very, very clear about the particular

11   dangers of organized child pornography communities.

12       I'll just quote it briefly, in the Commission's report on

13   the guidelines:  Child pornography offenders who are involved

14   with others in Internet-based child pornography communities

15   normalize and validate sexual exploitation of children,

16   promote the market for child pornography, and may directly or

17   indirectly encourage others to produce new images of child

18   pornography.

19       When these sorts of offenders are able to find these

20   communities, become members of them, share their particular

21   desires for particular types of child pornography, to

22   encourage others to create new child pornography, because when

23   they network like this, they've already collected everything

24   that's out there.  And what they want is to find new or more

25   violent and more particular child pornography.

1           And we saw exactly that sort of behavior in the

2     defendant's conduct on the PedoBook website.  That creates a

3     whole new scheme of danger to children beyond the more sort of

4     passive collection that I think the defense wishes to paint

5     Mr. DeFoggi's conduct under.

6           It's a meaningful distinction.  And then even in its

7     conclusions, the Sentencing Commission in one of the, as they

8     called it, primary factors that should be considered in

9     imposing sentences were the child pornography guidelines to be

10    amended, is the degree of an offender's engagement with other

11    offenders, in particular in an Internet community devoted to

12    child pornography and child exploitation.

13          And that is exactly the sort of conduct that we are

14    dealing with in this particular case, and exactly the sort of

15    conduct that Mr. DeFoggi engaged in and why he's here facing

16    sentencing today.

17          He, individually, had a choice in how he wanted to

18    interact with his fellow members of the PedoBook website.  As

19    the Court heard in trial testimony, it was possible to

20    interact with this site passively.  He could have gone there

21    as a purely anonymous user, never registered a screen name,

22    never created a persona, never engaged with any user.  And he

23    could have done that and browsed some of the child pornography

24    on that site entirely passively.

25          He chose not to.  The choice that he made was to be an

 1   active participant, to make himself a member, to create

 2   himself a persona, to interact with others, to solicit -- and

 3   I think the defense in their papers I think really just much

 4   too narrowly tries to define what it means to solicit in a

 5   notice or advertisement under the child pornography

 6   advertising statute.

 7        The fact is, by reaching out to other users looking for

 8   particular types of child pornography, that is a solicitation.

 9   And it's just the sort of solicitation that that statute,

10   which carries a 15-year mandatory minimum, criminalizes; that

11   is, looking to others for particular types of child

12   pornography that can then be shared.  And that is absolutely

13   one of the things that he did on this site.

14        And of course, the Court has seen both in the presentence

15   report and heard and seen during trial the particular topics

16   that the defendant discussed in his private messages with

17   other users, exposing and explaining his particular interest

18   in the violent sexual abuse of very young children.

19        And frankly, I think the defense wants, of course, to

20   paint that simply as fantasy chat.  And I just don't think it

21   holds.  And that's because of the particular environment where

22   he was acting in.  Because of, in part, the anonymity that the

23   Tor network provided and that the PedoBook platform operating

24   on the Tor network provided, and because of the normalization

25   effect that happens when these sorts of offenders interact

1   with other like-minded people who share those same desires,

2   what you get in those chats and those private communications

3   are, in fact, the true desires, the unvarnished desires, where

4   he is free and able to express exactly what it is that he is

5   interested in and wants to do because he knows he's anonymous,

6   he knows or believes that he can't be caught, that his actual

7   identity can't be found out.

8       And so this Court, I think, should be more concerned

9   about the content of those chats from the perspective of is

10  Mr. DeFoggi a danger to children and how does that play into

11  the sentencing factors in this case.

12      And so whereas they wish to paint that as fantasy, I

13  think this Court, because of the particular context, can see

14  it as a troubling statement of actual desires.

15      There's no question the defendant has had a long career

16  in public service and in working for the federal government.

17  It is unfortunate that the skill set that he developed through

18  the government, through his government work, and through the

19  training that he was provided and the experience that he

20  gained, also made it possible for him to take the sort of

21  steps that he did to make it difficult for him to be caught.

22      You know, all of the skills he developed as a government

23  IT professional, as a security professional, or however you

24  want to describe his experience, the fact is he used it to

25  promote his illegal behavior.  He used that experience to --

1    used that knowledge to find a site on the Tor network.  He

2    used that experience to set up his computer in a way that he

3    would be able to -- at least certainly he thought -- erase the

4    activity that -- erase the evidence of the sorts of activities

5    that he was engaging in online, to keep those sorts of

6    activities secret from those closest to him even within his

7    own household, which he did, we know, for quite some period of

8    time.

