IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

  Plaintiffs,

vs.

TIMOTHY DEFOGGI,

  Defendant.

8:13CR105

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Timothy DeFoggi's Motion for Reconsideration (Filing No. 392); Motion for Compassionate Release (Filing No. 394); Motion for Copies (Filing No. 396); Motion to Correct Clerical Error (Filing No. 399); Request for 285 Forms (Filing No. 406) and Petitions for Writ of Mandamus (Filing Nos. 397 and 405). For the reasons stated, the Motion for Compassionate Release is granted, and the remaining motions are denied.

**I.   BACKGROUND**

Following a jury trial, defendant Timothy DeFoggi was found guilty of the following Counts of the Indictment: Count I (Knowingly engaging in a child exploitation enterprise), Count II (Conspiracy to advertise child pornography), Count III (Conspiracy to distribute child pornography), Count IV (Access with intent to view child pornography), Count V (Access with intent to view child pornography), Count VI (Access with intent to view child pornography), and Count VII (Access with intent to view child pornography). The Court vacated the convictions on Counts II and III as lesser-included offenses of Count I. Filing No. 277. On January 6, 2015, the Court sentenced the Defendant to 300 months' incarceration on Count I, and 120 months' incarceration on each of the remaining Counts,

1

all to be served concurrently, followed by supervised release for his lifetime on each count, also to be served concurrently. Filing No. 290.

DeFoggi filed a timely appeal, and the U.S. Court of Appeals for the Eighth Circuit affirmed in part and reversed in part, vacating his conviction on Count I (Knowingly engaging in a child exploitation enterprise), and remanded the case for re-sentencing. *United States v. DeFoggi*, 839 F.3d 701 (8th Cir. 2016). The Court resentenced DeFoggi to 75 months on Counts IV, V, VI, and VII, each, to run consecutively, for a total term of incarceration of 300 months, followed by supervised release for his lifetime on each count, to be served concurrently. Filing No. 326.

DeFoggi again timely appealed, arguing that receiving the same sentence after resentencing was cruel and unusual under the Eighth Amendment. The Eighth Circuit affirmed the amended judgment of the Court. *United States v. DeFoggi*, 878 F.3d 1102 (8th Cir. 2018). The Eighth Circuit rejected Defendant's Eighth Amendment claim and denied DeFoggi's motion for rehearing en banc. *Id.*; *see also* Filing No. 339.

DeFoggi thereafter filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (§ 2255 Motion), Filing No. 345. His § 2255 Motion asserted sixteen grounds based on alleged ineffective assistance of counsel at trial, sentencing, and on appeal. DeFoggi's grounds included the assertion that his counsel failed to challenge sentencing enhancements or seek a downward departure or variance based on his government service. The Court concluded these assertions were contradicted by the record and without merit. Filing No. 346 at 6-7; *see also* Def.'s Statement Regarding Presentence Investigation Report, Filing No. 267; Def.'s Sentencing Mem., Filing No. 269; Def.'s Sentencing Exs., Filing Nos. 270, 275.

2

Defendant's § 2255 Motion asserted no other deficiencies in sentencing. The Court denied the § 2255 Motion and the Eighth Circuit summarily affirmed. See Filing No. 381.

DeFoggi thereafter filed a pro se Motion to Expunge. Filing No. 386. He requested that the Court use its "inherent equitable power" to expunge his criminal record of charges related to Counts I through III of the Indictment. DeFoggi did not expressly identify the record he wished to be expunged. The Court denied the Motion, concluding that it lacked jurisdiction to expunge executive branch records of the original convictions. Filing No. 391.

Now before the Court[1] are DeFoggi's Motions to Reconsider the denial of his motion to expunge and for Compassionate Release. He also requests copies of several sealed orders, requests to correct a clerical error, and makes a statement about service of United States Marshal Form 285. Finally, DeFoggi has submitted several petitions for a writ of mandamus requesting that the Court order the Probation and Pretrial Services Office to correct errors in Defendant's Presentence Investigation Report. The Court addresses each of these requests in turn.