9         And so certainly the Court will take that sort of -- that

10   service and that experience into account.  But it's equally as

11   probative to see how he used it and, in fact, how he used it

12   to promote his illegal activity in this particular case.

13        The use of the Tor network, I think, in this particular

14   context is also -- it's important.  It's something the Court

15   should take into consideration as a part of the nature and

16   circumstances of the offense here.

17        There's no question there are a multitude of proper,

18   legal, important uses of anonymity services like Tor.  And

19   there are plenty of legal use for it.  It's certainly -- it's

20   unfortunate, and I think a very dangerous proposition, that it

21   is adopted as it is in this sort of context, not only for

22   criminal activity but for activity that involved child

23   exploitation.

24        Your Honor has seen certainly the evidence of the

25   thousands of members and users of these sites, the vast

1    majority of whom go unidentified and go unprosecuted because

2    of the technology that is available and mobilized by them.

3        And so that should be of a great concern and I think it

4    plays into the 3553 factors in terms of general deterrence;

5    that it is important for this Court, from the government's

6    view, to make a strong statement about inappropriate, illicit

7    use of these sorts of anonymizing services because of the

8    danger that it presents to children where this sort of

9    activity in exploiting children can be done openly and

10   notoriously without fear of detection by law enforcement.

11   That presents a great danger to children, makes them much more

12   vulnerable to abuse and to new abuse; make the offenders who

13   are involved in this more willing to share new images of child

14   pornography because they believe that they can hide behind

15   these sorts of anonymous services.

16       So again, as we look at arguments against the current

17   framework of the Sentencing Guidelines and possibly an

18   amendment to them at some point down the road, they need to be

19   replaced with something.  They're not going to be simply

20   thrown away.  They're going to be replaced with factors that

21   are probative, that remain probative.  As the Commission has

22   already said, one of those factors should be the degree of

23   interaction with an online community like this one.

24       And certainly, we would contend that another of those

25   factors would be the use of anonymization services by

1    defendants to exploit children.  So we'd ask the Court to

2    consider that as well.

3         In terms of a couple of the defendant's, I think, legal

4    objections, I'll just address them briefly.

5         First, in terms of the child exploitation enterprise

6    statute, the statute itself makes no distinction among or

7    between the violations of Chapter 110 that may form predicates

8    for a violation of the statute.

9         So 2252(g) [*sic*] states that the three offenses must be

10   violations of Chapter 110.  And it doesn't subdivide, it

11   doesn't categorize, it doesn't say they have to be serious

12   violations or significant violations or only some violations

13   and not others.  The statute itself doesn't make those sorts

14   of distinctions.

15        And so I don't believe that it's relevant, for the

16   Court's analysis here, to choose between, well, wouldn't it be

17   worse -- or a worse violation of 2252(g) if it were three

18   production offenses as opposed to three access with intent to

19   view.  The statute doesn't make that distinction and that's

20   the choice that Congress made when drafting that statute.

21        Whether the access with intent to view child pornography

22   is more or less serious than other child pornography statutes,

23   one, I don't think is relevant to the legal analysis here; but

24   two, I know that it's not relevant to the children that are

25   victimized.  And that is something the Court should definitely

1    take into consideration when addressing the defendant's

2    argument there.

3        The child victim -- to the child victim, the child who

4    has been exploited, who has been abused, whose images have

5    been accessed, trafficked, distributed, received, whatever

6    action word we put in front of it, that child has been

7    victimized and it is that child's victimization that Congress

8    is taking account of when putting together these statutes and

9    that statutory regime.

10       And so we can say, well, one statute is more serious

11   because the mandatory penalty or the maximum penalty is

12   higher.  But we can also say they are all of equal seriousness

13   because they all deal with a child who has been abused and

14   victimized and about accounting for that victimization.

15       And of course, the enterprise statute accounts for a

16   particular type of victimization; that is, one that is done in

17   concert with others and one that involves repeated felony

18   violations of Chapter 110.  And there's just no question that

19   those repeated violations were proven in this case and that

20   the defendant engaged in that activity with his many other

21   co-conspirators on the PedoBook website.

22       In terms of the other defendants in this case and looking

23   at the other prosecutions here in this district, a couple of

24   important points:

25       First, there were offenders who are charged in this

 1    district who accessed PedoBook anonymously, without

 2    registering a user name or a screen name.  They are not

 3    charged with enterprise, they're charged with receipt and

 4    attempted receipt, with access with intent to view child

 5    pornography, because they interacted with that site

 6    differently than Mr. DeFoggi did.