II.     **MOTION TO RECONSIDER**

DeFoggi first asserts the Court erred in concluding that it did not have power to expunge his criminal records solely on equitable grounds. He insists that his convictions were illegal and vacated on constitutional grounds; therefore, the Court has the power to expunge his criminal records related to these convictions. However, DeFoggi also seems to have confirmed that the records he seeks to expunge are an archive of press releases on the Department of Justice website, that includes references to his original convictions,

---

[1] This case was reassigned to the undersigned judge after the ruling on DeFoggi's § 2255 motion due to the untimely and unexpected death of Judge Laurie Smith Camp. Filing No. 387.

including those that were overturned. See Filing No. 392 at 5. Even if this Court had power to expunge DeFoggi's criminal records, he presents no basis for the Court to order the DOJ to "expunge" references to his overturned convictions in its press releases. In sum, that the press releases are records that contain information about crimes does not make them "criminal records" for purpose of a motion to expunge.

A criminal record is "[a]n official record kept by the police of any crimes a person has committed." *Black's Law Dictionary* (11th ed. 2019). While the DOJ's archived press releases might be part of the public record, DeFoggi presents no authority that press releases in this context are criminal records. The Eighth Circuit has recognized that "[a]n expunged arrest and/or conviction is never truly removed from the public record." *Eagle v. Morgan*, 88 F.3d 620, 626 (8th Cir. 1996) ("Just as the judiciary cannot suppress, edit, or censor events which transpire in proceedings before it, neither does the legislature possess the Orwellian power to permanently erase from the public record those affairs that take place in open court." (internal marks and citations omitted)). Even if the Court had power to expunge DeFoggi's criminal records related to his vacated conviction and even if expungement were appropriate, the Court does not have the power to direct the DOJ to delete its press release archive concerning DeFoggi.

### III. MOTION FOR COMPASSIONATE RELEASE

The Court next addresses DeFoggi's motion for compassionate release. In Section 603 of the First Step Act, Congress amended 18 U.S.C. § 3582(c)(1)(A) to permit defendants to move a sentencing court for compassionate release. Congress designed § 3582(c)(1)(A), for "[i]ncreasing the Use and Transparency of Compassionate Release." § 603(b), 132 Stat. at 5239. Previously, defendants could petition only the BOP Director,

who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018).

18 U.S.C. § 3582(c)(1)(A) permits defendants to move a sentencing court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." DeFoggi submitted evidence that he submitted a request to the warden of his facility and more than thirty days have elapsed since that time. *See* Filing No. 394 at 22–23. The Court is satisfied that DeFoggi satisfactorily exhausted his administrative remedies.

Although DeFoggi has exhausted his administrative remedies, he must still demonstrate that a reduction in sentence is warranted. Compassionate release provides a path for defendants with "extraordinary and compelling reasons" to leave prison early. § 3582(c)(1)(A)(i). Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court addresses whether there are any applicable policy statements, extraordinary and compelling reasons, and the balancing of the § 3553(a) factors in turn.

### A. Applicable Policy Statements

First, the Court addresses whether there are any policy statements which it must consider in conjunction with DeFoggi's motion. The Sentencing Guidelines contain a policy statement identifying four general circumstances warranting compassionate release: the defendant's terminal illness or other serious medical condition; the defendant's advanced age and deteriorating health; dire family circumstances; and other

5

"extraordinary and compelling" reasons. U.S.S.G. § 1B1.13 cmt. n.1 (2018). However, the policy statement at U.S.S.G. § 1B1.13 has not been amended since passage of the First Step Act and thus states that it applies only to a request for compassionate release made "[u]pon motion of the Director of the Bureau of Prisons." Numerous courts that have considered § 1B1.13 have concluded it does not constitute an "applicable policy statement" under 18 U.S.C. § 3582(c)(1)(A) for purposes of a compassionate-release motion made by a defendant rather than the BOP director. See *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446, 2022 WL 994375 (U.S. Apr. 4, 2022); *United States v. Long*, 997 F.3d 342, 356–57 (D.C. Cir. 2021); *United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021) (per curiam); *United States v. Maumau,* 993 F.3d 821, 831–33 (10th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 391–93 (5th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 281–84 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020); *but see United States v. Bryant*, 996 F.3d 1243, 1264 (11th Cir.), *cert. denied,* 142 S. Ct. 583 (2021).