 7         And so there is a distinction to be drawn between the

 8    sort of activity someone engaged in on these sites.  And it's

 9    been drawn and it's been drawn in this district in the context

10    of other cases of users who accessed the PedoBook website.

11         Other defendants the defense has referenced -- I know

12    we've put together a chart to try to lay out the

13    distinguishments between other defendants who used PedoBook,

14    who were members of PedoBook, and Mr. DeFoggi.

15         But to be clear, Aaron McGrath, the administrator of this

16    site, as well as others, one, of course, pled guilty; two,

17    cooperated with the government and received credit for that

18    cooperation.  So his 20-year sentence occurred only after

19    those two factors were taken into account.  And as I noted for

20    the Court, the government requested a sentence of 30 years in

21    that case.

22         With respect to Jason Flanary, pled guilty to child

23    exploitation enterprise, not to any lesser count.  And he was

24    the first to plead guilty and received a 20-year sentence, the

25    mandatory minimum in that case, again after accepting

1    responsibility.

2         Cameron, who was another member of PedoBook, pled guilty

3    to conspiracy to advertise child pornography.  He did --

4    although he didn't receive 5K credit, he did make attempts to

5    cooperate with the government, obviously took responsibility

6    and received credit for that acceptance of responsibility.

7         Zachary Austin, who was the defendant's codefendant,

8    although he did plead guilty to conspiracy to distribute,

9    because of a prior conviction, the mandatory minimum for his

10   offense of conviction was still 15 years.  And so it's not as

11   if he got a departure down to a five-year minimum sort of

12   plea.  His mandatory minimum on his count of conviction was 15

13   years.  He accepted responsibility and that's the sentence

14   that he got.

15        And finally, Charles McMillan, who testified in this

16   case, also pled to conspiracy to advertise, received credit

17   for his plea as well as for the cooperation he offered in his

18   -- as the Court heard, his direct contact with Mr. DeFoggi

19   that did assist in the identification.  And of course, he

20   assisted at trial.

21        So there's a real meaningful distinction to be drawn

22   between Mr. DeFoggi's case and the cases of the other

23   defendants in this matter.

24        I should also just note in terms of McGrath, the

25   administrator, his sentence was not a rejection of the

1    guidelines wholesale; in fact, far from it.  He did receive a

2    guideline sentence.  The sentencing judge in that case, Judge

3    Bataillon, adjusted his guidelines down based on some

4    objections to particular guideline provisions.

5        So it was adjusted -- his sentence was adjusted for

6    cooperation, first of all; for acceptance, and then certain

7    enhancements were not applied by the trial judge.  So it

8    wasn't as if there was some wholesale rejection again in the

9    context of another defendant who was being adjudicated for

10   enterprise as opposed to a possession/receipt sort of

11   scenario.

12       And just to very briefly address the defendant's

13   comments, we should be very clear -- and the Court saw this,

14   of course -- as much as the defendant wants to talk about

15   other computers in his household that had child pornography

16   and who they belonged to, one, it's clear he had access to all

17   of them; two, as the Court will recall, the defendant's

18   computer was in his hands when law enforcement had to pry it

19   out of his hands upon executing the search warrant while he

20   was downloading a child pornography video from a Tor network

21   child pornography website.  There's just no mistaking that he

22   was the person who is responsible here, much as he wants to, I

23   think, vaguely shift responsibility onto his adopted son, who,

24   of course, testified in this case and denied having anything

25   to do with any child pornography whatsoever.

 1           And so I know the Court will certainly consider that

 2      evidence when evaluating the defendant's statements here

 3      today.

 4           With that, your Honor, we do believe that a guideline

 5      sentence is warranted here.  Consistent with our

 6      recommendations, we would recommend a high end guideline

 7      sentence.

 8           Thank you.

 9           THE COURT:  Thank you, Mr. Becker.

10      Well, as the lawyers know, and no doubt as Mr. DeFoggi

11      knows, I'm required to consider a number of factors when

12      imposing a sentence.

13           First, I will decline defense counsel's invitation to

14      declare the child pornography statutes unconstitutional.  I

15      recognize that Congress from time to time, from year to year,

16      passes different laws.  And sometimes things are made

17      criminal, sometimes they are made not criminal.  And sometimes

18      penalties are increased, and sometimes they're decreased.

19           And that reflects a changing society and a change in

20      priorities.  And I have respect for the role of Congress in

21      deciding what is legal and what is not legal and what

22      penalties for crimes should be.