The Court agrees that by its express terms, U.S.S.G. § 1B1.13 applies only to BOP-made motions. Because the present motion was made by the defendant rather than the BOP, the Court is not constrained by any applicable policy reasons and is free to consider any "extraordinary and compelling" reasons in assessing DeFoggi's motion.

6

**B. Extraordinary and Compelling Reasons**

DeFoggi asserts compassionate release is appropriate because his sentence is unnecessarily harsh and grossly disproportionate to other similarly situated defendants, he is at particular risk of serious illness if he contracts COVID-19, and he has made considerable effort at rehabilitation.

*1. Harsh and Disparate Sentence*

DeFoggi argues the Court's sentence of 300 months was both unduly harsh and grossly disproportionate to other defendants involved in the same child-pornography website. The Court agrees that under the circumstances of this case, and in combination with DeFoggi's risk for COVID-19 and rehabilitation, such a large sentencing disparity constitutes an extraordinary and compelling circumstance and warrants relief under § 3582(c)(1)(A).

As set forth in greater detail in the Eighth Circuit Court of Appeals' opinion, Filing No. 309, and DeFoggi's presentence investigation report, Filing No. 323, DeFoggi was arrested as a result of an FBI investigation into a child-pornography website, PedoBook. Filing No. 309 at 2. DeFoggi was a registered member and user of PedoBook. Filing No. 309 at 2. Through its monitoring, the FBI was able to track DeFoggi's usage of PedoBook and document his access of child pornography on four occasions, the basis for the convictions for which he is presently sentenced. Filing No. 209 at 2–3; Filing No. 323 at 12–13.

Aaron McGrath was the administrator of PedoBook, meaning he operated and hosted the website that facilitated users like DeFoggi in accessing child pornography. Filing No. 323. McGrath received a sentence of 240 months' incarceration and 10 years

7

of supervised release for engaging in a child exploitation enterprise in Case No. 8:12-cr-422. Numerous other users of PedoBook were arrested and convicted of child-pornography related offenses as well, such as DeFoggi's codefendant, Zachary Austin, who was sentenced to 192 months' incarceration and 10 years of supervised release for conspiracy to distribute child pornography. Filing No. 250. At the time Austin committed the offenses relating to PedoBook, he had already been charged with child-pornography crimes in the District of Nevada. Filing No. 252 at 12. In the Nevada case, he was ultimately convicted of receipt of child pornography and sentenced to 97 months' incarceration and lifetime supervision. *Id.* at 17.

Another user of PedoBook was Charles MacMillan. *See* Filing No. 323 at 10 (DeFoggi's PSR listing MacMillan's as a "related case"). MacMillan was sentenced to 144 months' incarceration and 20 years supervised release pursuant to a Government approved mandatory plea agreement under Fed. R. Crim. P. 11(c)(1)(C) in which MacMillan pled guilty to conspiracy to advertise child pornography. *See* Case No. 8:13-cr-319 at Filing No. 99. MacMillan and DeFoggi exchanged messages on PedoBook. Filing No. 323 at 15. DeFoggi's PSR references messages MacMillan sent him expressing MacMillan's desire to act out his fantasies in real life. *Id.* at 15–16.