23           I am not aware of any court that has declared these

24      offenses and the penalties for the offenses to be cruel and

25      unusual punishment under the Eighth Amendment of the

1    Constitution, so I will not be the one who does that.

2        I'm required to consider punishment.  But frankly, as the

3    lawyers know, I don't give a lot of weight to punishment

4    because I don't think it's a particularly useful concept.  I

5    put more weight on the concepts of general deterrence,

6    specific deterrence, and the need to protect society.

7        While I think that prisons can and many do provide useful

8    opportunities for rehabilitation, the Supreme Court has said

9    we are not to send people to prison for the purpose of

10   rehabilitation.  And so I am giving that very little weight in

11   my calculus.

12       I do recognize the specific characteristics and the

13   history of Mr. DeFoggi.  And I appreciate the fact that he has

14   reached a stage where he is at midlife or beyond and had no

15   criminal history when he came into this court.

16       I recognize that he has done many things throughout his

17   life that were of service to his country.  And I don't

18   diminish those in any way.  I recognize the good that he has

19   done in his life to the extent that that's been brought to my

20   attention.

21       I am weighing the element of general deterrence.  I think

22   it is important that people realize the lives of children are

23   destroyed when they are subjected to sexual abuse.  And they

24   are harmed again and again very seriously when their sexual

25   abuse is placed on the Internet and circulated for others to

1      enjoy.

2          And this particular network involved not just child

3      erotica, but it involved abuse of children to the most extreme

4      extent, all the way down to newborn infants being raped and

5      brutalized.  So we would hope that severe penalties would

6      deter other people from committing similar offenses.

7          I'm also considering specific deterrence; and that is, of

8      course we want to be sure that Mr. DeFoggi does not engage in

9      similar conduct in the future.

10          But probably most important is the protection of society

11      from future criminal activity.  And I recognize and I

12      appreciate the fact that there was no evidence that

13      Mr. DeFoggi had engaged in hands-on abuse of children.

14          But the jury found, based upon the evidence presented,

15      beyond a reasonable doubt that Mr. DeFoggi was the individual

16      using the screen name/computer name or alias fuckchrist and

17      PTasseater.  And that individual is a very dangerous

18      individual.

19          Mr. DeFoggi is a very intelligent person.  And he's a

20      person with very high levels of computer skills.  Perhaps he's

21      among a handful of people in the country who have such high

22      levels of computer skills and such knowledge of the Tor

23      network, also known as The Onion Router.  That makes him more

24      dangerous, frankly.

25          The dialogues that he was involved with and participated

1    in did indicate that he was not just accessing the child

2    pornography, but he was encouraging others to create child

3    pornography through the abuse of children.

4        And, of course, he was attempting to meet with the

5    individual who went by the screen name Toddler Lover to

6    discuss their mutual fantasies and actually to plan the

7    abduction, torture, rape and murder of children as young as

8    infants.

9        So while this may have been fantasy discussion and may

10   have been an effort on the part of Mr. DeFoggi to connect with

11   other men who had similar fantasies, it is certainly

12   information that would give anyone pause as to whether

13   Mr. DeFoggi should be in a position where he would have the

14   ability to follow through on those fantasies, especially since

15   he was taking the additional steps of encouraging others to

16   create pornography and trying to connect with someone who had

17   the same goals that he had in acting out on the fantasies.

18       Having said all of that, generally I do sentence somewhat

19   below the guideline ranges in connection with the child

20   pornography cases because those guideline ranges are so very,

21   very high.  And I do recognize people do change over the year,

22   they do change over the decades.

23       And we're in a sentencing range here where the defendant

24   will be incarcerated for decades, and he will be looking at a

25   lifetime of supervised release with restrictions on his

1    activities.

2        So I'm supposed to impose a sentence that is sufficient

3    but not greater than necessary to serve all of the statutory

4    sentencing factors.  And I find that a sentence of 300 months'

5    incarceration to be followed by lifetime supervised release is

6    sufficient but not greater than necessary to serve all the

7    statutory sentencing objectives.  That is the sentence that I

8    impose.

9        I will not impose a fine because the defendant does not

10   have the ability to pay and is not expected to become able to

11   pay a fine.

12       I should note that the term of incarceration is

13   concurrent.  So all of the counts, Count I and Counts IV

14   through VII will run concurrently.  The term of 300 months is

15   on Count I.  And on Counts IV through VII, I impose a term of

16   240 months to run concurrent with the term on Count I.

17       The special assessment will be $500.  That represents

18   $100 per each of the five remaining counts.