Other defendants involved in the PedoBook website include David William Peer (sentenced to 120 months' incarceration and 15 years of supervised release for access with intent to view child pornography in case No. 8:13-cr-106); Michael Hyuck (sentenced to a total of 72 months' incarceration and 5 years of supervised release for receipt of child pornography and access with intent to view in Case No. 8:13-cr-107-6); Jason Flanary (sentenced to 240 months' incarceration for child exploitation enterprise in Case No. 8:13-

cr-104); and Vincent Diberardino (sentenced to 48 months' incarceration and 5 years of supervised release for access with intent to view in Case No. 8:13-cr-107-4).

As set forth above, after the Eighth Circuit vacated DeFoggi's conviction for knowingly engaging in a child-exploitation enterprise, DeFoggi was re-sentenced to a total term of 300 months' incarceration followed by lifetime of supervised release for four counts of accessing with intent to view child pornography. This sentence is out of step with the sentences the other PedoBook defendants received. Diberardino and Peer were both convicted of the same offense as DeFoggi, accessing with intent to view child pornography under 18 U.S.C. § 2252A(a)(5)(B), yet DeFoggi received more than double Peer's sentence and almost six times more than Diberardino. Hyuck, likewise, received a sentence less than a third of DeFoggi's for a conviction of access with intent to view in addition to receipt of child pornography. Flanary was convicted of the more serious crime of child exploitation enterprise and yet was sentenced to 60 fewer months than DeFoggi. Austin was convicted of conspiracy to distribute child pornography and had already been charged with other child-pornography offenses in another district but was sentenced to 108 fewer months than DeFoggi. And MacMillan, who engaged in similar conduct as DeFoggi and was the author of the messages referencing a desire to act on his fantasies, received less than half of DeFoggi's sentence, 144 months. Even McGrath, the administrator of PedoBook who helped dozens, or hundreds of users gain access to child pornography, received a lesser sentence than DeFoggi at 240 months.

Reasoning that DeFoggi should receive the highest sentence by far of all these defendants is problematic. Congress intended that child-pornography crimes be treated along a spectrum of culpability ranging from possessing/accessing child pornography with no mandatory minimum sentence to the most severe offense of production of child

9

pornography. *Compare* 18 U.S.C. § 2252A(b)(2), *with* 18 U.S.C. § 2251(e). Additionally, the United States Sentencing Commission has repeatedly examined the sentences imposed for child-pornography offenses and concluded "[a]s courts and the government contend with the outdated statutory and guideline structure, sentencing disparities among similarly situated non-production child pornography offenders have become increasingly pervasive." *See* United States Sentencing Commission, *Federal Sentencing of Child Pornography Non-Production Offenses*, at *7 (June 2021), *available at* https://www.ussc.gov/node/41646 (last visited May 16, 2022). The Commission recommended that Congress reform the child-pornography sentencing scheme to more accurately reflect the lesser culpability of non-production offenses, but to date no such legislation has passed. *See id.*

"Courts [can] consider overly harsh sentences and sentencing disparities as factors contributing to 'extraordinary and compelling reasons'" for purposes of compassionate release. *United States v. Adams*, 512 F. Supp. 3d 901, 913 (E.D. Mo. 2021). For example, in *United States v. Edwards*, No. CR PJM 05-179, 2021 WL 1575276, at *1–2 (D. Md. Apr. 22, 2021), the defendant was sentenced to 292 months' incarceration for conspiracy to sell drugs. A co-defendant, Fletcher, had his sentence reduced to 264 months despite engaging in "far more severe conduct" such as leading the extensive drug distribution ring and "manipulat[ing] drug addicts in order to operate his drug enterprise [like] a 'slave master.'" *Id.* at *1. The Court found "the sentencing disparity between Fletcher and his less culpable co-defendants [like Edwards] qualifies as an extraordinary and compelling circumstance under § 3582(c)(1)(A)." *Id.* at *2. Because it made no sense that "a middling supplier of drugs is punished far more severely than the violent 'ringleader,'" the Court granted the defendant compassionate release and