19       I intend to impose the special conditions of supervised

20   release set out in the sentencing recommendation.  Are there

21   any objections to those, Mr. Becker?

22       MR. BECKER:  Judge, just a note, the statutory

23   maximum on Counts IV to VII would be 120 months on each count.

24       THE COURT:  Oh, my apologies.  Okay.  Then the

25   sentencing recommendation is incorrect, is that --

1         MR. BECKER:  I think that's right, Judge.

2         THE COURT:  All right.  I assume there is no

3    disagreement as to that, Mr. Dornan?

4         MR. DORNAN:  No, your Honor.

5         THE COURT:  All right.  We will correct the record --

6    thank you, Mr. Becker -- 120 months on Counts IV through VII

7    to run concurrent with the 300-month term on Count I.

8       And so Mr. Becker, do we have the statutory maximum

9    incorrect on the sentencing recommendation, too?  Because

10   perhaps we need to get that corrected for the record.

11        MR. BECKER:  Yeah, on the -- the sentencing

12   recommendation lists the statutory -- it lists the statutory

13   provision for Counts IV through VII as zero to 20 years.  That

14   should be zero to 10 years.

15        THE COURT:  All right.  We will get that corrected.

16   Thank you.

17      Let me back up.  Mr. Becker, no objections to the special

18   conditions of supervised release?

19        MR. BECKER:  That's correct, your Honor.

20        THE COURT:  All right.

21      Mr. Dornan.

22        MR. DORNAN:  We would object to the term of the

23   lifetime supervision, Judge.

24        THE COURT:  Okay.  But on the special conditions of

25   supervised release?

1          MR. DORNAN:  No, your Honor.

2          THE COURT:  All right.  The special conditions of

3     supervised release will be imposed.  The standard conditions

4     will also apply.

5          And I will note that when someone is out on supervised

6     release and is doing very well and does not appear to any

7     longer impose any threat to society, it is possible for an

8     individual to be discharged from supervised release before the

9     end of the term.

10          I recommend to the Bureau of Prisons that the defendant

11     receive credit for time served.

12          I recommend that the defendant be placed in a facility

13     where he can receive sex offender-specific treatment.

14          And of course, Mr. DeFoggi, you have a right to appeal

15     from your conviction and the sentence that I've imposed.  Any

16     notice of appeal needs to be filed within 14 days of the

17     filing of the judgment.

18          When we're done with the hearing, the courtroom deputy is

19     going to show you a form that outlines the right of appeal and

20     explains how to file a notice of appeal.

21          Please read through the form and then sign it, just

22     indicating that you've read it.  Signing the form is not the

23     same thing as submitting a notice of appeal.

24          If you have any question about whether you should appeal,

25     you should discuss the matter with Mr. Dornan.  The ultimate

1    decision is up to you.

2         Do you have any question for me about your right of

3    appeal?

4              THE DEFENDANT:  No, your Honor.

5              THE COURT:  Okay.  Have I neglected anything,

6    Mr. Becker?

7              MR. BECKER:  No, your Honor.

8              THE COURT:  Mr. Dornan?

9              MR. DORNAN:  Judge, as far as a recommendation,

10   Mr. DeFoggi would like to be placed as close to the

11   Washington, D.C. area as possible.

12             THE COURT:  Okay.  I will recommend that he be given

13   consideration for placement in a facility as close as possible

14   to Washington, D.C. so he can be near home and family.

15        And I'll just note that the Butner facility, which is the

16   one in North Carolina near Raleigh, is the most likely

17   placement considering the recommendation for sex offender-

18   specific treatment.

19        But when they decide he's received the maximum benefit of

20   that treatment, it's possible he might get closer to D.C.  But

21   regardless, it's not too far.

22             MR. DORNAN:  Thank you.

23             THE COURT:  Very good.

24        The defendant is remanded to the custody of the U.S.

25   Marshals to be delivered to the Bureau of Prisons.

1          Thank you.  We're adjourned.

2               MR. BECKER:  Thank you, your Honor.

3               MR. NORRIS:  Thank you.

4

5          (Adjourned at 3:38 p.m.)

6

7

8

          I certify that the foregoing is a correct transcript from
9     the record of proceedings in the above-entitled matter.

10

11          */s Brenda L. Fauber*                1-20-15
          Brenda L. Fauber, RDR, CRR              Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                          I-N-D-E-X

2

3    EXHIBITS:                          Offered      Ruling

4    307.   Evidence Recovery Log          8            8

5    308.   FBI Report                     8            8

6    309.   Statement                      8            8

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```