10

imposed a term of 200 months' imprisonment instead. *Id.* at *3. *Accord United States v. Minicone*, 521 F. Supp. 3d 163, 169 (N.D.N.Y. 2021) (granting compassionate release to an elderly defendant based on his relative culpability and "the fact that he is the only co-defendant still incarcerated"); *United States v. Price*, 496 F. Supp. 3d 83, 90 (D.D.C. 2020) (granting compassionate release to a defendant because, "[i]n addition to the sentencing disparity created by the First Step Act, there are stark and unwarranted sentencing disparities between Mr. Price's life sentence and the sentences of his more culpable co-conspirators"); *United States v. Millan*, No. 91-CR-685, 2020 WL 1674058, at *15 (S.D.N.Y. Apr. 6, 2020) (stating the granting of compassionate release was warranted, in part, by "[t]he need to avoid unwarranted sentencing disparities . . . based on his co-defendants' terms of imprisonment"); *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 508 (S.D. Iowa 2020) ("[R]elease would lessen an already existent sentencing disparity . . . ."); *United States v. Jones*, No. 4:06-CR-00278, 2021 WL 1156631, at *5 (S.D. Iowa Mar. 25, 2021) (stating, in granting compassionate release, that "Defendant's Presentence Investigation Report noted Defendant was equally or less culpable than her codefendants . . . yet all of her codefendants and the defendants in the related case were released many years ago").

As in *Edwards* where a mid-tier drug dealer should not receive a harsher sentence than the drug-conspiracy's ring leader, DeFoggi's sentence of 300 months as an accessor of child pornography is grossly unfair when compared to the other PedoBook defendants who engaged in more severe conduct, including administering the website that gave access to defendants like DeFoggi, distributing child pornography by file-sharing, and initiating messages expressing a desire to act out fantasies in real life. Despite DeFoggi's conviction for the lowest level child pornography offenses and the U.S.S.C.'s recognition

11

that the sentencing scheme for child pornography is out of touch with the reality of non-production offenses, he received the highest sentence of all the PedoBook defendants.

Importantly, MacMillan engaged in comparable conduct as DeFoggi and authored the messages between the two-referencing acting out fantasies in real life, yet DeFoggi received a sentence more than double MacMillan's. Furthermore, the Government agreed to a sentence under Fed. R. Crim. P. 11(c)(1)(C) for MacMillan to 144 months, indicating its approval that a sentence of such length was appropriately severe for the non-production conduct at hand in MacMillan's case. Although MacMillan accepted responsibility by pleading guilty whereas DeFoggi continues to deny his guilt, MacMillan's age, record, and admitted desire to actively engage in child exploitation negate any sentencing difference between the two related defendants. Accordingly, the Court concludes that the grossly disproportionate and harsh sentence imposed upon DeFoggi in comparison to the other PedoBook defendants, constitutes an extraordinary and compelling reason to grant him compassionate release, together with the factors noted below, supports that he should receive a total sentence of 144 months' incarceration to be more aligned with the other defendants in the PedoBook scheme.

          2. COVID-19 and Defendant's Health

DeFoggi next asserts that he suffers from several health conditions that place him at a greater risk of severe illness if he contracts COVID-19. DeFoggi is now 64 years old, has a history of cancer, suffers from joint malformities, undiagnosed cysts, significant eye problems, has a history of bronchitis, is a former smoker of 40 years, and has contracted COVID-19 before. See Filing No. 394 at 31.

The Court has reviewed the record and acknowledges that DeFoggi suffers from a number of medical conditions which place him at high risk of severe illness should he

contract COVID-19. *See* CDC, *COVID-19: People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 18, 2022) (stating that those with a history of cancer and former smokers are at an elevated risk of serious illness from contracting COVID-19). He is also nearly 65 years old which places him at the "highest risk of getting very sick from COVID-19." *Id.* (stating that more than 81% of COVID-19 deaths occur in adults over age 65). Additionally, while DeFoggi has already contracted COVID-19 once, emerging research emphasizes the risk of so-called "long COVID" and shows an on-going threat posed by new variants such as the Omicron strain which better evade prior immunity, meaning DeFoggi remains at risk of reinfection. *See* CDC, *Long COVID or Post-COVID Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html (last visited May 18, 2022); CDC, *What You Need to Know About Variants*, https://www.cdc.gov/coronavirus/2019-ncov/variants/about-variants.html (last visited May 18, 2022).

"The district courts holding that the COVID-19 pandemic constitutes an extraordinary and compelling reason for release are legion." *United States v. Santamaria*, 516 F. Supp. 3d 832, 837 (S.D. Iowa 2021) (citing cases). The Court finds that DeFoggi's above mentioned medical history and conditions in relation to the COVID-19 pandemic are an additional factor constituting extraordinary and compelling reasons for his compassionate release. *See, e.g., United States v. Williams*, No. 4:17-CR-310-5 RLW, 2020 WL 7392875, at *8 (E.D. Mo. Nov. 25, 2020) (granting compassionate release to a former smoker who also had an additional risk factor for COVID-19 (hypertension) because "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19").

13

*3. Rehabilitation*

DeFoggi also argues that his post-conviction rehabilitation merits compassionate release. He notes he has never received a disciplinary action since being incarcerated in April of 2013. He also notes that he has completed several educational, vocational, and other rehabilitative programs. When considering the compassionate-release factors, a defendant's rehabilitation may be relevant but "is not, by itself, an extraordinary and compelling reason for" compassionate release. *See United States v. Saldana,* 807 F. App'x 816 (10th Cir. 2020); 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). DeFoggi's considerable efforts at post-conviction rehabilitation, in combination with the other extraordinary and compelling reasons set forth above, warrant compassionate release. *See, e.g., United States v. Rank,* 491 F. Supp. 3d 442, 453–54 (N.D. Iowa 2020) (finding that "[t]he combination of Rank's health conditions, when viewed in the context of the current COVID-19 pandemic and his impressive rehabilitation efforts, constitute extraordinary and compelling reasons for release").

**C. Factors Under 18 U.S.C. § 3553(a)**

Having concluded that there are extraordinary and compelling reasons to grant DeFoggi's compassionate release, the Court must next consider whether such release complies with any applicable factors listed at 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The balance of the § 3553(a) factors supports reducing DeFoggi's sentence.

As to the history and characteristics of the defendant, DeFoggi's criminal history was "non-existent" prior to the present case. Filing No. 323 at 22. As to the need for the sentence to promote deterrence and protect the public, DeFoggi has shown excellent

14

behavior and impressive rehabilitation efforts during his incarceration as set forth above. Additionally, he is now of an age where he is unlikely to recidivate. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (December 2017), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited May 18, 2022) (stating that "[o]lder offenders were substantially less likely than younger offenders to recidivate following release" and "[a]ge and criminal history exerted a strong influence on recidivism"); *see also* Filing No. 395 (DeFoggi's risk-assessment showing low risk to reoffend). The Court is also confident that the terms of DeFoggi's supervised release are adequate to protect the public from further crimes of the defendant. *See* Filing No. 326 at 3–6 (amended judgment imposing standard and mandatory conditions of release, including sex-offender registration, limitations on internet usage and contact with minors, and mandatory sex-offender treatment); *see also United States v. Needham*, No. CR 13-111, 2021 WL 2228390, at *3 (D. Minn. June 2, 2021) (granting compassionate release in case where there existed supervised release "[c]onditions [sufficient] to prevent child pornography or sexually stimulating material from being accessed"). Lastly, as set forth above, reducing DeFoggi's sentence greatly serves the need to avoid unwarranted sentencing disparities among defendants found guilty of similar conduct. Accordingly, the Court concludes the § 3553(a) factors weigh in favor of granting DeFoggi's motion for compassionate release.

### D. Conclusion on Compassionate Release

In sum, DeFoggi's unfairly harsh sentence in comparison to the other PedoBook defendants, his heightened risk of COVID-19, and his rehabilitation constitute extraordinary and compelling reasons to grant him compassionate release. His release

also comports with the considerations under 18 U.S.C. § 3553(a). "More and more courts have found that exceptional rehabilitation; large sentencing disparities; and COVID-19's unprecedented dangers all constitute extraordinary and compelling reasons to grant compassionate release." *United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020). DeFoggi's is precisely such a case, and the Court reduces his sentence to 36 months on each count, to be served consecutively, for a total of 144 months' incarceration. The other terms of DeFoggi's sentence, including the supervised release term and conditions, remain intact. *See* Filing No. 326 (amended judgment setting forth details of supervised release).

## IV. OTHER MOTIONS

### A. Motion for Copies (Filing No. 396)

DeFoggi moves for copies of several sealed documents from the Court record that were referenced in the Court's Order denying his § 2255 Motion. The Court notes that any attempt to reassert grounds under § 2255 would be governed by the rules on successive habeas petitions. The Court is unable to provide copies of pleadings without prepayment of the costs. Accordingly, DeFoggi's Motion for Copies is denied without prejudice. He may contact the Office of the Clerk of the United States District Court concerning the cost for copies of requested documents.

### B. Motion for Correction of Clerical Error (Filing No. 399)

DeFoggi asserts that he filed an informal request on January 26, 2021, that has not been acted upon. No such request appears on the record. Nevertheless, DeFoggi's attached documents show that he wishes to correct the trial transcript to reflect that Christopher Casto was not a witness for the defense. *See* Filing No. 399 at 4. In the same document, DeFoggi quotes language from the trial transcript showing that defense

16

counsel corrected the record to reflect that Casto was a witness for the Government. Filing No. 399 at 4. DeFoggi has not shown any prejudice or that further correction is necessary. The Court concludes that the record speaks for itself. Accordingly, the motion is denied.

### C. Motion for United States Marshal Form 285 (Filing No. 406)

Although docketed as a request for forms, DeFoggi's communication at Filing No. 406 appears to be correspondence to the Clerk of Court to correct a filing error. Accordingly, no response from the Court is necessary and the Motion is denied.

### D. Petitions for Mandamus (Filing Nos. 397 and 405)

DeFoggi filed a lengthy Petition for Writ of Mandamus requesting that the Court order the Probation and Pretrial Office for the District of Nebraska to "carry out its ministerial duties and to address and/or correct controverted claims contained within Petitioner's Presentence Investigation Report ("PSR")." Filing No. 405. DeFoggi's claims are unclear, but apparently, he believes that the PSR will impact his future rights and privileges. The Court has reviewed DeFoggi's request and finds it can provide no relief. DeFoggi's asserted errors in the PSR were fully litigated at both his sentencings and on both direct appeals. More importantly, DeFoggi has already been sentenced so his request is moot. Accordingly, Defendant's petitions are denied.

IT IS ORDERED:

1. Defendant's Motion for Compassionate Release (Filing No. 394) is granted. Defendant's sentence is reduced to 36 months on each count to be served consecutively for a total of 144 months' incarceration. All other terms of Defendant's sentence remain in effect, and he shall abide by all previously imposed terms of his supervised release.

2. Defendant's Motion for Reconsideration (Filing No. 392); Motion for Copies (Filing No. 396); Motion to Correct Clerical Error (Filing No. 399); Request for 285 Forms (Filing No. 406) and Petitions for Writ of Mandamus (Filing Nos. 397 and 405); are denied consistent with this Memorandum and Order; and

3. The Clerk of Court is directed to mail a copy of this Memorandum and Order to Defendant at his last known address.

Dated this 1st day of June, 2022.

                                              BY THE COURT:

                                              s/ Joseph F. Bataillon
                                              Senior United States District Judge